**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------------x
                                                             :
In re:                                                       :     Chapter 11
                                                             :
HO WAN KWOK, *et al.*,[1]                                    :     Case No. 22-50073 (JAM)
                                                             :
                                     Debtors.                :     (Jointly Administered)
                                                             :
-------------------------------------------------------------x
                                                             :
LUC A. DESPINS, CHAPTER 11                                   :
TRUSTEE,                                                     :
                                                             :     Adv. Proceeding No. [_____]
                                     Plaintiff,              :
v.                                                           :
                                                             :
                                                             :     June 8, 2023
HCHK TECHNOLOGIES, INC.,                                     :
HCHK PROPERTY MANAGEMENT, INC.,                              :
LEXINGTON PROPERTY AND STAFFING, INC.,                       :
HOLY CITY HONG KONG VENTURES, LTD.,                          :
ANTHONY DIBATTISTA, YVETTE WANG,                             :
and BRIAN HOFMEISTER (in his capacity                        :
as assignee),                                                :
                                                             :
                                     Defendants.             :
-------------------------------------------------------------x

**COMPLAINT OF CHAPTER 11 TRUSTEE FOR ESTATE OF
HO WAN KWOK PURSUANT TO SECTIONS 105, 362, 363, 541, 542, 544, AND 549 OF
THE BANKRUPTCY CODE SEEKING (I) DECLARATORY JUDGMENT THAT
HCHK TECHNOLOGIES, INC., HCHK PROPERTY MANAGEMENT, INC., AND
LEXINGTON PROPERTY AND STAFFING, INC. ARE (A) ALTER EGOS OF
DEBTOR; OR, (B) IN THE ALTERNATIVE, AN ORDER THAT DEBTOR
EQUITABLY OWNS SUCH ENTITIES AND/OR THEIR PROPERTY; AND (II)
<u>INJUNCTIVE RELIEF</u>**

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor" or "Kwok"), files this adversary complaint (the "Complaint") against defendants: (a) HCHK Technologies, Inc. ("HCHK Technologies"); (b) HCHK Property Management, Inc. ("HCHK Property"); (c) Lexington Property and Staffing, Inc. ("Lexington Property," and, together with HCHK Technologies and HCHK Property, the "HCHK Entities"); (d) Holy City Hong Kong Ventures, Ltd. ("Holy City"); (e) Yvette Wang; (f) Anthony DiBattista; and (g) Brian Hofmeister, in his capacity as assignee of the HCHK Entities (the "Assignee Defendant,"[2] and, together with the HCHK Entities, Holy City, Yvette Wang, and Anthony DiBattista, the "Defendants").  In support of this Complaint, the Trustee states as follows:

## NATURE OF ACTION

1.      The Trustee files this Complaint and his accompanying motion for a temporary restraining order and preliminary injunction to bring valuable assets into the chapter 11 estate and to urgently prevent those assets from being dissipated to the detriment of the Debtor's creditors.  As this Court well knows, the Debtor has a history of using shell companies, family members, and close associates to help keep his assets outside the reach of his creditors, such as when he used Hong Kong International Investments (USA) Limited ("HK USA"), nominally owned by his daughter, to create the fiction that his *Lady May* yacht and approximately $33 million in escrow funds were not property of this estate.  The Court rightfully ignored that fiction in granting summary judgment for the Trustee on his alter ego claim against HK USA.

---

[2]     The Trustee, as of the time of the filing this Complaint, has no information regarding the Assignee Defendant's actual  knowledge or lack of actual knowledge of the facts alleged in this Complaint.  However, the relief sought in this complaint is amply justified, regardless of such actual knowledge by the Assignee Defendant.

2.      The Debtor and his associates are deploying the same tactics with the HCHK Entities, using them to hold over $35 million in cash that should be property of the estate.  The HCHK Entities are nominally owned by Yvette Wang, the Debtor's close associate and co-defendant in the U.S. Government's billion-dollar criminal fraud and money-laundering case. The reality, however, is that Ms. Wang takes direction from the Debtor, and the HCHK Entities, just like HK USA and numerous of the Debtor's other shell companies before them, are mere extensions of the Debtor himself, designed to conduct his business and keep his valuable assets from creditors.

3.      While the Debtor's use of the HCHK Entities as mere alter egos is nothing new, the circumstances at issue are even more troubling than they have been in the past because the Debtor and his associates are ***presently engaged in a scheme to transfer the HCHK Entities' valuable assets to other shell companies of the Debtor***.  Specifically, on April 20, 2023, the Debtor's employees nominally in management positions at the HCHK Entities, executed Deeds of Assignment with respect to each of the HCHK Entities purporting to assign all of their assets to the Assignee Defendant.  The Assignee Defendant then filed an affidavit and petition with respect to each of the HCHK Entities (each, an "Assignee Affidavit" and, together, the "Assignee Affidavits") in the Supreme Court of the State of New York for New York County (the "State Court").  The Assignee Affidavits requested the commencement of an assignment for the benefit of creditors proceeding under the Debtor Creditor Law of New York (each, an "Assignment Proceeding," and, together, the "Assignment Proceedings").  The documents filed with the Assignee Affidavits include schedules of the purported creditors of the HCHK Entities listing entities associated with the Debtor such as ACA Capital, Golden Spring, and Saraca Media (each defined below), as well as unnamed individuals who, upon information and belief,

3

are associates or relatives of the Debtor.[3]  The Assignee Affidavits and related documents were

sent to the Trustee on May 30, 2023, accompanied, with respect to the Assignment Proceedings

for HCHK Technologies and Lexington Property, by orders to show cause why orders

commencing the Assignment Proceedings should not be entered, with response dates of **June 15,**

**2023** for HCHK Technologies, and **June 21, 2023** for Lexington Property.  On June 5, 2023, the

Trustee was sent an order to show cause why an order commencing the Assignment Proceeding

of HCHK Property should not be entered, with a response date of **June 27, 2023**.  These are

proceedings in which the Debtor and persons he controls are attempting to create their own

version of a chapter 11 case without the supervision and involvement of the Trustee and the

Court.

4.  Abundant evidence demonstrates that the HCHK Entities are alter egos of or

equitably owned by the Debtor[4] and, thus, the Assignment Proceedings are clear attempts to

divert the HCHK Entities' valuable assets from this chapter 11 estate.  At all relevant times, the

HCHK Entities (a) were nominally owned and staffed by the Debtor's employees; (b) were

affiliates of the Debtor's "G-Series" entities, such as Gettr, GTV, GClubs, GFashion, and

GMusic (the "G-Series Entities"), which this Court has already found to be controlled by or to

serve as business vehicles for the Debtor;[5] (c) paid the Debtor's expenses, including with respect

to the *Lady May* and the Debtor's Bombardier jet (which Mei Guo testified was sold in the

summer of 2022); and (d) were funded by the Debtor through associates, controlled entities, and

---

[3]  In other words, the Assignee Defendant, who was assigned the assets of the HCHK Entities "on behalf of creditors," has ostensibly been assigned the assets of the HCHK Entities "on behalf of" a collection of the Debtor's associates and controlled entities.

[4]  The Trustee's equitable ownership claims encompass equitable ownership of the HCHK Entities (i.e., the shares representing the ownership interests in such entities) and/or the assets of the HCHK Entities.

[5]  The Court also found that: "The G in GSeries stands for Guo."  *Corrected Memorandum of Decision Granting in Part Motion for Preliminary Injunction* ¶ 3 (Adv. Proc. No. 22-05032, Jan. 13, 2023) [Docket No. 133] (the "PI Decision").

representatives.  The U.S. Government, as part of its criminal prosecution of the Debtor and

Yvette Wang, has similarly asserted that the Debtor controls HCHK Technologies and HCHK

Property.  The Debtor, for his part, has not disagreed, as he invoked the Fifth Amendment at his

deposition when asked about his control and ownership of HCHK Technologies and HCHK

Property.[6]

5.      The Trustee seeks in this Complaint an order, pursuant to sections 541, 542, and

544 of the Bankruptcy Code, that the HCHK Entities are alter egos of the Debtor and/or equitably

owned by him, and an order, pursuant to sections 105, 362, 363, and 549 of the Bankruptcy

Code, enjoining the Defendants and any party acting in concert with them from commencing or

continuing the Assignment Proceedings, and enjoining any transfer or use of the assets, including

cash, of the HCHK Entities, except as authorized by the Trustee or this Court.  The requested

injunction is warranted because the Assignment Proceedings will have an immediate adverse

consequence for the Debtor's estate by effectively permitting the continued violation of the

automatic stay so that the HCHK Entities and the Defendants may engage in parallel proceedings

that are both duplicative of and decidedly inferior to this Chapter 11 Case.  Allowing the

Assignment Proceedings to continue will also encourage the Debtor to commence new

assignment proceedings with his other alter ego entities as a strategy to bypass the scrutiny of the

Trustee and this Court.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this adversary proceeding pursuant

to 28 U.S.C. §1334(b).

