## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors[1] | (Jointly Administered) |
| | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | Adv. P. No. 23-05013 (JAM) |
| Plaintiff, | |
| v. | July 5, 2023 |
| HCHK TECHNOLOGIES, INC., HCHK PROPERTY MANAGEMENT, INC., LEXINGTON PROPERTY AND STAFFING, INC., HOLY CITY HONG KONG VENTURES, LTD., ANTHONY DIBATTISTA, YVETTE WANG, and BRIAN W. HOFMEISTER, ASSIGNEE FOR THE BENEFIT OF THE CREDITORS | |
| Defendants. | |



**OBJECTION OF SHIN HSIN YU, 1332156 B.C. LTD,
GWGOPNZ LIMITED AND JAPAN HIMALAYA LEAGUE, INC. TO
CHAPTER 11 TRUSTEE'S MOTION, PURSUANT TO BANKRUPTCY
RULE 9019, REGARDING SETTLEMENT WITH ASSIGNEE OF HCHK
ENTITIES UNDER NEW YORK COURT ASSIGNMENT PROCEEDINGS**

Shin Hsin Yu ("Mr. Yu"), 1332156 B.C. LTD ("1332156 B.C."), GWGOPNZ Limited

("GWGOPNZ") and Japan Himalaya League, Inc. ("Japan Himalaya") (collectively, the "HCHK

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202), and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, the Genever Holdings Corporation, is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for the purposes of notices and communications).

1

Creditors"),[2] by their attorneys, Pastore LLC, hereby file their objection ("Objection") to the Chapter 11 Trustee's Motion, Pursuant to Bankruptcy Rule 9019, Regarding Settlement with Assignee of HCHK Entities Under New York Court Assignment Proceedings (the "Motion to Compromise"). (ECF No. 25). In support of their Objection, the HCHK Creditors respectfully represent as follows:

## Preliminary Statement

1.      With this Objection, the HCHK Creditors seek to prevent a settlement that compromises their rights without providing them anything of value. As outlined in the Motion to Compromise, the Settlement Agreement provides benefits to both the Trustee and the Assignee at the HCHK Creditors' expense. Particularly because the Trustee[3] and the Assignee are required to act as fiduciaries, this result is simply not fair and equitable.

2.      The Settlement Agreement provides the Trustee with control of approximately $39,000,000, representing funds that were assigned by the HCHK Entities to the Assignee for the benefit of their creditors, including the HCHK Creditors. The Settlement Agreement further provides the Trustee with, in his view, an unobstructed path to a judgment in his favor in this Adversary Proceeding.[4]

3.      As for the Assignee, the Settlement Agreement provides him with the promise of a $550,000 fee, as well as with "exculpation" – immunity against claims by those whose interests the Assignee is obligated to serve as a fiduciary, again including the HCHK Creditors.

---

[2] Upon information and belief, there are likely additional similarly situated, *bona fide* creditors of the HCHK Entities.

[3] For the convenience of the Court, any Capitalized terms undefined herein shall have the meaning ascribed to them in the Motion to Compromise (ECF No. 25).

[4] The HCHK Creditors disagree with the Trustee that only the Assignee has standing to contest the allegations in the Complaint. Nothing this objection should be construed as a waiver of the HCHK Creditors' rights to seek to intervene in the Adversary Proceeding or otherwise oppose the relief sought by the Trustee.

4.      The HCHK Creditors, by contrast, receive no benefits. Under the Settlement Agreement the HCHK Creditors lose the protection of the New York proceeding in which their claims would be administered in an orderly, economic fashion. The Settlement Agreement contemplates that they will be required to join the long line of the Debtor's creditors, and that the HCHK Entities' assets will be used to satisfy not only the claims of the creditors of those entities (including the HCHK Creditors) but also the claims of all the Debtors' creditors. In other words, the HCHK Creditors are likely to receive a smaller recovery in a longer period of time with absolutely no showing that they have done anything wrong. The HCHK Creditors also lose their recourse against the Assignee.

5.      To be sure, the Trustee is responsible for administering the Debtor's estate and protecting against fraud. If the allegations in the Complaint are true – *IF* the Trustee can prove that the HCHK Entities are *alter egos* of the Debtor – then the consolidation of the HCHK Entities' assets with those of the Debtor may be appropriate and the HCHK Creditors will properly be required to seek payment through the Chapter 11 proceeding. Due process demands, however, that the HCHK Creditors not be stripped of their rights without compensation on the basis of unproven allegations, especially given that the HCHK Entities elected to assign their assets to the **Assignee for the benefit of their creditors** in the New York Court Proceedings, not a federal bankruptcy proceeding, and where the Assignee's sole role and purported authority to act at all flows solely from the New York proceedings.

6.      The gravamen of the Complaint is that the HCHK Entities are *alter egos* of the Debtor. If that is true, and if the HCHK Entities' assignments are of no effect (which is what the Complaint alleges), then the Assignee has no power to enter into a settlement with the Trustee. The Trustee, however, wants it both ways. The Trustee actually argues in the Motion to

3

Compromise that not only does the Assignee have such authority, but also that no other party in interest has standing to challenge the Trustee's allegations. The Trustee's position is fatally inconsistent.