---

[6]    In his sworn declaration dated May 11, 2023, the Debtor invoked the Fifth Amendment when asked to state that
he had control over Yvette Wang.  *Debtor's Sworn Declaration Regarding Responses to Particular Questions*,
¶ 46 (invoking the Fifth Amendment in response to question regarding his control over numerous other entities
and individuals), attached hereto as Ex. 1.

7.     This adversary proceeding has been referred to this Court pursuant to 28 U.S.C. §157(a).

## THE PARTIES

8.     The Trustee is the chapter 11 trustee in the Chapter 11 Case pursuant to the Court's order entered on July 8, 2022 [Main Case Docket No. 523].

9.     HCHK Technologies is a Delaware corporation.

10.    HCHK Property is a Delaware corporation.

11.    Lexington Property is a Delaware corporation.

12.    Holy City is a British Virgin Islands corporation that nominally owns a 99.9999% equity interest in each of the HCHK Entities.  Holy City is nominally owned 100% by Yvette Wang.

13.    Yvette Wang is an individual who is the nominal 100% owner of Holy City.

14.    Anthony DiBattista is an individual who nominally owns a 0.0001% equity interest in each of the HCHK Entities.

15.    The Assignee Defendant is the managing partner of the law firm of Brian W. Hofmeister, LLC.  The Assignee Defendant is assignee in connection with a Deed of Assignment for the Benefit of Creditors executed by a purported representative of each of the HCHK Entities on April 20, 2023 and purporting to transfer all assets of each of the HCHK Entities to the Assignee Defendant.

## FACTS

### I.    Background: Debtor's Prolific Use of Shell Companies

16.    The Debtor is a prolific user of shell companies, purportedly owned by family members or business subordinates, to shield his assets and activities from creditors.  The

6

Debtor's "shell game" has allowed him to continue to deny ownership of assets, refuse to pay

debts, and—until his recent arrest by the FBI—live a life of luxury.

17.     Among other examples, shell companies purportedly owned by the Debtor's son

(specifically, Lamp Capital LLC and Golden Spring (New York) Ltd.) have paid the Debtor's

living expenses and legal fees; a shell company purportedly owned by his daughter Mei Guo

(HK USA), recently ruled by this Court to be the Debtor's alter ego,[7] has held title to the

Debtor's yacht, which this Court and Justice Ostrager had previously ruled was the Debtor's

property despite its nominal ownership by HK USA;[8] and another shell company purportedly

owned by the Debtor's wife (Greenwich Land LLC) holds title to the Debtor's Connecticut

residence.[9]  The Debtor also claims that his apartment at the Sherry Netherland Hotel is held in

trust for the benefit of yet another shell company (Bravo Luck Limited) purportedly owned by

his son.[10]  Similarly, the Debtor has used Anton Development Limited and Whitecroft Short

---

[7]     *Memorandum of Decision and Order Granting Motion for Partial Summary Judgment on Second Counterclaim*, at 35 (Adv. Proc. No. 22-05003, May 18, 2023) [Docket No. 221] ("HK USA is the alter ego of the Individual Debtor.").

[8]     *Supplemental Memorandum of Decision in Support of Oral Ruling Granting Motion for Partial Summary Judgment*, at 31 (Adv. Proc. No. 22005003, Mar. 30, 2023) [Docket No. 177] ("the issue of Individual Debtor's beneficial ownership and control of the Lady is decisive as to the First Counterclaim and the identical issue was necessarily decided by Justice Ostrager in the Final Contempt Decision, which found by clear and convincing evidence that the Individual Debtor beneficially owned and controlled the Lady May").

[9]     The Trustee has sought an alter ego judgment against this entity in adversary proceeding 23-05005, in connection with which the Court entered a prejudgment remedy and temporary restraining order against Greenwich Land LLC and the Debtor's wife.  *See Order Granting in Part Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction* (Adv. Proc. No. 23-05005, Mar. 28, 2023) [Docket No. 14]; *Order Granting Chapter 11 Trustee's Amended Application for Ex Parte Prejudgment Remedy* (Adv. Proc. No. 23-05005, Mar. 28, 2023) [Docket No. 15].

[10]    The Trustee has challenged Bravo Luck Limited's asserted interest in the Sherry Netherland apartment in his *Amended Adversary Complaint Against Bravo Luck and Qiang Guo Seeking (I) Invalidation of Purported Trust Agreement in Favor of Bravo Luck and, (II) in Alternative, Ruling that Debtor Effectuated Fraudulent Transfer in Favor of Bravo Luck and Qiang Guo Pursuant to Section 276 of New York Debtor and Creditor Law, Made Applicable by Section 544 of Bankruptcy Code* (Adv. Proc. No. 22-05027, Feb. 28, 2023) [Docket No. 40], in connection with which the Debtor's son, Qiang Guo, has defaulted.  *Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Entry of Default Judgment against Qiang Guo* (Adv. Proc. No. 22-05027, June 2, 2023) [Docket No. 93].

Limited, entities purportedly owned by the Debtor's daughter, to hold title to the Debtor's private Bombardier aircraft (which Mei Guo testified was sold in the summer of 2022).[11]

18.     Previously, Judge Liman of the United States District Court for the Southern District of New York found, in a 2021 decision, that Eastern Profit Corporation Limited, another company purportedly held by the Debtor's daughter, was "in essence, a shell corporation" for the Debtor.[12]  Eastern Profit Corporation Limited was one of numerous purportedly independent entities whose financial accounts were identified by a 2018 Hong Kong court order to be "subject to the effective control" of the Debtor.[13]

19.     Relatedly, a confidential witness declaration filed by the Trustee under seal at Docket No. 1327 (the "Confidential Witness Declaration") and incorporated by reference as an exhibit in support of this Complaint, establishes, among other things ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

20.     Most importantly, this Court has issued rulings that entities and individuals at issue in this adversary proceeding are under the Debtor's control.  Specifically, this Court found that numerous purportedly independent entities and organizations involved in the Debtor's recent social media and protest campaign, including G-Series Entities Gettr, GFashion, GMusic,

---

[11]   *Complaint of Chapter 11 Trustee for Estate of Ho Wan Kwok for (I) Declaratory Judgment, Pursuant to Sections 541, 542, and 544 of the Bankruptcy Code and Bankruptcy Rule 7001, that Property Held by Mei Guo is Property of Estate and (II) Related Relief* (Adv. Proc. No. 23-05008, May 16, 2023) [Docket No. 1].

[12]   *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL), 2021 WL 2554631, at *1 (S.D.N.Y. June 22, 2021).

[13]   Ex. 2, Hong Kong Restraint Order, at 7-18.

GClubs, GNews, and GEdu,[14] were controlled by the Debtor,[15] led by the Debtor,[16] and/or served "the purposes of . . . and as business vehicles of" the Debtor.[17]

21.     This Court separately found, in its order holding the Debtor in contempt for violating the Court's corporate governance order, that the Debtor was the beneficial owner of Ace Decade Limited (and, through it, Dawn State Limited), and that the Debtor controlled and employed Ace Decade Limited's nominee owner, Yvette Wang.[18]  The Trustee has since learned that Yvette Wang, while the Ace Decade proceedings were ongoing (but after the Court found, on November 17, 2022, that the Debtor exclusively beneficially owned and controlled Ace Decade as of the February 15, 2022 petition date[19]), transferred the stock of Ace Decade that she nominally owned to an individual located in Switzerland (who, upon information and belief, is another associate of the Debtor).

## II.     HCHK Entities Are Alter Egos of or Equitably Owned by Debtor

### A.  HCHK Entities Nominally Owned and Staffed by Debtor's Employees

22.     Each of the HCHK Entities has the exact same ownership structure, which points directly to their control by the Debtor.  Each HCHK Entity is directly owned 99.9999% by Holy City and 0.0001% by a long-time employee of the Debtor, Anthony DiBattista, who is also

---

[14]   PI Decision ¶ 2 ("The GSeries includes the following entities: Himalaya Exchange, Gettr, GFashion, GMusic, GClubs, GNews, and GEdu.").

[15]   PI Decision ¶ 3 ("The Debtor also controls Saraca Media Group and a related entity 'GTV'").

[16]   *Id.* ¶ 7 ("The Debtor is the leader of The Whistleblower Movement, NFSC, ROLF, and Himalaya.").