7. The Trustee's position also fails to respect the jurisdiction of the Supreme Court of the State of New York for New York County (the "State Court") tasked with supervising the assignment for the benefit of creditors proceeding commenced by the Assignee. The Settlement Agreement contemplates that the State Court will be asked to, for example, approve the retention of professionals, but will be forbidden from approving the professionals' compensation. The Settlement Agreement also contemplates that the Assignee will transfer the HCHK Entities' assets to the Trustee without approval by the State Court, contrary to New York law. Indeed, it is unclear on what authority the Assignee can even enter into a settlement without the approval of the State Court. The Assignee is a fiduciary to the HCHK Creditors. His powers were created by New York law and he is answerable to the State Court. The Motion to Compromise is silent as to how or why the Assignee can take such consequential actions without State Court approval for good cause shown.

8. The HCHK Creditors respect justice and the need to prevent fraud. But, justice is not a steamroll depriving these parties of rights without due process and picking and choosing when rights do and do not exist for the pleasure of the Trustee.

### Factual Background

### *The HCHK Creditors*

9. The HCHK Creditors are *bona fide*, good-faith creditors of HCHK Property Management, Inc. and HCHK Technologies, Inc.

10.     Mr. Yu's combined claim against HCHK Property Management, Inc. and HCHK Technologies, Inc. is $1,550,000. Attached hereto as **Exhibit A** is Mr. Yu's bank records indicating said transfer.[5]

11.     1332156 B.C.'s combined claim against HCHK Property Management, Inc. and HCHK Technologies, Inc. is $20,218,097.78. Attached hereto as **Exhibit B** is a loan agreement dated July 17, 2022 between 1332156 B.C. and HCHK Property Management, Inc. and HCHK Technologies, Inc.

12.     GWGOPNZ's combined claim against HCHK Property Management, Inc. and HCHK Technologies, Inc. is $5,427,497.74. Attached hereto as **Exhibit C** is a loan agreement dated July 17, 2022 between GWGOPNZ and HCHK Property Management, Inc. and HCHK Technologies, Inc.

13.     Japan Himalaya's combined claim against HCHK Property Management, Inc. and HCHK Technologies, Inc. is $659,999.11. Attached hereto as **Exhibit D** is a loan agreement dated July 18, 2022 between Japan Himalaya and HCHK Property Management, Inc. and HCHK Technologies, Inc.

14.     Thus, in total, the above claims represent more than $27,000,000.

### *The New York Court Proceedings*

15.     On April 20, 2023, the HCHK Entities executed Deeds of Assignment for the **Benefit of Creditors** (the "Deeds"). (ECF No. 1 ¶¶ 3, 41). The Deeds assigned all of the HCHK Entities' assets to the Assignee. (ECF No. 1 ¶ 3). The Deeds were filed with the New York County Clerk's Office and delivered to the Assignee on April 25, 2023. (ECF No. 1 ¶ 42). Shortly thereafter, the Assignee filed affidavits and petitions in the State Court requesting the

---

[5] As of the 5:00 p.m. filing deadline on July 5, 2023, counsel is awaiting additional loan documentation from Taipei, Taiwan and intends to file supplemental documentation once said documentation is received.

commencement of an assignment for the **benefit of creditors** proceeding—a more than a century-old proceeding under the laws of the state of New York (the "New York Court Proceedings"), designed to provide protections to an entity's creditors in an efficient manner. (ECF No. 1 ¶¶ 3, 43-45).

16.     Pursuant to the Deeds (and New York law), the Assignee's ability "to sell or otherwise dispose of all personal property of Assignor…[is] **subject to the approval of the court, pursuant to Section 19 of the New York Debt. & Cred. Law….**" (ECF Nos. 1-14 at 35, 1-17 at 35, 1-18 at 36) (emphasis added).

17.     Pursuant to the Deeds, creditors of the HCHK Entities were to "be given notice of the assignment and the right to file verified claims, which shall set forth whether any, and, if so, what securities are held for such claim, and whether any, and, if so, what payments have been made thereon." (ECF Nos. 1-14 at 40, 1-17 at 40, 1-18 at 41).

18.     In the Assignee's affidavits and petitions requesting the commencement of the New York Court Proceedings, the Assignee informed the State Court that:

> The Assignor has also received funding from certain individual investors, who are Chinese dissidents and identify as being part of a social network and movement to expose the alleged corruption and human rights abuses of the CCP (collectively, the "Investors"). The Investors the Assignor has represented to me that the Investors have appointed six individuals, who are comfortable disclosing their names and contact information, to serve as their agents and representatives in this matter. I am currently investigating the relationship between the Assignor and the Investors and the Basis for their claims.

(ECF Nos. 1-14 at 7, 1-17 at 7, 1-18 at 7).

19.     Thus, claims filed by the HCHK Creditors are subject to the review and approval of the State Court. If the Trustee has grounds to object to said claims, presumably he could file the appropriate objection with the State Court.

6

20. Further, the Assignee informed the State Court of Yvette Wang's ("Ms. Wang") federal incarceration on charges related to fraudulently obtaining hundreds of millions of dollars from investors. (ECF Nos. 1-14 at 8, 1-17 at 7-8, 1-18 at 7-8). In fact, it was due to Ms. Wang's incarceration that the HCHK Entities decided to, in the exercise of their business judgment, assign all their assets to the Assignee, **an independent fiduciary, for the benefit of the HCHK Entities' creditors.** (ECF Nos. 1-14 at 8, 1-17 at 7-8, 1-18 at 7-8).