[17]   *Id.* ("The Whistleblower Movement, NFSC, ROLF, GSeries, and Himalaya serve the purposes of the Debtor, serve as business vehicles for the Debtor, and their members are personally loyal to the Debtor.").

[18]   *Order Granting Motion to Hold Debtor in Contempt of Corporate Governance Order* ¶¶ 1, 4 (Jan. 24, 2023) [Main Case Docket No. 1372] (the "Corp. Governance Contempt Order").

[19]   *See Order Regarding Partial Resolution of Trustee's Contempt Motion* ¶ 1 (Nov. 17, 2022) [Main Case Docket No. 1110].

director and president of HCHK Property and Lexington Property. Holy City is 100% owned by the Debtor's assistant, Yvette Wang.[20]

23.    This Court has already ruled that "[t]he Debtor has control over Ms. Wang" and that he "has employed Yvette Wang for several years, and has directed her to take actions on his behalf, including directing her to act on his behalf to purchase properties such as the Sherry-Netherland apartment."[21]  Ms. Wang has served the Debtor in numerous other roles, including as an officer and/or authorized signatory of Golden Spring, Hudson Diamond Holding LLC, Hudson Diamond NY LLC, Leading Shine NY Limited, Saraca Media Group, Inc., GTV Media Group, Inc., and Genever Holdings LLC.[22]  The Trustee in his investigation has learned that Ms. Wang was widely known to be the Debtor's personal assistant.  When asked at his deposition whether Ms. Wang was his employee, the Debtor asserted his Fifth Amendment right against self-incrimination.[23]

24.    On March 15, 2023, Ms. Wang was arrested in connection with charges that she had, among other things, conspired with the Debtor in connection with his criminal fraud and

---

[20]    Lan Mu (Ya Li), a purported director of Holy City who signed the Written Consent of Shareholders authorizing the Assignment for the Benefit of Creditors of HCHK Technologies is, upon information and belief, a close associate of the Debtor.  It is not clear at what point Lan Mu (Ya Li) became a director of Holy City given the U.S. Government's allegation that Yvette Wang was the sole director of Holy City.  *See* Ex. 3*, Letter*, at 4 n.2, *United States v. Kwok,* No. 1:23-cr-00118-AT (S.D.N.Y. Mar. 29, 2023) [Docket No. 10] (the "Kwok Criminal Case Letter").  ("The defendant is listed as the sole director of Holy City Hong Kong Ventures Ltd., and she signed various HCHK corporate documents, including shareholder resolutions, in that capacity on behalf of Holy City Hong Kong Ventures Ltd.").

[21]    Corp. Governance Contempt Order ¶ 4.

[22]    Ex. 4, Affidavit of Yan Ping Wang ¶ 1, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. May 15, 2018) [Docket No. 182] ("I am the President of Golden Spring (New York) Ltd., and in that capacity serve as an administrator for the interests of [the Debtor] and his family."); Ex. 5, Hudson Diamond Holding LLC, Consent of Sole Member Without a Meeting, dated July 17, 2019 (rendering Ms. Wang signatory) (HR0010121); Ex. 6, Hudson Diamond Holding LLC, Consent of Sole Member Without a Meeting, (HR0020577); Ex. 7, Hudson Diamond NY LLC, Consent of Sole Member Without a Meeting, (HR0039240); Ex. 8, ██████████████████████; Ex. 9, Himalaya Coin Certificate of Assumed Name, dated March 14, 2020; Ex. 10, Himalaya Dollar Certificate of Assumed Name, dated March 14, 2020; Ex. 11, Complaint ¶ 9a, *United States v. Wang*, No. 1:23-mj-02007-UA (S.D.N.Y. Mar. 10, 2023) [Docket No. 1] ("Wang was an Executive Director of GTV"); *Debtor's Declaration Pursuant to Local Bankruptcy Rule 1007-2* ¶ 1, (Case No. 22-50592, Oct. 12, 2020) [Docket No. 1].

[23]    Ex. 12, Kwok Dep. Tr. at 33:11-13 (Mar. 2, 2023).

money-laundering activities.  According to the U.S. Government, Ms. Wang played an "instrumental role" in the Debtor's fraud scheme as his "trusted chief of staff who is tasked with managing operations at even those entities with which she has no formal affiliation."[24]

25.    Anthony DiBattista is also a long-standing employee of the Debtor, serving in various roles at different Debtor-controlled companies.  Mr. DiBattista was employed at Golden Spring, and has served the Debtor as a corporate officer of GTV,[25] GFashion,[26] and GClubs.[27]  When the Debtor was asked at his deposition whether Mr. DiBattista was his employee, the Debtor asserted his Fifth Amendment right against self-incrimination.[28]

26.    In addition to Mr. DiBattista, key personnel of the HCHK Entities are former employees or officers of the Debtor's "family office," Golden Spring.  These other Golden Spring personnel who moved to the HCHK Entities include Max Krasner,[29] Joe Wang,[30] Bernardo Enriquez,[31] and Alex Hadjicharalambous.[32]  Upon information and belief, the HCHK Entities are merely a continuation of Golden Spring with new corporate letterhead.  Other HCHK personnel include Elliott Dordick,[33] an individual this Court found to be an employee of Gettr,[34]

---

[24]    Ex. 3, Kwok Criminal Case Letter, at 18.

[25]    *See* PI Decision ¶ 3 ("The Debtor also controls Saraca Media Group and a related entity 'GTV,' which is commonly referred to collectively as GTV.").

[26]    *See id.* ("The Debtor created GFashion.").

[27]    The U.S. Government has alleged that GClubs "was functionally controlled by" the Debtor, Ex. 24, Indictment ¶ 10, *United States v. Kwok*, No. 1:23-cr-00118-AT, (S.D.N.Y. Mar. 6, 2023) [Docket No. 2], that the Debtor and William Je used GClubs to "fraudulently obtain[] more than $250 million," *id.* ¶ 14, and that GClubs funds were used to pay personal expenses of the Debtor and his family. *Id.* ¶ 15.

[28]    Ex. 12, Kwok Dep. Tr. at 87:6-8

[29]    Mr. Krasner, in addition to his work at the HCHK entities, was an employee of Golden Spring who also served the Debtor in numerous other roles, including as officer and/or authorized signatory of Hudson Diamond Holding LLC, Hudson Diamond NY LLC, Infinity Treasury Management Inc. (parent company of Lamp Capital LLC), and Rule of Law Foundation.

[30]    Mr. Wang is VP of Technology of HCHK Technologies and was formerly employed as Chief Technology Officer, or in a similar role, at Golden Spring.

[31]    Mr. Enriquez, in addition to his work at the HCHK Entities, worked at Golden Spring and served as Treasurer of Lamp Capital LLC, among other roles.

[32]    Mr. Hadjicharalambous, in addition to his work at the HCHK Entities, worked for several years at other Debtor-controlled entities such as Golden Spring, GClubs, and Freedom Media Ventures Ltd.

[33]    Elliot Dordick, Esq., LinkedIn, https://www.linkedin.com/in/elliot-dordick-esq-3639b5a0/

[34]    PI Decision ¶ 13.

an entity that is part of the G-Series Entities which this Court found "serve the purposes of the Debtor" and "serve as business vehicles for the Debtor."[35]  As the Court may recall, Mr. Dordick was involved in the Debtor's protest campaign against the Trustee and PAX.

**B.  HCHK Entities Are Affiliates of G-Series Entities**

27.    The HCHK Entities are not, as the Assignee Defendant's filings with the State Court seem to suggest, independent businesses that simply happen to have done business with entities linked to the Debtor.[36]  They are affiliates of the Debtor's G-Series Entities that, together with such entities, comprised a single enterprise controlled by the Debtor and dedicated to promoting the Debtor's interests.

28.    As discussed in the Assignee's Affidavits, the HCHK Entities' business was located at 3 Columbus Circle, in New York City, where HCHK Property and Lexington Property sublet office space.  This is the location where associates of the Debtor, acting at the Debtor's behest, filmed videos in support of the Debtor, including videos in late 2022 calling for protests against the Trustee, PAX, and their counsel.  These activities led to the Court's issuance of its preliminary injunction decision [Docket No. 133 in Adv. Proc. No. 22-05032] where the Court found, among other things, that the Debtor controlled the G-Series Entities.  Upon information and belief, these videos attacking the Trustee and PAX were produced using the video and electronic equipment disclosed by the Assignee Defendant as purported assets of HCHK Technologies.[37]

---

[35]    PI Decision ¶ 7.