21. In order to carry out **his fiduciary duties to the HCHK Entities' creditors**, the Assignee sought the approval of the State Court, pursuant to New York law, to retain the law firm of Cole Schotz P.C. ("Cole Schotz"); as well as McManimon, Scotland & Baumann, LLC (the law firm that represented that HCHK Entities, which the Assignee represented could provide "valuable historical knowledge regarding the [HCHK Entities'] businesses and operations and circumstances leading up to the [New York Court Proceedings]") ("MSB"); and DLA, LLC (a comprehensive internal audit and accounting advisory firm) ("DLA") to assist him. (*See* ECF Nos. 1-14 at 12-22, 1-17 at 12-22, 1-18 at 12-22).

22. In connection with the New York Court Proceedings, the State Court issued Orders to Show Cause requiring any party objecting to the Assignee's requests to initiate the New York Court Proceedings or to the retention of the professionals identified above to submit a written objection to the State Court (the "Orders to Show Cause"). (ECF No. 1 ¶¶ 43-45).

23. Nowhere in the State Court filings does the Assignee suggest that the HCHK Entities are *alter egos* of the Debtor (or anyone else). Of course, the Assignee made no such statement because such a statement would, *inter alia*, be inconsistent with him accepting the role of assignee. The Assignee thus represented that the assignments were in good faith and legally valid.

24.     Now, as set forth in the Motion to Compromise, a mere 34 days after the Assignee's appointment, the Assignee has acquiesced to the Trustee's claims that the assignments were not in good faith and not legally permissible. How is that possible? The Assignee's flip/flop smacks of the type of backroom deal that is exactly the reason why our law requires judicial supervision of bankruptcy proceedings (and judicial supervision of state proceedings for the benefit of creditors). This Court, to the extent it elects to become involved, should exercise that oversight to protect the HCHK Creditors, who stand to lose significant rights under the proposed settlement. Moreover, to the extent that the Assignee came to the conclusion (rightly, wrongly or otherwise) that the assignment he received was somehow invalid, the proper course would have been for the Assignee to first seek the advice of the State Court, upon notice to HCHK Entities' creditors so they might be heard, as to the appropriate next steps – and not for the Assignee to rush off and enter into a secret, profitable and self-serving agreement with the Trustee.

### *The Commencement of the Adversary Proceeding*

25.     After receipt of Orders to Show Cause, rather than submit written objections to the State Court, the Trustee commenced this adversary proceeding by filing a Complaint (ECF No. 1), *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction (the "*Ex Parte* TRO") (ECF No. 4) and several related motions on June 8, 2023.

26.     The Complaint seeks a declaratory judgment that the HCHK Entities are *alter egos* of the Debtor, or an order that the Debtor equitably owns the HCHK Entities and injunctive relief. (ECF No. 1). The Complaint explicitly alleges that the Deeds "represent null and void transfers" of the HCHK Entities' assets. (ECF No. 1 ¶ 67). Accordingly, the Complaint takes pains to dispute the powers and authority of the Assignee. For example, the Complaint alleges that the Assignee is merely the "purported" representative of the HCHK Entities. (ECF No. 1 ¶¶ 15, 41, 72, 73 and

80). Similarly, it alleges that the Assignee has "ostensibly" been assigned the assets of the HCHK Entities. (ECF No. 1 ¶ 3 n. 3).

27. On June 12, 2023, this Court issued an Order granting in part the *Ex Parte* TRO (the "TRO Order"), which in part "restrained and enjoined [the Assignee and the other Defendants] from commencing or continuing the [New York Court Proceedings]." (ECF No. 18 at 14).

28. The TRO Order further required the Assignee to "immediately notify the State Court of the issuance of this TRO." (ECF No. 14 at 15). The HCHK Creditors have not been served with any such notice to the State Court and indeed have no knowledge that such notice was in fact provided or, if it was, what it said.[6]

### *The Motion to Compromise*

29. On June 23, 2023, a mere 15 days after the Trustee initiated the Adversary Proceeding, the Trustee filed the Motion to Compromise. (ECF No. 25).

30. The Motion to Compromise seeks to "[p]romptly…transfer the HCHK Funds to the Trustee Accounts…, including cash deposited in accounts at ConnectOnce Bankcorp., Inc., in the approximate amount of $38,835,734.27." (ECF No. 25 Exh. 1 ¶ 5).

31. The Motion to Compromise provides that the Assignee shall take certain actions related to the New York Court Proceedings. The Motion to Compromise envisions such actions to include seeking the State Court's approval of the retention of the Assignee's professionals. Under the Settlement Agreement, however, the Assignee's actions will now be subject to the review and approval of the Trustee. (ECF No. 25 Exh. 1 ¶ 9).

---

[6] The dockets of the New York Court Proceedings are not visible to the HCHK Creditors (and a request to the court clerk was met with the clerk's response that the dockets could not be made visible online). Accordingly, counsel for the HCHK Creditors requested from Assignee's counsel copies of what was filed in the New York Court Proceedings. Assignee's counsel provided four (4) documents and represented that they were "the only documents" filed with the Court (other than certificates of service associated with the four documents). No copy of a notice of the TRO to the State Court was provided.

32.     Further, "any relief granted by the [State Court] in connection with the [New York Court Proceedings] shall not be binding on this Court with respect to issues within this Court's exclusive jurisdiction, such as the chapter 11 estate's payment to the Assignee's professionals or the Assignee himself under the Settlement Agreement." (ECF No. 25 Exh. 1 ¶ 10). Thus, despite the State Court's approval being necessary to retain the Assignee's professionals, the State Court will not have the power to review or approve the compensation of said professionals or the Assignee.