[36]    The Assignee Defendant's description of HCHK Technologies, for example, states that HCHK Technologies is an "emerging global technology and consulting firm that provides strategic solutions across multiple business lines.  Functioning comparably to a Professional Employer Organization (PEO), the Assignor offers its clients professional a la carte consulting services across Technology, Product Development, Engineering, Human Resources, Recruitment, Legal, Finance, and R&D."  Ex. 13, Order to Show Cause, Affidavit & Petition of Brian Hofmeister ¶ 4, *HCHK Tech., Inc. v. Hofmeister*, Index No. 510008/2023, (N.Y. Sup. Ct. May 18, 2023) (the "HCHK Tech. Aff.").

[37]    Ex. 13, HCHK Tech. Aff., Ex. B, Deed of Assignment for the Benefit of Creditors.

29.     Documents produced by the HCHK Entities' accounting firm, Marcum LLP, ("Marcum") show the degree to which the HCHK Entities and the G-Series Entities operated as a single business on behalf of the Debtor.  Among other things, the documents show that Marcum had no doubt who controlled the HCHK Entities and G-Series Entities.  As stated in an internal April 2021 email by one Marcum accountant, "[w]e are representing entities **indirectly owned by Miles Kwok**, owner of GTV media."[38]

30.     Moreover, a brief review of the Marcum documents (which require further examination) shows that the role of the HCHK Entities was, among other things, to serve as a "piggy bank" for the Debtor's businesses.  It was for this reason that Marcum's engagement letter provided that Marcum would provide services to Lexington Property "and Affiliates," and Marcum was explicitly tasked with preparing not only the tax returns of the HCHK Entities, but also those of other Debtor-controlled entities as well, including GFashion and GTV.[39]  Similarly, Marcum classified HCHK Technologies' assets to include bank accounts corresponding to Gettr, GFashion, and "FMV" (an acronym that, upon information and belief, refers to another Debtor-controlled company called Freedom Media Ventures).  This "piggy bank" role is consistent with the schedule of assets filed by the Assignee Defendant with respect to HCHK Technologies, which discloses accounts receivable of $12,559,423.06.  Upon information and belief, these accounts receivable include obligations purportedly owed to HCHK Technologies by G-Series Entities or other companies controlled by the Debtor.

### C.  HCHK Entities Pay Debtor's Expenses

31.     Financial documents in the possession of the Trustee also show that the Debtor used the HCHK Entities to pay a variety of his expenses.  While the Trustee's analysis of these

---

[38]    Ex. 14, Email to Keady from Hirschfeld, April 23, 2021.
[39]    Ex. 15, Marcum Engagement Letter, April 14, 2022, Attachment B.

documents is not complete, some examples of the HCHK Entities' payments on behalf of the Debtor include, among others:

    a.  In October 2022, HCHK Technologies paid $123,452.00 to Yachtzoo Ltd. (together with its affiliates, "Yachtzoo"). Yachtzoo is the management company for the *Lady May*, which Justice Ostrager and this Court ruled was the Debtor's yacht.

    b.  In September 2021, HCHK Technologies paid $215,018.00 to ACASS Canada Ltd. (together with its affiliates, "ACASS"). ACASS was at that time the management company for the Debtor's Bombardier aircraft (which Mei Guo testified was sold in the summer of 2022).

    c.  In November 2021, HCHK Technologies paid $2,788,680.00 to the aircraft manufacturer Cirrus Industries, Inc., or affiliates thereof. Upon information and belief, the purpose of this payment was to purchase a new private plane for the Debtor, the Cirrus SF50 jet that has been cited in filings in connection with the Debtor's criminal case.[40]

32.    Moreover, according to documents in the possession of the Trustee, Lexington Property, though ostensibly only in the business of subleasing office space (at least according to the Assignee's Affidavits[41]), has made numerous payments to entities and individuals associated with the Debtor, which payments were made, upon information and belief, on behalf of the Debtor. Recipients of these payments included, among others:

    a.  Yvette Wang;

    b.  Max Krasner (employee of the Debtor with numerous roles at Debtor-controlled companies);

    c.  Scott Barnett (believed to be another driver and bodyguard of the Debtor);

    d.  Aaron Mitchell (essentially the Debtor's general counsel);

---

[40]  Ex. 16, Motion for Relief from Order Denying Pre-Trial Releases, at 20, *United States v. Kwok*, No. 23-6421 (2d Cir. May 5, 2023) [Docket No. 6.1].

[41]  *See* Ex. 17, Order to Show Cause, Affidavit & Petition of Brian Hofmeister ¶ 5, *Lexington Prop. & Staffing, Inc. v. Hofmeister*, Index No. 510007/2023 (N.Y. Sup. Ct. May 25, 2023) (the "Lexington Aff.") ("Upon information and belief, the Assignor and HCHK Property were both formed, essentially, to function as the tenant (or subtenant) and as a property management companies with respect to their respective 3 Columbus Circle office spaces.").

e.  Lawall & Mitchell, LLC[42] (Aaron Mitchell's law firm, and one of the "ordinary course professionals" proposed by the Debtor in March 2022 [Docket No. 119]);

f.  Baker & Hostetler LLP (the Debtor's personal counsel in the litigation before Justice Ostrager, and one of the "ordinary course professionals" proposed by the Debtor in March 2022 [Docket No. 119]);

g.  Morvillo Abramowitz Grand Iason & Anello PC and Cahill Gordon & Reindel LLP (law firms representing GTV[43]);

h.  Phillips Nizer LLP (which served as counsel to Lamp Capital LLC in the litigation before Justice Ostrager);

i.  Himalaya Ventures, LLC (an entity, upon information and belief, affiliated with one or more of the Debtor's "Himalaya Farm" organizations);

j.  Beile ("Prince") Li (prominent associate of the Debtor and leading participant in protests against the Trustee and PAX);

k.  Yan Yan Tsang (upon information and belief, an employee of the Debtor who, along with the Debtor, Yvette Wang, the Debtor's wife and daughter, and Han Chunguang (one of the Debtor's bodyguards), filed a lawsuit against United States Citizenship and Immigration Services in support of the Debtor's asylum application and their own asylum applications);

l.  Yinying Wang (upon information and belief, the secretary of Qidong Xia, an individual who, upon information and belief, is currently acting as the Debtor's second-in-command with respect to multiple Debtor-controlled entities and organizations); and

m.  An entity called 17 Miles LLC (recipient of $146,795.63 in 2021 and, upon information and belief, affiliated with the Debtor).

---

[42]  The "Lawall" of Lawall & Mitchell is Dara Lawall, who, upon information and belief, is the daughter of Francis Lawall of Troutman Pepper Hamilton Sanders LLP, counsel to Bravo Luck Limited. Dara Lawall is also, upon information and belief, the wife of Aaron Mitchell, who is thus, upon information and belief, Mr. Lawall's son-in-law.

[43]  Morvillo Abramowitz Grand Iason & Anello PC also represents Anthony DiBattista in connection with the Trustee's Bankruptcy Rule 2004 investigation.

### D. HCHK Entities Financed by Debtor

33.    The Assignee Defendant's filings in the State Court contain disclosures regarding the creditors[44] of the HCHK Entities which show that the HCHK Entities have received their funding from the Debtor through the Debtor's associates, controlled entities, and representatives.

### i. HCHK Technologies' Creditors

34.    The Assignee Defendant has disclosed that HCHK Technologies' financial creditors consist exclusively of multiple unnamed individuals (the "Undisclosed Creditors") owed a total of $51,684,947.50[45] (as compared to HCHK Technologies' disclosed assets of approximately $17,500,000 in value[46]), whose "names are being withheld for confidentiality purposes."[47]  The Assignee Defendant in his affidavit states, referring to these Undisclosed Creditors, that:

> Upon information and belief, aside from business revenues, [HCHK Technologies] has also received funding from certain individual investors, who are Chinese dissidents and identify as being part of a social network and movement to expose the alleged corruption and human rights abuses of the CCP . . . The [Undisclosed Creditors] are extremely sensitive about disclosing their names and personal contact information in connection with these proceedings out of fear for retribution by the CCP.  For this reason, [HCHK Technologies] has represented to me that the Investors have appointed six individuals, who are comfortable disclosing their names and contact information, to serve as their agents and representatives in this matter.[48]

35.    This description of the Undisclosed Creditors, which mirrors the arguments used by the Debtor to explain his own desire for secrecy, indicates that the Undisclosed Creditors are

---

[44]    The disclosures take the form of lists of creditors which, along with lists of assets, are attached to the Deeds of Assignment submitted with the Assignee Affidavits.  These lists were, according to the Deeds of Assignment, delivered by the HCHK Entities to the Assignee Defendant, and so apparently constitute representations made by the HCHK Entities (controlled by the Debtor and his associates), not the result of any analysis or investigation conducted by the Assignee Defendant.

[45]    Ex. 13, HCHK Tech. Aff., Ex. B, HCHK Technologies' list of creditors.  In addition to these financial creditors, the creditor list discloses vendors holding claims of $206,703.19, which amount includes a $51,000 claim owed to HCHK Property.