33.     Rather, under the Motion to Compromise, "in the event the Court issues a Dispositive Ruling in favor of the Trustee" in the Adversary Proceeding, the Trustee shall make settlement payments from the Trustee Accounts to the Assignee and the Assignee's professionals. (ECF No. 25 Exh. 1 ¶ 11). The Assignee will receive an amount of $550,000. (ECF No. 25 Exh. 1 ¶ 11). Further, the Motion to Compromise sets the fee structure for all professionals retained by the Assignee for their work pertaining to the New York Court Proceedings and securing the HCHK Entities' assets: (i) Cole Schotz will receive an amount no greater than $400,000; (ii) MSB will receive an amount no greater than $75,000; and (iii) DLA will receive an amount no greater than $155,000. (ECF No. 25 Exh. 1 ¶ 11). Fees and expenses for additional work will be subject to the approval of the Trustee (but again, not the State Court).

34.     Further, in the event the Court finds in favor of the Trustee in the Adversary Proceeding, the HCHK Entities' funds will be added to the overall pot of the Debtor's assets and split among all the Debtor's creditors. (ECF No. 25 Exh. 1 ¶ 12).

35.     According to the Trustee, "approximately 1,300 claims have been filed in" the various chapter 11 cases associated with the Debtor and, as suggested by the Trustee at the June

10

27 Status Conference, the Debtor's estate has an insufficient amount of funds to pay out these claims. (ECF No. 26 ¶ 15).

36. Moreover, pursuant to the Motion to Compromise, the Assignee is instructed to "take no position and file no pleadings with respect to the relief sought by the Trustee in (a) the Complaint, (b) the TRO Motion, or (c) any Dispositive Motion filed in the Adversary Proceeding...." (ECF No. 25 Exh. 1 ¶ 7).

37. According to the Trustee, the Motion to Compromise "is likely to assist the Trustee in his efforts to resolve the Adversary Proceeding given the lack of standing by other parties that might seek to oppose the Trustee's claims." (ECF No. 25 ¶ 28).

38. Moreover, the Motion to Compromise provides for a sweeping "exculpation" clause if the Trustee is successful in the Adversary Proceeding, including that "all creditors and/or equity holders of the HCHK Entities will be barred and enjoined and restrained from commencing, prosecuting or asserting any request, claim, or cause of action...against the Assignee...." (ECF No. 25 Exh. 1 ¶ 13). The HCHK Creditors had no voice in negotiating that get out of jail free card, which flagrantly subverts the primary jurisdiction of the State Court in supervising the judicial assignment for benefit of creditors proceeding currently pending (and being treated as non-existent by the very Assignee whose sole authority stems from New York statutory law and said New York judicial proceedings). No monies should be removed from the State Court's jurisdiction unless and until there is either an order of the State Court following notice and a hearing or, barring that, a final judgment of this Court determining that the entirety of the $39,000,000 is property of the Estate and that creditors of the HCHK Entities have no valid or colorable ownership interest in the funds they advanced to the HCHK Entities.

**Legal Standard**

39.     Under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." While the decision to approve or reject a Settlement Agreement is left to the discretion of the trial judge, "…a bankruptcy court is required to arrive at an 'informed and independent judgment' on whether a settlement is fair and equitable." *In re Homesteads Cmty. at Newtown*, LLC, 526 B.R. 1, 7 (D. Conn. 2014) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) and *E. 44th Realty, LLC v. Kittay*, 2008 U.S. Dist. LEXIS 7337, at *8 (S.D.N.Y. Jan. 23, 2008)). The Court "must avoid the extremes of rubberstamping the settlement proposal on one hand and giving too little deference to the opinions and perspectives of the trustees and interested parties on the other hand." *Id.*

40.     In weighing whether to approve a settlement pursuant to Bankruptcy Rule 9019, courts in this Circuit consider the following factors:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation…; (3) …the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting…the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*Nuevo Pueblo, LLC v. Napolitano (Nuevo Pueblo, LLC)*, 608 F. App'x 40, 42 (2d Cir. 2015) (citing *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007)).

41.     "The Second Circuit has instructed that when the rights of non-settling parties are implicated by the terms of a settlement, the court cannot approve it without considering the interests of those non-settling parties." *Official Comm. of Unsecured Creditors v. Pardee (In re*

*Stanwich Fin. Servs. Corp.)*, 377 B.R. 432, 437 (Bankr. D. Conn. 2007) (citing *In re Drexel Burnham Lambert Group*, 995 F.2d 1138, 1146-47 (2d Cir. 1993) (applying class action standards of fairness in a bankruptcy case)). Thus:

> [W]here the rights of one who is not a party to a settlement are at stake, **the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval** . . . if third parties complain to a judge that a decree will be inequitable because it will harm them unjustly, **he cannot just brush their complaints aside**.

*Id.* (citing *In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020, 1026 (2d Cir. 1992)) (emphasis added).

42.     Further, the Court must

> balance the public interest in upholding the integrity of the bankruptcy system and preventing tainted compromise against the public interest in encouraging just, speedy, inexpensive, and final resolution of disputes. To the extent a proposed settlement includes provisions, the enforcement of which would be illegal or against public policy, it matters not whether the settlement is in the best interests of the estate. When the trustee requests the court itself to approve the settlement, the trustee is also requesting that the court put its own integrity at stake.

*In re Telcar Grp., Inc.*, 363 B.R. 345, 357 (Bankr. E.D.N.Y. 2007) (internal citations and quotation marks omitted).