[46]    Ex. 13, HCHK Tech. Aff. ¶ 19.

[47]    Ex. 13, HCHK Tech. Aff., Ex. B HCHK Technologies' list of creditors, n.5.

[48]    Ex. 13, HCHK Tech. Aff. ¶ 8.

associates of the Debtor.  That indication is confirmed by the identities of the six creditor

representatives, which are disclosed on HCHK Technologies' list of creditors filed by the

Assignee Defendant (the "Creditor Representatives").[49]  These individuals are all, upon

information and belief, associates of the Debtor.

36.     Four of the six Creditor Representatives, Yumei Hao, Hao (Gavin) Li, Yongping

Yan, and Yinying Wang, are particularly well known associates of the Debtor.  Yumei Hao has,

upon information and belief, worked for the Debtor at GClubs and other entities and

organizations controlled by the Debtor.  Hao (Gavin) Li and Yongping Yan both protested

against the Trustee in Grand Central Station in New York City near the entrance to the offices of

Paul Hastings, appeared in video broadcasts in support of the Debtor, and dined with the Debtor

at the Sherry Netherland.  Yinying Wang is, upon information and belief, the secretary of Qidong

Xia, an individual who, upon information and belief, is currently acting as the Debtor's second-

in-command with respect to multiple Debtor-controlled entities and organizations.

### ii.   HCHK Property's Creditors

37.     The situation with respect to HCHK Property is nearly identical.  The Assignee

Defendant has disclosed that HCHK Property has multiple "creditors and/or investors" owed a

total of $48,187,299.77[50] (as compared to HCHK Property's disclosed assets of approximately

$29,785,936 in value[51]) whose "names are being withheld for confidentiality purposes."[52]  In

---

[49]   The names of these Creditor Representatives are: Hao (Gavin) Li, Yinying (Aila) Wang, Chris Lee, Yongping Yan, Jintao Li, and Yumei Hao.

[50]   Ex. 18, Order to Show Cause, Affidavit & Petition of Brian Hofmeister, Ex. B, HCHK Property's list of creditors, *HCHK Prop. Mgmt., Inc., v. Hofmeister*, Index No. 510006/2023 (N.Y. Sup. Ct. May 23, 2023) (the "HCHK Prop. Aff.").

[51]   Ex. 18, HCHK Prop. Aff. ¶ 20.

[52]   Ex. 18, HCHK Prop. Aff., Ex. B, HCHK Property's list of creditors, n.4.

other words, these are the Undisclosed Creditors, represented by the Creditor Representatives who, as discussed above, are associates of the Debtor.

### iii. Lexington Property's Creditors

38.    Finally, the list of creditors of Lexington Property discloses total claims of at least $32,183,837.03[53] (as compared to HCHK Technologies' disclosed assets of approximately $2 million in value[54]) owed to the following Debtor-affiliated entities:

a. ACA Capital Group Limited ("ACA Capital"), listed with a claim of $29,613,402.07. ACA Capital is an entity purportedly owned by the Debtor's alleged criminal accomplice, William Je, who currently remains at large. As the Court will recall from the litigation surrounding the *Lady May*, entities purportedly owned by William Je have a history of, among other things, providing funding to the Debtor as supposed "loans," including Himalaya International Financial Group Ltd.'s $37 million alleged loan to HK USA, which the Debtor caused HK USA to use to fund an escrow account pursuant to a stipulation with the Court, and the $1 million alleged loan from ACA Capital to Eastern Profit Corporation Limited that Judge Liman found to be in fact a gift.[55] When asked at his deposition whether he owned and controlled ACA Capital, the Debtor invoked the Fifth Amendment.[56]

b. Golden Spring, listed with a claim of $570,434.96. At this point, the Debtor's control of Golden Spring (whose president was Yvette Wang), and the Debtor's use of Golden Spring to pay for his expenses, is well known. When asked at his deposition whether he owned and controlled Golden Spring, the Debtor invoked the Fifth Amendment.[57]

c. Leading Shine, with a claim listed as "TBD." Leading Shine is purportedly owned by Yvette Wang,[58] who has also served as the company's authorized signatory.[59] Among other things, Leading Shine was used by the Debtor to help fund Greenwich Land LLC.[60] When asked

---

[53]  Ex. 17, Lexington Aff., Ex. B, Lexington list of creditors.
[54]  Ex. 17, Lexington Aff. ¶ 19.
[55]  *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL), 2021 WL 2554631, at *12.
[56]  Ex. 12, Kwok Dep. Tr. at 72:23-73:7.
[57]  Ex. 12, Kwok Dep. Tr. at 54:4-13.
[58]  Ex. 8, ███████████████████████
[59]  *Id.*
[60]  *See* Ex. 19, ███████████████████████████████████
███████████████████ Ex. 20 ████████████████████████████████

at his deposition whether he owned and controlled Leading Shine, the Debtor invoked the Fifth Amendment.[61]

d. Saraca Media, with a claim listed as "TBD." The evidence of the Debtor's control of this entity is voluminous, and this Court has already found that Saraca Media is controlled by the Debtor.[62] When asked at his deposition whether he owned and controlled Saraca Media, the Debtor invoked the Fifth Amendment.[63]

e. Savio Law LLC, listed with a claim of $2,000,000. The principal of Savio Law LLC is or was Nicholas F. Savio. Mr. Savio currently practices with Lawall & Mitchell, the law firm of the Debtor's general counsel, Aaron Mitchell.[64] Previously, Mr. Savio and Mr. Mitchell were colleagues at the law firm of Cohen & Howard, L.L.P., where they represented the Debtor in litigation before the federal district court in New Jersey.[65] ▮▮▮▮▮ In sum, upon information and belief, Savio Law LLC is a representative of the Debtor and any payments it made to Lexington Property were payments made on behalf of the Debtor.

### E. Government's Allegations Regarding Debtor's Control of HCHK Entities

39.    In pleadings filed in connection with its criminal prosecution against the Debtor and Yvette Wang, the U.S. Government has alleged, among other things:

a. **HCHK Technologies** is a "Kwok controlled company that . . . sent employees to the [United Arab Emirates] earlier this year to establish bank accounts that, as Kwok claimed, would be beyond the 'long-arm jurisdiction' of the United States."[67] These employees "spent more than approximately six weeks in the UAE, apparently to assist in moving Kwok's and [William] Je's operations abroad."[68]

---

[61]    Ex. 12, Kwok Dep. Tr. at 49:15-50:7.
[62]    PI Decision, ¶ 3 ("The Debtor also controls Saraca Media Group and a related entity 'GTV'").
[63]    Ex. 12, Kwok Dep. Tr. at 73:12-20.
[64]    Lawall & Mitchell, LLC, https://lmesq.com/attorneys/nick-savio/.
[65]    Ex. 21, Letter, *Guo v. Teng*, No.:3:18-cv-02110-MAS-TJB (D.N.J. Dec. 19, 2018) [Docket No. 32] (L&M(2) 0028986).
[66]    Ex. 22, ▮▮▮▮▮
[67]    Ex. 23, Letter Response, at 7 n.7, *United States v. Kwok*, Case 1:23-cr-00118-AT (S.D.N.Y. April 12, 2023) [Docket No. 42] (the "Kwok Criminal Case Letter Response").
[68]    Ex. 3, Kwok Criminal Case Letter, at 3-4.

b. Gettr and **HCHK Technologies** are "Kwok- and [William] Je-controlled companies that are funded, in part, using fraud proceeds."[69] Gettr "is a social media company that Kwok controls through a series of shell companies," and "Gettr and **the HCHK entities** . . . operate out of the same office location."[70]

c. "Photographs of annotated documents located inside a folder in [Yvette Wang's] purse at her apartment appear to reflect, in substance and in part, certain transactions and balances for six bank accounts held in the names of **HCHK Technologies and HCHK Property Management** . . . GFNY, Inc. (i.e., GFashion), and GF Italy (i.e., GFashion Italy)."[71]

d. "A photograph of another document located inside the folder in [Yvette Wang's] purse at her apartment appears to reflect, in sum and in substance, that [Yvette Wang] signed payroll expenses associated with various Kwok-controlled entities . . . . The document further indicates how certain payroll expenses were to be allocated among affiliated entities, **including HCHK**."[72]

**F. Debtor Asserts Fifth Amendment When Questioned About HCHK Technologies and HCHK Property**

40.    In his deposition on March 2, 2023, the Debtor was asked whether he owned and controlled HCHK Technologies and HCHK Property.  The Debtor invoked the Fifth Amendment in response.[73]

## III.    Assignment for Benefit of Creditors Should Be Enjoined

**A. Assignment Proceedings**

41.    On April 20, 2023, each of the HCHK Entities executed a Deed of Assignment purporting to assign all of their assets to the Assignee Defendant.