## Argument

### I.   THE HCHK CREDITORS HAVE STANDING TO OBJECT TO THE MOTION TO COMPROMISE

43.     "A party has standing to object to a motion pursuant to Bankruptcy Rule 9019 if they are directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *Rescia v. Bertsos (In re Bertsos)*, No. 97-34158 (AMN), 2022 Bankr. LEXIS 2727, at *9 (Bankr. D. Conn. Sep. 30, 2022) (citing *In re Dunne*, 684 Fed. Appx. 85 (2d Cir. 2017) and *In re Teligent, Inc.*, 640 F.3d 53, 61 (2d Cir. 2011)).

13

44. "The standing of creditors to object to settlements under Rule 9019 is granted through the notice element of the rule, as the courts have noted that 'the general notice provisions in Bankruptcy Rule 2002(a)(3) enable interested entities to monitor the progress of the bankruptcy case and to interpose timely opposition to the proposed settlement.'" *Barnard v. Citibank, N.A. (In re Lynch)*, Nos. 15-74795-AST, 19-08119-AST, 2021 Bankr. LEXIS 1002, at \*12 (Bankr. E.D.N.Y. Apr. 15, 2021) (quoting *In re Thompson*, 965 F.2d 1136, 1140 (1st Cir. 1992), as amended (May 4, 1992)).

45. Further, it is well settled that "parties in interest" pursuant to Bankruptcy Rule 1109 have standing to object to a settlement under Rule 9019. *See Doral Center, Inc. v. Ionosphere Clubs, Inc. (In re Ionosphere Clubs, Inc.)*, 208 B.R. 812, 814 (S.D.N.Y. 1997) (noting that the list in section 1109 is not exhaustive); *Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.)*, 698 F.2d 571, 573 (2d Cir. 1983) ("The term 'party in interest' is not defined in the Code.").

46. Accordingly, courts interpret the term "on an ad hoc basis…to ensure that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains…." *In re Reyes*, No. 14-13233, 2015 Bankr. LEXIS 2575, at \*3 (Bankr. S.D.N.Y. Aug. 4, 2015) (citations and internal quotation marks omitted); *see also In re Johns-Manville Corp.*, 36 B.R. 743, 747-748 (Bankr. S.D.N.Y. 1984) (explaining that "parties in interest" is an "elastic" concept and that the "listing of examples of parties in interest in Code Section 1109 is not meant to exclude other types of interested parties from the purview of that section").

47. "'The general theory behind [section 1109] is that anyone holding a direct financial stake in the outcome of the case should have an opportunity…to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest.'" *Savage & Assocs., P.C.*

14

*v. K & L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 60 (2d Cir. 2011) (quoting Alan Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 1109.01 (16th ed. 2011); *accord FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 284 (7th Cir. 2002); *In re Alpex Computer Corp.*, 71 F.3d 353, 357 (10th Cir. 1995); *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir. 1993)).

48.     Here, it is clear that the HCHK Creditors have standing to object to the Motion to Compromise. The HCHK Creditors have substantial claims against HCHK Technology, Inc. and HCHK Property Management, Inc. *See* Exhs. A, B, C, D. Thus, the HCHK Creditors have standing as creditors of said entities. *See In re Lynch*, 2021 Bankr. LEXIS 1002, at *12 (Bankr. E.D.N.Y. Apr. 15, 2021).

49.     Even if the HCHK Creditors are not determined to be creditors for purposes of Bankruptcy Rule 2002(a)(3), as the HCHK Creditors are not creditors of the Debtor, the HCHK Creditors have standing as a "party in interest" pursuant to Bankruptcy Rule 1109. The HCHK Creditors hold "a direct financial stake in the outcome" of the Motion to Compromise because approximately $39,000,000 of the HCHK Entities' monies will immediately be transferred to the Trustee. (ECF No. 25 ¶ 11).

50.     Moreover, the Motion to Compromise seeks to strip the HCHK Creditors, good-faith creditors, of any recourse against the Assignee, their fiduciary, and strip them of their rights as creditors of the protection of New York law, including rights and protections they can assert in the New York Court Proceedings. (ECF No. 25 ¶ 21). The Exculpation clause has the effect of a release, for which the HCHK Creditors have received no consideration.

51.     Further, the Court ordered the Trustee to serve the HCHK Creditors with notice of the Motion to Compromise, which in and of itself indicates their standing to object. (ECF No. 35 ¶ 5).

15

52. Thus, the HCHK Creditors have standing to object to the Motion to Compromise.

**II. THE MOTION TO COMPROMISE SHOULD BE DENIED, AS IT DEPRIVES THE HCHK CREDITORS OF THE PROTECTIONS AFFORDED THEM BY THE NEW YORK COURT PROCEEDINGS**

**a. The New York Court Proceedings is a Valid, Legal Process Under New York Law**

53. The HCHK Entities made a business judgment to initiate a general assignment **for the benefit of creditors** pursuant to Article 2 of the Debtor Creditor Law of New York. By doing so, the HCHK Entities availed themselves of a valid, legal process to protect their creditors and ensure their creditors' ability to maximize their recovery. Thus, the HCHK Entities assigned their assets and liabilities to an independent third party to serve as a fiduciary to their creditors and stakeholders. (*See* ECF Nos. 1-14, 1-17, 1-18). It is noteworthy that the Assignee was never appointed as assignee for the benefit of the creditors of the Estate (nor presumably would the Assignee have any jurisdiction to so act as that power has already been subsumed by this Court and the Trustee). Nonetheless, that is the role that the Assignee has undertaken as the end-result of his secret, backroom dealings with the Trustee, and the Assignee now even has the temerity to purport to enter into a settlement that, if approved, would effectively end the New York Court Proceedings without even having first sought, no less obtained, the approval of the State Court.