42.    On April 25, 2023, each of the Deeds of Assignment was filed with the clerk of the State Court.

---

[69]    Ex. 3, Kwok Criminal Case Letter, at 18.
[70]    Ex. 3, Kwok Criminal Case Letter, at 8 n.5.
[71]    Ex. 23, Kwok Criminal Case Letter Response, at 3.
[72]    Ex. 23, Kwok Criminal Case Letter Response, at 3-4.
[73]    Ex. 12, Kwok Dep. Tr. at 84:22-85:3.

43.     On May 10, 2023, the Assignee Defendant filed his Assignee Affidavit and related documents with respect to HCHK Technologies, and, on May 18, 2023, the State Court issued an order to show cause why an Assignment Proceeding should not be commenced with respect to HCHK Technologies, with an objection deadline of **June 15, 2023** and a hearing date of June 20, 2023 (on papers only, without oral argument).  The Trustee's counsel was emailed a copy of the order to show cause, Assignee Affidavit, and related documents on May 30, 2023.

44.     On May 23, 2023, the Assignee Defendant filed his Assignee Affidavit and related documents with respect to Lexington Property, and on May 25, 2023, the State Court issued an order to show cause why an Assignment Proceeding should not be commenced with respect to Lexington Property, with an objection deadline of June 21, 2023 and a hearing date of June 28, 2023 (on papers only, without oral argument).  The Trustee's counsel was emailed a copy of the order to show cause, Assignee Affidavit, and related documents on May 30, 2023.

45.     On May 23, 2023, the Assignee Defendant filed his Assignee Affidavit and related documents with respect to HCHK Property, and on May 31, 2023, the State Court issued an order to show cause why an Assignment Proceeding should not be commenced with respect to HCHK Property, with an objection deadline of June 27, 2023 and a hearing date of June 30, 2023 (on papers only, without oral argument).  The Trustee's counsel was emailed a copy of the order to show cause, Assignee Affidavit, and related documents on June 5, 2023 (after having been emailed these same materials, absent the entered order to show cause, on May 30, 2023).

### B.  Assignee Affidavits

46.     The Assignee Affidavits contain descriptions of each of the HCHK Entities.  The related documents filed with the Assignee Affidavits include schedules, prepared by the HCHK Entities, purporting to show the assets of each of the HCHK Entities and the claims of creditors

against them.  According to these documents, the HCHK Entities possess significant assets, including over $35 million in cash, but, assuming the validity of disclosed claims, are each insolvent: (a) HCHK Technologies possesses assets of approximately $17.5 million in value, of which $4.5 million is cash, as compared to financial creditor claims of $51,684,947.50 and vendor creditor claims of $206,703.19;[74] (b) HCHK Property possesses assets of approximately $29,785,936 in value,[75] the entirety of which consists of cash, as compared to creditor claims of $48,187,299.77;[76] and (c) Lexington Property possesses assets of approximately $2 million, the entirety of which consists of cash, as compared to creditor claims of at least $32,183,837.03.[77]

47.     The Assignee Affidavits describe the HCHK Entities using innocuous corporate jargon, implying that they are independent companies that simply happen to have as clients certain entities affiliated with the Debtor.[78]  For example, HCHK Technologies is described as "an emerging global technology and consulting firm that provides strategic solutions across multiple business lines" that "offers its clients professional a la carte consulting services across Technology, Product Development, Engineering, Human Resources, Recruitment, Legal, Finance, and R&D."[79]

48.     The Assignee Defendant notes Yvette Wang's ownership of the HCHK Entities and the fact that she and the Debtor were arrested and jailed, explaining that Ms. Wang's

---

[74]   Ex. 13, HCHK Tech. Aff., Ex. B, HCHK Technologie's creditor list.  These vendor creditor claims include a $51,000 claim owed to HCHK Property.

[75]   Ex. 18, HCHK Prop. Aff. ¶ 20.

[76]   Ex. 18, HCHK Prop. Aff., Ex. B, HCHK Property's list of creditors.

[77]   Ex. 17, Lexington Aff., Ex. B, Lexington list of creditors.

[78]   *See* Ex. 13, HCHK Tech. Aff. at 5 n.1 (noting that Club, G Music, GFNY, and G Fashion "are affiliated with Ho Wan Kwok . . . a Chinese dissident with a prolific online presence and large social media following, outspoken criticism of the Chinese Communist Party" and that "[o]n February 15, 2022, Kwok commenced a voluntary chapter 11 case in the United Bankruptcy Court for the District of Connecticut, which remains pending").

[79]   Ex. 13, HCHK Tech. Aff. ¶ 4.

imprisonment was a catalyst for the Deeds of Assignment.[80]  The Assignee Defendant does not

mention Yvette Wang's employment by the Debtor (as found by this Court), or that she is the

Debtor's "trusted chief of staff" (as described in the U.S. Government's filings).[81]  Similarly, the

Assignee Defendant does not discuss the Debtor's links with Gettr, stating only that certain G-

Series Entities other than Gettr are affiliated with the Debtor.

49.     The Assignee Defendant does not disclose the identities of the creditors of HCHK

Technologies and HCHK Property, claiming that these Unnamed Creditors are individuals whose

names cannot be revealed due to their fear of CCP reprisals.  While the Assignee Defendant does

disclose the names of the Creditor Representatives, he does not point out that they include

associates of the Debtor whose protest activities on behalf of the Debtor and at the Debtor's

direction were subject to orders of this Court.

50.     Moreover, while the Assignee Defendant discloses that the creditors of Lexington

Property consist of ACA Capital, Golden Spring, Leading Shine, Saraca Media, and Savio Law,

he does not disclose the connections between these entities and the Debtor, many of which are

matters of public record in this Chapter 11 Case, such as, for example, Yvette Wang's role as

president of Golden Spring, or the Court's finding that the Debtor controls Saraca Media.[82]

51.     In sum, while the Assignee Affidavits and related filings submitted to the State

Court provide important information regarding the HCHK Entities, they do not present a

complete picture of the nature of the HCHK Entities and their connection to the Debtor.

---

[80]   *See, e.g.*, Ex. 13, HCHK Tech. Aff. ¶ 10 ("Following Yvette's incarceration, as well as the Assignor's loss of
GETTR as its primary customer, the Assignor determined, in the exercise of its business judgment, that it was
in the best interests of the Assignor and all of its stakeholders to assign all its assets to me, an independent
fiduciary, for the benefit of creditors.").

[81]   Ex. 3, Kwok Criminal Case Letter, at 18.

[82]   PI Decision ¶ 3.

52.     What does come across from the Assignee Affidavits and related filings is that the HCHK Entities should be subject to a federal bankruptcy process.  Among other things, they are insolvent, require investigation with respect to their assets, liabilities, and financial condition, and the individual nominally in charge of the HCHK Entities, Yvette Wang, is now in prison.

### C.  Assignee Defendant's Intentions with Respect to Assignment Proceeding

53.     The Assignee Affidavits and related documents filed by the Assignee Defendant, including proposed orders setting forth the relief sought by the Assignee Defendant from the State Court, make clear that the Assignee Defendant intends to commence what is essentially a separate state law chapter 11 process for the HCHK Entities, with the Assignee Defendant to play a role analogous to that of a bankruptcy trustee (except that he has been selected by the HCHK Entities, not the United States Trustee).

54.     According to the Assignment Affidavits, the Assignee Defendant intends to "investigate and analyze the [HCHK Entities'] books and records and potential claims and causes of action that may be brought on behalf of the [HCHK Entities'] estates and prosecute such claims as may be warranted," "pursue a sale of some or substantially all of the [HCHK Entities'] non-cash assets through a public sale or as otherwise ordered by the Court," and "after giving all creditors and stakeholders (including appropriate governmental authorities) due and proper notice and opportunity to submit claims, to verify, reconcile, and make distributions to provable claims against the [HCHK Entities'] estates in accordance with their respective legal priorities as set forth in the Deeds and applicable law."[83]  Under the Deeds of Assignment, the Assignee Defendant is given the power to "settle any and all claims against or in favor of Assignor, with the full power to compromise, or, **in Assignee's sole discretion**, to sue or be

---

[83]    Ex. 17, Lexington Aff. ¶ 12.

sued, and to prosecute or defend any claim or claims of any nature whatsoever existing in favor

of Assignor."[84]  In addition, the Assignee Defendant seeks authority from the State Court to

retain counsel and a financial advisor, including the law firm of McManimon, Scotland &

Baumann, LLC, which has represented the HCHK Entities in connection with the Trustee's

investigation in this Chapter 11 Case.[85]

### D.  Necessity of Injunction of Assignment Proceedings

55.     According to the Second Circuit Court of Appeals:

> Section 105(a) is to be 'construed liberally to enjoin suits that might impede the
> reorganization process'—or, as here, the process of liquidation.  Liberal
> construction reflects 'the underlying principle of preserving the debtor's estate for
> the creditors and funneling claims to one proceeding in the bankruptcy court.'
> We have held that § 105(a) is properly used to enjoin creditors' lawsuits against
> third parties where 'the injunction plays an important part in the debtor's
> reorganization plan,' or where the action to be enjoined 'will have an immediate
> adverse economic consequence for the debtor's estate.'