54. Courts have defined a general assignment for the benefit of creditors as "a voluntary transfer by a debtor of all his property, to a trustee of his own selection, for administration, liquidation, and equitable distribution among his creditors." *Freeman v. Marine Midland Bank-New York*, 419 F. Supp. 440, 447 (E.D.N.Y. 1976) (citing 28 N.Y. Jur., Insolvency § 7 at 569) (internal quotation marks omitted).

55. "There is nothing manipulative or improper about an assignment for the benefit of creditors." *Dimaria v. Goor*, No. 09-CV-1011(JG)(RML), 2010 U.S. Dist. LEXIS 104858, at *25

(E.D.N.Y. Sep. 30, 2010) (citing *In Re Short Hills Caterers, Inc.*, 08-18604 DHS, 2008 Bankr. LEXIS 1726, 2008 WL 2357860, at *5 (Bankr. D.N.J. June 4, 2008)) (discussing a similar assignment for the benefits of creditors proceeding under New Jersey law). "While the Debtor is allowed to choose the assignee, the assignee must act as a fiduciary to creditors, and is charged with maximizing the funds to be distributed to creditors in equal fashion, not unlike the trustee in a Chapter 7 proceeding." *In Re Short Hills Caterers, Inc.*, 08-18604 DHS, 2008 Bankr. LEXIS 1726, at *14 (Bankr. D.N.J. June 4, 2008) (discussing a similar assignment for the benefits of creditors proceeding under New Jersey law).

56.     Pursuant to New York law, and acknowledged in the Assignee's filings in the New York Court Proceedings, the Assignee is to serve as a fiduciary for the **HCHK Entities' creditors**. (ECF Nos. 1-14 at 8, 1-17 at 8, 1-18 at 8). "The material and essential characteristic of a general assignment is the presence of a trust. The assignee is merely trustee, and not absolute owner. He buys nothing and pays nothing but takes the title for the performance of trust duties." *Brown v. Guthrie*, 18 N.E. 254, 255 (N.Y. 1888).

57.     Further, the Assignee's abilities to sell or **transfer** the HCHK Entities' assets are subject to the approval of the State Court, which the Assignee and the HCHK Entities acknowledged in the Deeds:

> [T]o sell or otherwise dispose of all personal property of Assignor…[is] **subject to the approval of the court, pursuant to Section 19 of the New York Debt. & Cred. Law**, and Assignee shall have the power to execute any and all documents necessary to effectuate the sale of said property and to convey title of same.

(ECF Nos. 1-14 at 35, 1-17 at 35, 1-18 at 36).

58.     NY Debtors & Creditors Law § 19 provides:

> **The judge may**, upon the application of the assignee and for good and sufficient cause shown, and upon such terms as he may direct,

> **authorize the assignee to sell, compromise or compound any claim or debt belonging to the estate of the debtor**. But such authority shall not prevent any party interested in the trust estate from showing upon the final accounting of such assignee that such debt or claim was fraudulently or negligently sold, compounded or compromised. The sale of any debt or claim heretofore made in good faith by any assignee shall be valid, **subject, however, to the approval of the judge**, and the assignee shall be charged with and be liable for, as part of the trust fund, any sum which might or ought to have been collected by him.

(emphasis added).

59. "The New York Debtor and Creditor Law **specifically empowers the court to adjudicate the validity of claims** and to allow or disallow them." *Freeman v. Marine Midland Bank-New York*, 419 F. Supp. 440, 447 (E.D.N.Y. 1976) (citing N.Y. DEBTOR AND CREDITOR LAW § 15 (McKinney 1975)) (emphasis added).

60. Thus, while the Trustee suggests the Assignee will have the unfettered ability to move and dispose of the HCHK Entities assets' without any checks and balances and, indeed, even goes so far as to say the New York Court Proceedings is "inferior to the Chapter 11 Case," this assumption is inconsistent with the laws of New York. (*See* ECF No. 1 ¶¶ 59, 79). The New York Court Proceedings is a valid, legal state court option that the HCHK Entities chose to avail themselves of, not merely an "inferior" proceeding.

61. Similarly, the Assignee accepted his position on the premise that he would act for the benefit of, and protect the interests of, the HCHK Creditors (and no other creditors) and be accountable to the State Court, but the ink was barely dry on the Assignee's appointment when the Assignee effectively treated the very state court processes from which his authority solely emanated as a nullity, without consulting at all with the State Court or providing any notice and opportunity for the HCHK Creditors to be heard before the State Court.

**b. The Motion to Compromise Should be Denied, as It Will Harm and Disenfranchise the HCHK Creditors Without a Finding of Fact**

62.     The New York Court Proceedings constitute a valid, legal option that the HCHK Entities invoked in an effort to protect their creditors, including the HCHK Creditors. The Trustee has alleged the HCHK Entities are *alter egos* of the Debtor and are merely a continuation of his notorious shell games, and he is entitled to seek to prove those allegations. The Trustee is not entitled, however to impair the HCHK Creditors' claims and impose upon them the "exculpation" of their claims against the Assignee (who owes them fiduciary duties under applicable New York law) based on mere allegations.

63.     The Trustee would have this Court believe that the HCHK Entities' assets are at grave risk of disappearing into the night never to be seen again if he does not obtain control of over $39,000,000 immediately. The Trustee's position ignores the safeguards built into New York law to prevent fraudulent transfers, including the requirement of approval from the State Court before any assets being administered by the Assignee can be sold or transferred.