*In re Bernard L. Madoff Inv. Sec., LLC*, 512 F. App'x 18, 20 (2d Cir. 2013) (internal citations

removed).

56.     An injunction against the continuation of the Assignment Proceedings is

warranted pursuant to sections 105, 362, 363, and 549 of the Bankruptcy Code for a number of

reasons.

57.     First, allowing the Assignment Proceeding to continue would give a "green light"

to the violation of the automatic stay.  The Trustee asserts that the HCHK Entities are alter egos

of or equitably owned by the Debtor.  If the Trustee prevails on his alter ego claim, it will mean

that the HCHK Entities will be merged with the Debtor's estate and all of the assets of the

---

[84]   Ex. 17, Lexington Aff., Ex. B, Deeds of Assignment for the Benefit of Creditors ¶ 4(f).
[85]   *See e.g., HCHK Technologies, Inc., HCHK Property Management, Inc. and Lexington Property and Staffing,
Inc's Objection To Production Request, Motion To Quash and/or Motion to Modify 2004 Examination
Subpoenas* [Main Case Docket No. 1291].

HCHK Entities will constitute estate property as of the date of the Debtor's chapter 11 filing on February 15, 2022 (the "Petition Date").  In that scenario, the Deeds of Assignment represent null and void violations of the automatic stay committed by individuals who wrongfully transferred estate assets to the Assignee Defendant, or, at the very least, exerted control over the HCHK Entities.[86]  If the Trustee instead prevails on his equitable ownership claim in connection with the HCHK Entities and/or their assets, it will similarly mean (a) that ownership interests in the HCHK Entities and related rights of corporate control constituted property of the estate as of the Petition Date, and the usurpation of these rights to execute the Deeds of Assignment would represent a null and void stay violation,[87] and/or (b) that the estate was the equitable owner of the assets of the HCHK entities, the transfer of which to the Assignee Defendant would be a clear stay violation.

58.    Second, the Assignment Proceedings represent duplicative proceedings that threaten to splinter the Debtor's Chapter 11 Case into separate pieces and create costly and time-consuming challenges to estate administration.  Already, the Assignment Proceedings have created multiple and imminent filing deadlines with respect to which the Trustee must respond, and, if allowed to proceed, the Assignment Proceedings will result in the inevitable multiplication of pleadings, deadlines, and hearings.  Unchecked, the Assignee Defendant will proceed with a duplicative investigation and claims allowance process; a recipe for disaster,

---

[86]    And, even if not null and void as stay violations, the Deeds of Assignment would represent transfers of estate property prohibited and avoidable under section 549(a) of the Bankruptcy Code and impermissible under section 363(b) of the Bankruptcy Code, which only allows estate assets to be used, sold, or leased outside of the ordinary course of business after notice and a hearing before this Court.

[87]    Moreover, putting aside the usurpation of corporate control, the Deeds of Assignment would violate the stay in the event that the HCHK Entities are equitably owned by the Debtor (as opposed to being the Debtor's alter egos), because the automatic stay would apply to the HCHK Entities as wholly-owned subsidiaries of the Debtor.  *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) ("the stay applies to Queenie because it is wholly owned by Gardner, and adjudication of a claim against the corporation will have an immediate adverse economic impact on Gardner").

26

especially considering all the delay and cost the Debtor has already imposed on his creditors by creating hundreds of shell companies to hide his assets, something the Trustee is attempting to reverse by bringing assets into one insolvency process where all the Debtor's creditors can seek a recovery.  Indeed, it is a core principle of our bankruptcy laws that there should be one forum in which a Debtor's financial affairs are resolved, militating strongly in favor of enjoining the Defendants and any party acting in concert with them from commencing or continuing the Assignment Proceedings.

59.    Third, the Assignment Proceedings are not only duplicative, but decidedly inferior to the Chapter 11 Case before this Court.  For one thing, the Chapter 11 Case provides a more robust legal framework: to give one example, state law cannot impose an automatic stay like the Bankruptcy Code can.  More importantly, as practical matter, putting the Debtor's insolvency process before a State Court unfamiliar with the Debtor is completely nonsensical given the complexity of the Debtor's affairs.  Only this Court has the benefit not only of its experience with the Debtor and his affiliated entities, but of key precedential rulings and findings (which the Debtor and his associates will surely seek to challenge or deviate from if they are in another forum).  Moreover, it is this Court that already established and conducted a process for the filing of claims, including with expansive notice procedures and procedures for the confidential submission of claims, resulting in the filing of over a thousand claims by the Debtor's creditors.  It is unclear how these creditors will be notified about, much less participate adequately in, the Assignment Proceedings.  Indeed, it seems likely that these creditors will be shut out of the Assignment Proceedings and denied any recovery from the HCHK Entities' assets, thus suffering extreme prejudice.  Even those creditors able to participate in the Assignment Proceeding will suffer unwarranted prejudice because they will have been forced to

undergo the effort and expense (and, without adequate confidentially procedures, significant personal risks) of submitting claims in a new and unfamiliar proceeding.

60.     In addition, the Trustee is leaps and bounds ahead of the Assignee Defendant in connection with his investigation of the HCHK Entities, as demonstrated in this Complaint, which seeks to incorporate the HCHK Entities and their assets into the estate for the benefit of the Debtor's creditors based on voluminous evidence gathered in the Trustee's ongoing investigation (evidence that the Trustee will develop further in the course of this adversary proceeding). By contrast, the Assignee Defendant appears to not yet be aware of key facts in connection with the HCHK Entities, as demonstrated by the examples of important information omitted from the Assignee Affidavits, as discussed above. These omissions suggest that the HCHK Entities, under the control of the Debtor, chose to pursue the Assignee Proceeding as a way to avoid the Trustee and this Court and find a different court where they could "start afresh" and more easily craft a favorable narrative.

61.     A key dynamic here is that the Debtor and his associates do not want to be scrutinized by this Court or investigated by the Trustee. The Debtor has continually opposed the Trustee's involvement and on two occasions sought to replace the Trustee with someone else. If the Assignment Proceedings are allowed to go forward, the Debtor and his associates will no doubt seek to avoid the Trustee and this Court by pursuing assignments for the benefit of creditors with respect to other entities that, like the HCHK Entities, are subject to the Trustee's investigation and facing imminent alter ego or other actions by the Trustee. The Debtor and his associates will seek to use such state court proceedings as a way to distribute assets to "friendly" creditors (such as the creditors listed in the Assignment Affidavits for the HCHK Entities) rather than allow those assets to be distributed to the Debtor's victims who have filed claims in the

28

Chapter 11 Case.  In other words, allowing the Assignment Proceedings for the HCHK Entities

to go forward is likely to result in even more assignment proceedings being commenced,

resulting in an even greater multiplication of duplicative proceedings, expense, delay, and

confusion.  That is an outcome that would play directly into the hands of the Debtor and result in

manifest injustice for the Debtor's numerous creditors who look to this Court and this Chapter 11

Case for some recovery on their claims.