64.     Indeed, the Assignee, under New York law, **cannot** transfer over $39,000,000, or even any substantial part of that sum, without approval of the State Court. *See* N.Y. DEBTOR AND CREDITOR LAW § 15. Here, the Assignee has neither sought nor been granted any approval by the State Court to sell or transfer any assets being administered under the supervision of the State Court. As such, the Assignee entering into a purported settlement agreement contemplating that all of the assets presently being administered by the Assignee should be transferred to the Trustee, who is subject only to the supervision of another court, in an entirely different jurisdiction, and all without any State Court approval, is an *ultra vires* act for which the Assignee has no legal authority to effect whatsoever rendering the Settlement Agreement a nullity.

19

65. Further, in the event the Court finds in favor of the Trustee in the Adversary Proceeding, the HCHK Entities' funds will be added to the overall pot of the Debtor's assets and split among all the Debtor's creditors. (ECF No. 25 Exh. 1 ¶ 12).

66. Thus, not only will there be an additional layer of administration in this Bankruptcy Case related to the New York Court Proceedings (*i.e.*, in that all the Assignee's actions, such as collecting and securing the assets, depositing them in a bank, dealing with the landlord, providing for the employees, etc. will require Trustee review and approval), but the HCHK Creditors must also compete with the Debtor's creditors for scarce assets to satisfy their claims. (ECF No. 25 Exh. 1 ¶¶ 9, 12). According to the Trustee, "approximately 1,300 claims have been filed in" the various chapter 11 cases associated with the Debtor. (ECF No. 26 ¶ 15). While the HCHK Creditors may not have to compete with all 1,300 claims, the HCHK Creditors' recovery on their claims is likely to be significantly reduced.

67. Accordingly, the HCHK Creditors should not be compelled to compete with the Debtor's creditors and most likely recover substantially less on their claims **unless** the HCHK Entities are, in fact, proven to be *alter egos* of the Debtor. **The Trustee should be required to prove the HCHK Entities are, in fact, *alter egos* of the Debtor before the HCHK Creditors are irreparably disenfranchised.** According to the Trustee, the Settlement Agreement will obviate the need for the Trustee to prove his case on the merits ostensibly, per the Trustee's self-serving reasoning, because (according to the Trustee) no one other than the Assignee has standing to challenge the allegations in the Complaint. This is an extraordinary position for the Trustee to take given the basis of the allegations in the Complaint are that the Assignee in fact has no standing and no status because the assignments were supposedly ineffective in the first place.

68.    The $39,000,000 should remain under the jurisdiction and control of the State Court unless and until either: (i) the State Court enters a final judgment directing either that those monies be distributed in the State Court case to HCHK Entities' creditors or, alternatively, delivered to the Trustee (in whole or in part), if the State Court determines after fully adjudicating the issue that said funds are in fact rightly property of the Debtor that should be administered by this Court; or (ii) the this Court makes findings that some or all of the $39,000,000 constitutes property of the Estate that should be administered by this Court.

c.   **The Motion to Compromise is Incongruent With Previous Judicial Filings**

69.    Moreover, the Motion to Compromise flagrantly violates the Assignee's fiduciary duties to the creditors of the HCHK Entities by prohibiting the Assignee from challenging or supporting the challenge of the Trustee's *alter ego* claims. (ECF No. 25 ¶ 11).

70.    By commencing the New York Court Proceedings, the Assignee (at least tacitly) represented to the State Court that the HCHK Entities were not *alter egos* of the Debtor. How could the Assignee make his filings in the New York Court Proceedings if he believed the HCHK Entities were *alter egos*? No answer to this question is anywhere to be found in the Trustee's Motion to Approve the Settlement. But, somehow, 34 days later, the Assignee agreed to capitulate to the Trustee's *alter ego* claim without explanation, and without any apparent prior notice to, or consultation with, either the State Court or any of the HCHK Entities' creditors. This Court should not allow such shell games to be blessed without more findings of fact.[7]

71.    Further, the equitable doctrine of judicial estoppel should prevent the Assignee from signing onto the Motion to Compromise. "[T]he equitable doctrine of judicial

---

[7] The explanation that jumps off the page is that the Settlement Agreement provides the Assignee a fee of $550,000 in exchange for his acquiescence to the relief requested by the Trustee. The HCHK Creditors very much hope there is another explanation. The Assignee should be required to provide it (under oath).

estoppel…'prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding.'" *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 264 (2d Cir. 2018) (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004)).

72.    The Assignee was successfully appointed by the Deeds, and he initiated the New York Court Proceedings. (*See* ECF Nos. 1-14, 1-17, 1-18). Presumably, the Assignee did so after a preliminary review of the HCHK Entities and based on the determination that the HCHK Entities were not mere *alter egos* of the Debtor, because if the Assignee believed the HCHK Entities were *alter egos* at the time of his filings in the New York Court Proceedings, his actions would have been improper since he was on notice of the ongoing bankruptcy proceedings related to the Debtor.

73.    Moreover, a mere 15 days after the Trustee initiated the Adversary Proceeding, the Trustee filed the Motion to Compromise, which is an overwhelming one-sided "settlement agreement" between the Trustee and the Assignee (the HCHK Creditors' fiduciary), and further sought to significantly shorten notice to make it difficult for creditors of the HCHK Entities to be able to organize quickly enough to oppose the Motion to Compromise. (ECF No. 25). Thus, the Assignee – notably someone whom the Trustee believed was an illusory figure without the authority to initiate or proceed with the New York Court Proceedings – magically obtained the authority to enter into a binding agreement, which, among other things, appears to be blatant self-dealing by the Assignee in that it provides for a $550,000 personal payment to the Assignee and releases the Assignee of any potential suits that might be brought by the HCHK Creditors. (ECF No. 25 ¶¶ 20-21).