## **FIRST CLAIM**

**(Declaratory Judgment that HCHK Entities are the Debtor's Alter Egos, that Assignment
of HCHK Entities' Assets Violated Automatic Stay and Is Null and Void, and Ordering
Turnover of HCHK Entities' Assets to Trustee)**

62.     The Trustee repeats and realleges the allegations contained in paragraphs 1-61.

63.     Delaware law applies to the alter ego claim because the HCHK Entities are

Delaware entities.[88]

64.     Under Delaware's two-pronged test for piercing the corporate veil, a court

applying Delaware's alter ego analysis to the Debtor's relationship with the HCHK Entities will

focus on (1) whether the Debtor and the HCHK Entities operated as a single economic unit and

(2) whether there was an overall element of injustice or unfairness.  In determining whether

entities operated as a single economic unit, a court applying Delaware law would consider a

number of factors, including, among others, whether the HCHK Entities were adequately

---

[88]     *See, e.g.*, *Universitas Education, LLC v. Benistar*, No. 3:20-cv-00738 (JAM), 2021 WL 965794, at *7 (D. Conn.
Mar. 15, 2021) ("[B]ecause [defendant] is incorporated in Delaware, I must apply Delaware law to decide if it
may be subject to an alter ego claim for reverse veil piercing liability.").

capitalized, observed corporate formalities, and were a facade for the Debtor.[89] This "list of factors is not exhaustive and no single factor is dispositive."[90]

65. The Debtor exercised control and dominion over the HCHK Entities such that the HCHK Entities had no independent existence from the Debtor and the Debtor used the corporate form to perpetrate a fraud and injustice. The HCHK Entities are an alter ego of the Debtor, because, among other reasons, the HCHK Entities:

      a. were nominally owned and staffed by the Debtor's employees;

      b. are affiliates of the Debtor's G-Series Entities that this Court has already found to be controlled by or to serve as business vehicles for the Debtor, as part of a single enterprise controlled by and serving the interests of the Debtor;

      c. paid the Debtor's expenses, including with respect to the *Lady May* and the Debtor's Bombardier jet (which Mei Guo testified was sold in the summer of 2022); and

      d. were funded by the Debtor through the Debtor's associates, controlled companies, and representatives.

66. At all relevant times, the Debtor was indebted to one or more creditors. Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

67. Because the HCHK Entities were at all times alter egos of the Debtor, their assets were, following the Petition Date, assets of the Debtor's estate. Therefore, the Deeds of Assignment represent null and void transfers of estate assets in violation of the automatic stay,

---

[89] *Blair v. Infineon Tech., AG*, 720 F. Supp.2d 462, 470-71 (D. Del. 2010) (Noting the factors that the Third Circuit considers in determining whether a corporation operated as a single economic entity, which notably would not include whether the relevant individual is a shareholder of the entity, but would include "gross undercapitalization; failure to observe corporate formalities . . . [and] whether the corporation is merely a facade.").

[90] *Id.* at 471.

which prohibits, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6).

68.      Accordingly, the Trustee seeks a ruling pursuant to sections 362, 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times the HCHK Entities were an alter ego of the Debtor; (b) any and all of the assets held by the HCHK Entities at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by the HCHK Entities at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, including the HCHK Entities' $35 million in cash, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; (2) declaring the Deeds of Assignment and assignments of assets pursuant thereto to be null and void; and (3) ordering the turnover of any and all of the assets of the HCHK Entities to the Trustee.

## **SECOND CLAIM**

### **(In Alternative)**

### **(Declaratory Judgment that Debtor Is Equitable Owner of HCHK Entities, that Assignment of HCHK Entities' Assets Violated Automatic Stay and Is Null and Void, and Ordering Turnover of Ownership of the HCHK Entities and/or their Assets to Trustee)**

69.      The Trustee repeats and realleges the allegations contained in paragraphs 1-61.

70.      The same facts, discussed above, establishing that the HCHK Entities are alter egos of the Debtor, also support the alternative conclusion that the Debtor is the equitable owner of the HCHK Entities and/or their assets.[91]

---

[91] *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1051 (2d Cir. 1997) (defendant that "exercised considerable authority over [the corporation] . . . to the point of completely disregarding the corporate form and ***acting as though [its] assets were his alone to manage.***") (emphasis added).

71.     At all relevant times, the Debtor was indebted to one or more creditors.  Such creditors could have pursued the relief sought herein by the Trustee in exercise of such creditors' rights.

72.     Because the HCHK Entities were equitably owned by the Debtor, the ownership and corporate control rights over the HCHK Entities, and/or the assets of the HCHK Entities, were, following the Petition Date, property of the Estate.  The use of those ownership and corporate control rights in connection with the execution of the Deeds of Assignment and the purported assignment of the HCHK Entities' assets to the Assignee Defendant violated the automatic stay, which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Therefore, the Deeds of Assignment and assignments of assets pursuant thereto are null and void.

73.     Accordingly, the Trustee seeks a ruling, pursuant to sections 362, 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in the HCHK Entities purportedly held by Holy City and Anthony DiBattista, and/or the assets of the HCHK Entities (including but not limited to assets purportedly transferred to the Assignee Defendant and/or held by the Assignee Defendant), are property of the Debtor's chapter 11 estate; (2) declaring the Deeds of Assignment and assignments of assets pursuant thereto to be null and void; and (3) ordering the surrender of ownership interests and related rights of corporate control in the HCHK entities, and/or the assets of the HCHK Entities, to the Trustee.

### THIRD CLAIM

**(Injunctive Relief Under Section 105, 362, 363, and 549 of the Bankruptcy Code)**

74.     The Trustee repeats and realleges the allegations contained in paragraphs 1-61.

75.     Section 105 of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

76.     Section 362's automatic stay prohibits, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

77.     Section 363 of the Bankruptcy Code permits the use, sale, or lease of estate property, other than in the ordinary course of business, but only "after notice and a hearing." 11 U.S.C. § 363(b)(1).

78.     Section 549 of the Bankruptcy Code provides for the avoidance of a transfer of property of the estate "that occurs after the commencement of the case" and "that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(1)(B).

79.     An injunction against the continuation of the Assignment Proceedings is warranted pursuant to section 105, 362, 363, and 549 of the Bankruptcy Code because, if allowed to continue, the Assignment Proceedings will have an immediate adverse consequence for the Debtor's estate.  Among other things, allowing the Assignment Proceedings to go forward would effectively permit the continued violation of the automatic stay, the Assignment Proceedings are both duplicative of and decidedly inferior to the Chapter 11 Case, and allowing them to continue will encourage the Debtor to commence new assignment proceedings with his other alter ego entities as a strategy to bypass scrutiny by the Trustee and this Court.

80.     Accordingly, the Trustee seeks a ruling, pursuant to sections 105, 362, 363, and 549 of the Bankruptcy Code, enjoining the Defendants and any party acting in concert with them from commencing or continuing the Assignment Proceedings (or any other judicial,

administrative, or other actions or proceedings with respect to the HCHK Entities and/or their assets), enjoining any transfer or use of the assets, including cash, of the HCHK Entities (including but not limited to such assets purportedly transferred to the Assignee Defendant and/or held by the Assignee Defendant), or ownership interests in the HCHK Entities, except as authorized or directed by the Trustee or this Court, and requiring that the Defendants immediately notify the State Court of such injunction.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that judgment be entered as follows:

1.      On the First Claim, an order pursuant to sections 362, 541, 542, and 544 of the Bankruptcy Code, (1) declaring that: (a) at all times the HCHK Entities were an alter ego of the Debtor; (b) any and all of the assets held by the HCHK Entities at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor; and (c) any and all assets held by the HCHK Entities at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present, including the HCHK Entities' $345 million in cash, constituted and constitute, as applicable, property of the Debtor's chapter 11 estate; (2) declaring the Deeds of Assignment and assignments of assets pursuant thereto to be null and void; and (3) ordering the turnover of any and all of the assets of the HCHK Entities to the Trustee;

2.      On the Second Claim, an order, pursuant to sections 362, 541, 542, and 544 of the Bankruptcy Code, (1) declaring that the ownership interests in the HCHK Entities purportedly held by Holy City and Anthony DiBattista, and/or the assets of the HCHK Entities, are property of the Debtor's chapter 11 estate; (2) declaring the Deeds of

Assignment and assignments of assets pursuant thereto to be null and void; and

(3) ordering the surrender of ownership interests and related rights of corporate control in the HCHK entities, and/or the assets of the HCHK Entities, to the Trustee;

3.      On the Third Claim, an order, pursuant to sections 105, 362, 363, and 549 of the Bankruptcy Code, enjoining the Defendants and any party acting in concert with them from commencing or continuing the Assignment Proceedings (or any other judicial, administrative, or other actions or proceedings with respect to the HCHK Entities and/or their assets), enjoining any transfer or use of the assets, including cash, of the HCHK Entities (including but not limited to such assets purportedly transferred to the Assignee Defendant and/or held by the Assignee Defendant), or ownership interests in the HCHK Entities, except as authorized or directed by the Trustee or this Court, and requiring that the Defendants immediately notify the State Court of such injunction;

4.      Reasonable attorneys' fees, costs, and expenses incurred in this action; and

5.      Such other and further relief as the Court may deem just, proper, or equitable under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

Dated:    June 8, 2023             LUC A. DESPINS,
           New Haven, Connecticut    CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    plinsey@npmlaw.com

       *and*

    Nicholas A. Bassett *(pro hac vice* pending)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

       *and*

    Avram E. Luft *(pro hac vice* pending)
    Douglass Barron *(pro hac vice* pending)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    aviluft@paulhastings.com

    *Counsel for the Chapter 11 Trustee*