74.    Here, the whole situation smacks of the Trustee inducing the Assignee to breach not only his obligations to the State Court, but also his fiduciary duties to the HCHK Creditors. In

any other context, similar conduct by a non-bankruptcy trustee would plainly give rise to a legal claim against the perpetrators for aiding and abetting a breach of fiduciary duty.

75.     The HCHK Creditors should not be disenfranchised by forcing them into the Debtor's bankruptcy proceedings simply based on mere allegations made by the Trustee. Further, if the Motion to Compromise is granted, the HCHK Creditors will be irreparably harmed, as the Assignee will be prohibited from objecting to the Adversary Proceeding and, according to the Trustee, no one else has standing to object. (ECF No. 25 ¶ 28). Further, the HCHK Creditors stand to lose the ability to bring an action against the Assignee, **their fiduciary**. (ECF No. 25 ¶ 21).

76.     Contrary to what the Trustee would like this Court to believe, the New York Court Proceedings have procedural safeguards to prevent the Debtor from obtaining control of the HCHK Entities' assets if the Trustee's alter-ego allegations are found to be true. Accordingly, there is no immediate need to discredit and denigrate the over century-old state law process that is being carried out in New York. Thus, the Trustee should be made to prove his alter-ego claims before he essentially commandeers the State Court and causes irreparable harm to the HCHK Creditors.

## III.     THE TRUSTEE CANNOT TURN A NEW YORK COURT INTO HIS PUPPET

77.     If the Motion to Compromise is granted, the State Court will for all intents and purposes become a puppet of the Trustee. All the Assignee's actions will be subject to the review and prior approval of the Trustee. (ECF No. 25 ¶ 18). Moreover, "any relief granted by the [State Court] in connection with the [New York Court Proceedings] will not be binding on this Court with respect to any payment to the Assignee's professionals or the Assignee himself under the Settlement Agreement, which will be determined solely by this Court...." (ECF No. 25 ¶ 19).

23

78. The Trustee's and Assignee's highly rushed and collusive Motion to Compromise would eviscerate the State Court's authority and independent jurisdiction to oversee the New York Court Proceeding.

79. As courts have recognized, "the lower federal courts have no authority to modify the orders of sister state courts. Indeed, the Supreme Court of the United States is the only federal court with appellate jurisdiction over the decisions of state courts… The bankruptcy court has no authority to rescind or modify [a state court's] order, strictly speaking." *In re Wigger*, 586 B.R. 715, 716 (Bankr. W.D. Mich. 2018).

80. Moreover, "[b]ankruptcy courts do not have supervisory or appellate authority over state courts." *In re Friedberg, No. 08-51245 (AHWS)*, 2009 Bankr. LEXIS 1542, at *3 (Bankr. D. Conn. May 8, 2009). "It is not the place of the federal court to exercise supervisory authority over state judicial proceedings when such exercise is not constitutionally required." *Horton v. Schenectady Cty.*, No. 8:21-CV-00983 (LEK/CFH), 2023 U.S. Dist. LEXIS 44829, at *10 (N.D.N.Y. Mar. 16, 2023).

81. While the Trustee's actions are subject to the approval of this Court and the Assignee's actions are subject to the approval of the State Court, the Motion to Compromise seeks to coopt the Assignee and disregard the State Court's constitutional independence from federal oversight. The State Court will essentially become a rubber stamp for the Trustee and the Court **before** there have been any findings of fact justifying such actions or findings that the HCHK Entities are, in fact, *alter egos* of the Debtor. Based on mere unproven allegations, the State Court will essentially lose its ability to oversee the New York Court Proceedings, which were initiated to protect the HCHK Creditors.

24

82.     Further, despite the State Court having an obligation to approve any funds paid to the Assignee and his professionals and being asked to approve the retention thereof, the Motion to Compromise expressly disavows any ruling by the State Court related to said compensation. Pursuant to the Motion to Compromise, "any relief granted by the [State Court] in connection with the [New York Court Proceedings] will not be binding on this Court with respect to any payment to the Assignee's professionals or the Assignee himself under the Settlement Agreement, which will be determined solely by this Court...." (ECF No. 25 ¶ 19). This is further evidence of the Motion to Compromise's attempt to turn this Court into a supervisor of the State Court, and at times, expressly disregard orders of the State Court, which disapprove of the Trustee's "agreement" with the Assignee.

83.     Thus, the Motion to Compromise should not be granted, as it improperly turns this Court into the supervisor of the State Court—a constitutionally independent sister court.

25

## CONCLUSION

For all of the foregoing reasons, the HCHK Creditors respectfully request that this Court

deny the Motion to Compromise.

Dated: July 5, 2023
Stamford, Connecticut

CREDITORS SHIN HSIN YU, 1332156 B.C.
LTD, GWGOPNZ LIMITED AND JAPAN
HIMALAYA LEAGUE, INC.

By: _____

Joseph M. Pastore III (ct11431)
Melissa Rose McClammy (ct31199)
Tyler W. Rutherford (*application for admission forthcoming*)
Pastore LLC
Juris No. 433711
4 High Ridge Park, Third Floor
Stamford, CT 06905
203-658-8454 (Tel.)
Jpastore@pastore.net
Mmcclammy@pastore.net
Trutherford@pastore.net

26