# EXHIBIT A

| 从<br>From | 001666200 (USD)<br>KALIXUN TRADING LIMITED |
| --- | --- |

| 至<br>To | 4387055721<br>HCHK PROPERTY MANGEMENT INC |
| --- | --- |

| 付款日期<br>Payment Date | 2023年3月2日 您的授权人必须在17:30 hrs 02 3月 2023前对这笔汇款进行<br>授权。 On March 2, 2023, your authorized person must authorize this remittance<br>before 17:30 on March 23, 2023. |
| --- | --- |

| 汇款类型<br>Remittance Type | 香港 - 跨国汇款   Hong Kong - International Remittance |
| --- | --- |

| 收款人将会收到<br>The recipient will receive | USD 850,000.00 收款人约在汇款当日至两个工作日内收到此款项。<br>The recipient is expected to receive the payment within one to two<br>business days from the date of remittance. |
| --- | --- |

| 收款行名称<br>Bank Name | SEACOAST NATIONAL BANK |
| --- | --- |

| 收款人银行地点<br>Bank Location of the Payee | UNITED STATES - 美国 |
| --- | --- |

| 收款行地址<br>Bank Address | 815 COLORADO AVENUE<br>STUART,FL |
| --- | --- |

| 收款银行代码<br>Routing Number | SNBFUS3FXXX |
| --- | --- |

| EBOTT30303018102<br>香港 - 跨国汇款<br>Hong Kong - International Remittance<br>SUN CHUXIONG 授权<br>SUN CHUXIONG AUTHORIZED | KALIXUN TRADING<br>LIMITED<br>001666200 - USD | HCHK PROPERTY<br>MANGEMENT INC<br>SNBFUS3FXXX<br>4387055721 | USD<br>700,000.00 |
| --- | --- | --- | --- |

# EXHIBIT B

## LOAN AGREEMENT

**Borrower:** HCHK Property Management, Inc., & HCHK Technologies Inc a Delaware corporation

**Lender:** *1332156 B.C. LTD.*

This Loan Agreement dated July 17, 2022 is made between the Borrower and the Lender in which the Lender agrees to loan the Borrower on the following terms and conditions. The Lender understands and agrees to take all the commercial, market and if any, regulatory risk in relation to granting or extending the loan herein to the Borrower.

1.   <u>Loan Terms</u>

(a) *Use of Proceeds*:   The loan proceeds advanced under this Agreement are for the general working capital purposes of the Borrower.

(b) *Loan Amount*:   The amount of *20218097.78* Dollars, ($XXXXXXX), in US Dollars, which is the actual and net dollar amount credited into the Borrower's designated account pursuant to the Loan.

- VIA SENDER: *1332156 B.C. LTD.*

(c) *Interest Rate*:   Three percent (3%) per annum on the Loan Amount payable in full on the Maturity Date. Should the Borrower exercise its option to extend the Maturity Date to the Extended Maturity Date, the interest rate for the additional twenty-four months shall be three percent (3%) per annum.

(d) *Maturity Date*:   36 months from the Effective Date.

(e) *Repayment*:   The total Loan Amount and accrued interest on the Loan Amount shall be repaid in a lump sum on the Maturity Date. Should the Borrower exercise its option to extend the Maturity Date for 24 months, interest for the first thirty-six (36) months shall be due at the Maturity Date of the Loan and the total Loan Amount and accrued interest on the Loan Amount for the additional twenty-four months shall be repaid in a lump sum on the Extended Maturity Date.

(f) *Extension Right*:   Borrower has the right but not the obligation, to extend the Maturity Date for 24 months. Upon the Borrower serving a written loan extension notice to the Lender at least six (6) months prior to the Maturity Date and Borrower's payment of the interest due Lender for the thirty-six (36) months from the

1

|  |  |
|---|---|
|  | Effective Date, the Maturity Date will be extended by twenty-four (24) months to the Extended Maturity Date. |
| (g) *Loan Advance*: | The Loan Amount will be advanced to the Borrower in a lump sum in a whole number by bank transfer into the Borrower's account or other designated account as instructed by the Borrower. |
| (h) *Effective Date*: | This Agreement shall be effective on the date the full Loan Amount proceeds has reached the Borrower's designated account in free and clear funds. The Effective Date and the Maturity Date will be declared by the Borrower to the Lender in writing once the Loan Advance proceeds are free and clear in the designated account. This Agreement shall continue in full force and effect until such time as Borrower's Loan has been paid in full, including principal, interest, costs and expenses (as applicable) or until such time as the parties may agree in writing to terminate this Agreement. |
| (i) *Prepayment*: | The Borrower can, by giving at least 30-day written notice to the Lender, make a total prepayment of the loan at any time before the Maturity Date, or Extended Maturity Date, without paying any penalty or premium. |
| (j) Termination: | The Lender shall have no right to unilaterally terminate this Agreement after it becomes effective. |

2.    Representations and Warranties by Lender. Lender represents and warrants to Borrower, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a)        Lender is sufficiently experienced in financial and business matters to be capable of utilizing such information to evaluate the merits and risks of this loan and make an informed decision relating thereto. Lender is in a financial position to hold the Loan for a period longer than the Maturity Date (and Extended Maturity Date) and is able to bear the economic risk and withstand a complete loss of the Loan.

(b)        No litigation, claim, investigation, administration proceeding against Lender is pending. If any, they have been disclosed to and acknowledged by Borrower in writing.

2

3.   Representations and Warranties by Borrower: Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a)  Borrower is a Delaware corporation which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Delaware, duly authorized to transact business. Borrower will notify Lender prior to any change in its name or office location and do all things necessary to preserve and keep in full force and effect its existence, rights and privileges, and shall comply with all requirements, rules, ordinances, statuses, orders and decrees of any government or quasi-governmental authority or court that is applicable.

(b)  Borrower's execution, delivery, and performance of this Agreement has been duly authorized by all necessary action by Borrower and will not conflict with, result in a violation of, or constitute a default under any provision of (i) Borrower's bylaws or (ii) any law, government regulation, court decree, or order applicable to Borrower.

(c)  No litigation, claim, investigation, administration proceeding against Borrower is pending. If any, they have been disclosed to and acknowledged by Lender in writing.

4.   Affirmative Covenants. Borrower covenants and agrees with Lender that, as long as this Agreement remains in effect, Borrower will:

(a)     Notice of Claims and Litigation. Promptly inform Lender in writing of all existing and all threatened litigation, claims, investigations, and administrative proceedings affecting Borrower which could materially affect the financial condition of Borrower.

(b)     Loan Proceeds. Use all loan proceeds strictly in accordance with the Use of Proceeds.

(c)     Performance. Perform and comply, in a timely manner with all terms, conditions, and provisions set forth in this Agreement. Borrower shall notify Lender immediately in writing of any default in connection with any material agreement to which Borrower is a party.

5.     Negative Covenants. Borrower covenants and agrees with Lender that, as long as this Agreement remains in effect, Borrower will not, without the prior consent of Lender:

(a)     Continuity of Operations. Cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity.

3

095051.000003 7849618v1

(b)     Agreements. Enter into any agreement containing any provisions which could be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

6.     Default. Default shall occur should payment in full not be made immediately when due. If Default shall occur, at Lender's option, all indebtedness shall become due and payable. In addition, Lender shall have all the rights and remedies available at law. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.

7.     Notices. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of actual receipt or (a) personal delivery to the party to be notified, (b) when sent, if sent by electronic mail or facsimile during normal business hours of the recipient, and if not sent during normal business hours, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) business day after deposit with a nationally recognized overnight courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to the respective parties at their address as set forth in this Agreement or such address as subsequently modified by written notice.

8.     Indemnity. Lender agrees to indemnify and hold harmless Borrower, and each of its employees, directors, agents and attorneys, from and against any and all loss, liability, claims, damages and expense (including any expense reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) related to any misrepresentation or breach of warranty or breach of agreement by the Lender contained herein or in any other documents furnished by the Lender to the Borrower in connection with this Agreement.

9.     Amendment. This Agreement constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement and supersedes each course of conduct previously pursued or acquiesced in, and each written or oral agreement and representation previously made by the parties with respect thereto, whether or not relied or acted upon. No alteration or amendment to this Agreement shall be effective unless given in writing and signed by the parties sought to be changed or bound by the alteration or amendment.

10.     Assignment. Lender shall not assign its rights under this Agreement or any interest therein, without the prior written consent of the Borrower.

11.     Agreement Binding on Borrower's and Lender's Successors. The representations, warranties, covenants and agreements in this Agreement shall be binding on the Lender's and the Borrower's successors, assigns, heirs and legal representatives and shall inure to the benefit of the respective successor and assigns of the Borrower and Lender.

4

095051.000003 7849618v1

12.    Governing Law. This Agreement shall be construed in all respects in accordance with and governed by the laws of the State of New York.

13.    Venue. The parties hereby submit to any federal or state courts, located in the State of New York, County of New York, and agree that all litigation under or relating to this Agreement shall be conducted in such courts.

14.    Delays or Omissions. No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power or remedy of such non-breaching or non- defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any party or any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any party, shall be cumulative and not alternative.

15.    Validity. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provisions and the document in its entirety.

16.    Definitions. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless otherwise specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles and in effect on the date of this Agreement.

"Agreement" or "Loan Agreement" means this agreement signed herewith, and as this Loan Agreement may be amended or modified from time to time.

"Borrower" means HCHK Property Management, Inc., & HCHK Technologies , Inc a Delaware corporation.

"Default" means the Default set forth in this Agreement in the section titled "Default".

"Extended Maturity Date" means sixty (60) months from the Effective Date of the Loan; the date on which all the indebtedness of the loan becomes due and immediately must be repaid.

"Indebtedness" means the Loan Amount including all principal and interest together with all other indebtedness and cost and expenses for which Borrower is responsible under this Agreement.

5

"Lender" means the entity or person set forth in this Agreement in the section titled "Lender"

"Loan" means any and all loans from Lender to Borrower whether now or hereafter existing, and however evidenced.

"Maturity Date" means thirty-six (36) months from the Effective Date of the Loan.

6

095051.000003 7849618v1

**BORROWER:**

HCHK Property Management,

Inc., & HCHK Technologies Inc

a Delaware corporation



Name:

Title: __Authorized signatory___

Address:
2121 VISTA PARKWAY
WEST PALM BEACH, FL 33411

Date:

__16/7/2022_____

**LENDER:**

1332156 B.C. LTD.

Name: 刘 枪玄

Title: Authorized Signatory

Address: 111 - 8811 Laurel Street,

Vancouver BC V6P 3V9   CANADA

Date: July 17, 2022

7

095051.000003 7849618v1

095051.000003 7849618v1

# EXHIBIT C

# LOAN AGREEMENT

**Borrower**: HCHK Property Management, Inc., & HCHK Technologies Inc a Delaware corporation

**Lender**:          ____GWGOPNZ LIMITED_____

This Loan Agreement dated _____17 July___, 2022 is made between the Borrower and the Lender in which the Lender agrees to loan the Borrower on the following terms and conditions. The Lender understands and agrees to take all the commercial, market and if any, regulatory risk in relation to granting or extending the loan herein to the Borrower.

1.    <u>Loan Terms</u>

(a) *Use of Proceeds*:

The loan proceeds advanced under this Agreement are for the general working capital purposes of the Borrower.

(b) *Loan Amount*:

The amount of__5,427,497.74__ Dollars, ($XXXXXXX), in US Dollars, which is the actual and net dollar amount credited into the Borrower's designated account pursuant to the Loan.

- VIA SENDER:    GWGOPNZ LIMITED

(c) *Interest Rate*:

Three percent (3%) per annum on the Loan Amount payable in full on the Maturity Date. Should the Borrower exercise its option to extend the Maturity Date to the Extended Maturity Date, the interest rate for the additional twenty-four months shall be three percent (3%) per annum.

(d) *Maturity Date*:

36 months from the Effective Date.

(e) *Repayment*:

The total Loan Amount and accrued interest on the Loan Amount shall be repaid in a lump sum on the Maturity Date. Should the Borrower exercise its option to extend the Maturity Date for 24 months, interest for the first thirty-six (36) months shall be due at the Maturity Date of the Loan and the total Loan Amount and accrued interest on the Loan Amount for the additional twenty-four months shall be repaid in a lump sum on the Extended Maturity Date.

(f) *Extension Right*:

Borrower has the right but not the obligation, to extend the Maturity Date for 24 months. Upon the Borrower serving a written loan extension notice to the Lender at least six (6) months prior to the Maturity Date and Borrower's payment of the interest due Lender for the thirty-six (36) months from the

1

Effective Date, the Maturity Date will be extended by twenty-four (24) months to the Extended Maturity Date.

(g) *Loan Advance*:

The Loan Amount will be advanced to the Borrower in a lump sum in a whole number by bank transfer into the Borrower's account or other designated account as instructed by the Borrower.

(h) *Effective Date*:

This Agreement shall be effective on the date the full Loan Amount proceeds has reached the Borrower's designated account in free and clear funds. The Effective Date and the Maturity Date will be declared by the Borrower to the Lender in writing once the Loan Advance proceeds are free and clear in the designated account. This Agreement shall continue in full force and effect until such time as Borrower's Loan has been paid in full, including principal, interest, costs and expenses (as applicable) or until such time as the parties may agree in writing to terminate this Agreement.

(i) *Prepayment*:

The Borrower can, by giving at least 30-day written notice to the Lender, make a total prepayment of the loan at any time before the Maturity Date, or Extended Maturity Date, without paying any penalty or premium.

(j) Termination:

The Lender shall have no right to unilaterally terminate this Agreement after it becomes effective.

2.    Representations and Warranties by Lender. Lender represents and warrants to Borrower, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a)    Lender is sufficiently experienced in financial and business matters to be capable of utilizing such information to evaluate the merits and risks of this loan and make an informed decision relating thereto. Lender is in a financial position to hold the Loan for a period longer than the Maturity Date (and Extended Maturity Date) and is able to bear the economic risk and withstand a complete loss of the Loan.

(b)    No litigation, claim, investigation, administration proceeding against Lender is pending. If any, they have been disclosed to and acknowledged by Borrower in writing.

2

095051.000003 7849618v1

3.    Representations and Warranties by Borrower: Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a)  Borrower is a Delaware corporation which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Delaware, duly authorized to transact business. Borrower will notify Lender prior to any change in its name or office location and do all things necessary to preserve and keep in full force and effect its existence, rights and privileges, and shall comply with all requirements, rules, ordinances, statuses, orders and decrees of any government or quasi-governmental authority or court that is applicable.

(b)  Borrower's execution, delivery, and performance of this Agreement has been duly authorized by all necessary action by Borrower and will not conflict with, result in a violation of, or constitute a default under any provision of (i) Borrower's bylaws or (ii) any law, government regulation, court decree, or order applicable to Borrower.

(c)  No litigation, claim, investigation, administration proceeding against Borrower is pending. If any, they have been disclosed to and acknowledged by Lender in writing.

4.    Affirmative Covenants. Borrower covenants and agrees with Lender that, as long as this Agreement remains in effect, Borrower will:

(a)    Notice of Claims and Litigation. Promptly inform Lender in writing of all existing and all threatened litigation, claims, investigations, and administrative proceedings affecting Borrower which could materially affect the financial condition of Borrower.

(b)    Loan Proceeds. Use all loan proceeds strictly in accordance with the Use of Proceeds.

(c)    Performance. Perform and comply, in a timely manner with all terms, conditions, and provisions set forth in this Agreement. Borrower shall notify Lender immediately in writing of any default in connection with any material agreement to which Borrower is a party.

5.        Negative Covenants. Borrower covenants and agrees with Lender that, as long as this Agreement remains in effect, Borrower will not, without the prior consent of Lender:

(a)    Continuity of Operations. Cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity.

3

(b)     Agreements. Enter into any agreement containing any provisions which could be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

6.     Default. Default shall occur should payment in full not be made immediately when due. If Default shall occur, at Lender's option, all indebtedness shall become due and payable. In addition, Lender shall have all the rights and remedies available at law. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.

7.     Notices. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of actual receipt or (a) personal delivery to the party to be notified, (b) when sent, if sent by electronic mail or facsimile during normal business hours of the recipient, and if not sent during normal business hours, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) business day after deposit with a nationally recognized overnight courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to the respective parties at their address as set forth in this Agreement or such address as subsequently modified by written notice.

8.     Indemnity. Lender agrees to indemnify and hold harmless Borrower, and each of its employees, directors, agents and attorneys, from and against any and all loss, liability, claims, damages and expense (including any expense reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) related to any misrepresentation or breach of warranty or breach of agreement by the Lender contained herein or in any other documents furnished by the Lender to the Borrower in connection with this Agreement.

9.     Amendment. This Agreement constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement and supersedes each course of conduct previously pursued or acquiesced in, and each written or oral agreement and representation previously made by the parties with respect thereto, whether or not relied or acted upon. No alteration or amendment to this Agreement shall be effective unless given in writing and signed by the parties sought to be changed or bound by the alteration or amendment.

10.     Assignment. Lender shall not assign its rights under this Agreement or any interest therein, without the prior written consent of the Borrower.

11.     Agreement Binding on Borrower's and Lender's Successors. The representations, warranties, covenants and agreements in this Agreement shall be binding on the Lender's and the Borrower's successors, assigns, heirs and legal representatives and shall inure to the benefit of the respective successor and assigns of the Borrower and Lender.

4

095051.000003 7849618v1

12. Governing Law. This Agreement shall be construed in all respects in accordance with and governed by the laws of the State of New York.

13. Venue. The parties hereby submit to any federal or state courts, located in the State of New York, County of New York, and agree that all litigation under or relating to this Agreement shall be conducted in such courts.

14. Delays or Omissions. No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power or remedy of such non-breaching or non- defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any party or any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any party, shall be cumulative and not alternative.

15. Validity. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provisions and the document in its entirety.

16. Definitions. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless otherwise specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles and in effect on the date of this Agreement.

"Agreement" or "Loan Agreement" means this agreement signed herewith, and as this Loan Agreement may be amended or modified from time to time.

"Borrower" means HCHK Property Management, Inc., & HCHK Technologies , Inc  a Delaware corporation.

"Default" means the Default set forth in this Agreement in the section titled "Default".

"Extended Maturity Date" means sixty (60) months from the Effective Date of the Loan; the date on which all the indebtedness of the loan becomes due and immediately must be repaid.

"Indebtedness" means the Loan Amount including all principal and interest together with all other indebtedness and cost and expenses for which Borrower is responsible under this Agreement.

5

"Lender" means the entity or person set forth in this Agreement in the section titled "Lender"

"Loan" means any and all loans from Lender to Borrower whether now or hereafter existing, and however evidenced.

"Maturity Date" means thirty-six (36) months from the Effective Date of the Loan.

6

**BORROWER:**
HCHK Property Management,

Inc., & HCHK Technologies Inc

a Delaware corporation

Name: _____

Title: __Authorized signatory___

Address:
2121 VISTA PARKWAY
WEST PALM BEACH, FL 33411

Date:

__16/7/2022_____

**LENDER:** GWGOPNZ LIMITED

Name: ___ Xiao Qin_____

Title: ___Manager_____

Address:

154a Long Drive,

St Heliers, Auckland, 1071,

New Zealand

Date: ___17 July 2022_____

7

095051.000003 7849618v1

# EXHIBIT D

## LOAN AGREEMENT

**Borrower**: HCHK Property Management, Inc., a Delaware corporation

**Lender**:  _____

This Loan Agreement dated _____ ____, 2022 is made between the Borrower and the Lender in which the Lender agrees to loan the Borrower on the following terms and conditions. The Lender understands and agrees to take all the commercial, market and if any, regulatory risk in relation to granting or extending the loan herein to the Borrower.

1.　　Loan Terms

(a) *Use of Proceeds*:
The loan proceeds advanced under this Agreement are for the general working capital purposes of the Borrower.

(b) *Loan Amount*:
The amount of ___659,999.11____ Dollars, ($XXXXXXX), in US Dollars, which is the actual and net dollar amount credited into the Borrower's designated account pursuant to the Loan.

- VIA SENDER:

(c) *Interest Rate*:
Three percent (3%) per annum on the Loan Amount payable in full on the Maturity Date. Should the Borrower exercise its option to extend the Maturity Date to the Extended Maturity Date, the interest rate for the additional twenty-four months shall be three percent (3%) per annum.

(d) *Maturity Date*:
36 months from the Effective Date.

(e) *Repayment*:
The total Loan Amount and accrued interest on the Loan Amount shall be repaid in a lump sum on the Maturity Date. Should the Borrower exercise its option to extend the Maturity Date for 24 months, interest for the first thirty-six (36) months shall be due at the Maturity Date of the Loan and the total Loan Amount and accrued interest on the Loan Amount for the additional twenty-four months shall be repaid in a lump sum on the Extended Maturity Date.

(f) *Extension Right*:
Borrower has the right but not the obligation, to extend the Maturity Date for 24 months. Upon the Borrower serving a written loan extension notice to the Lender at least six (6) months prior to the Maturity Date and Borrower's payment of the interest due Lender for the thirty-six (36) months from the

1

|  |  |
|---|---|
| | Effective Date, the Maturity Date will be extended by twenty-four (24) months to the Extended Maturity Date. |
| (g) *Loan Advance*: | The Loan Amount will be advanced to the Borrower in a lump sum in a whole number by bank transfer into the Borrower's account or other designated account as instructed by the Borrower. |
| (h) *Effective Date*: | This Agreement shall be effective on the date the full Loan Amount proceeds has reached the Borrower's designated account in free and clear funds. The Effective Date and the Maturity Date will be declared by the Borrower to the Lender in writing once the Loan Advance proceeds are free and clear in the designated account. This Agreement shall continue in full force and effect until such time as Borrower's Loan has been paid in full, including principal, interest, costs and expenses (as applicable) or until such time as the parties may agree in writing to terminate this Agreement. |
| (i) *Prepayment*: | The Borrower can, by giving at least 30-day written notice to the Lender, make a total prepayment of the loan at any time before the Maturity Date, or Extended Maturity Date, without paying any penalty or premium. |
| (j) Termination: | The Lender shall have no right to unilaterally terminate this Agreement after it becomes effective. |

2.    Representations and Warranties by Lender. Lender represents and warrants to Borrower, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a)    Lender is sufficiently experienced in financial and business matters to be capable of utilizing such information to evaluate the merits and risks of this loan and make an informed decision relating thereto. Lender is in a financial position to hold the Loan for a period longer than the Maturity Date (and Extended Maturity Date) and is able to bear the economic risk and withstand a complete loss of the Loan.

(b)    No litigation, claim, investigation, administration proceeding against Lender is pending. If any, they have been disclosed to and acknowledged by Borrower in writing.

2

3.    Representations and Warranties by Borrower: Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a) Borrower is a Delaware corporation which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Delaware, duly authorized to transact business. Borrower will notify Lender prior to any change in its name or office location and do all things necessary to preserve and keep in full force and effect its existence, rights and privileges, and shall comply with all requirements, rules, ordinances, statuses, orders and decrees of any government or quasi-governmental authority or court that is applicable.

(b) Borrower's execution, delivery, and performance of this Agreement has been duly authorized by all necessary action by Borrower and will not conflict with, result in a violation of, or constitute a default under any provision of (i) Borrower's bylaws or (ii) any law, government regulation, court decree, or order applicable to Borrower.

(c) No litigation, claim, investigation, administration proceeding against Borrower is pending. If any, they have been disclosed to and acknowledged by Lender in writing.

4.    Affirmative Covenants. Borrower covenants and agrees with Lender that, as long as this Agreement remains in effect, Borrower will:

(a)    Notice of Claims and Litigation. Promptly inform Lender in writing of all existing and all threatened litigation, claims, investigations, and administrative proceedings affecting Borrower which could materially affect the financial condition of Borrower.

(b)    Loan Proceeds. Use all loan proceeds strictly in accordance with the Use of Proceeds.

(c)    Performance. Perform and comply, in a timely manner with all terms, conditions, and provisions set forth in this Agreement. Borrower shall notify Lender immediately in writing of any default in connection with any material agreement to which Borrower is a party.

5.    Negative Covenants. Borrower covenants and agrees with Lender that, as long as this Agreement remains in effect, Borrower will not, without the prior consent of Lender:

(a)    Continuity of Operations. Cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity.

3

095051.000003 7849618v1

(b)     Agreements. Enter into any agreement containing any provisions which could be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

6.     Default. Default shall occur should payment in full not be made immediately when due. If Default shall occur, at Lender's option, all indebtedness shall become due and payable. In addition, Lender shall have all the rights and remedies available at law. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.

7.     Notices. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of actual receipt or (a) personal delivery to the party to be notified, (b) when sent, if sent by electronic mail or facsimile during normal business hours of the recipient, and if not sent during normal business hours, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) business day after deposit with a nationally recognized overnight courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to the respective parties at their address as set forth in this Agreement or such address as subsequently modified by written notice.

8.     Indemnity. Lender agrees to indemnify and hold harmless Borrower, and each of its employees, directors, agents and attorneys, from and against any and all loss, liability, claims, damages and expense (including any expense reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) related to any misrepresentation or breach of warranty or breach of agreement by the Lender contained herein or in any other documents furnished by the Lender to the Borrower in connection with this Agreement.

9.     Amendment. This Agreement constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement and supersedes each course of conduct previously pursued or acquiesced in, and each written or oral agreement and representation previously made by the parties with respect thereto, whether or not relied or acted upon. No alteration or amendment to this Agreement shall be effective unless given in writing and signed by the parties sought to be changed or bound by the alteration or amendment.

10.     Assignment. Lender shall not assign its rights under this Agreement or any interest therein, without the prior written consent of the Borrower.

11.     Agreement Binding on Borrower's and Lender's Successors. The representations, warranties, covenants and agreements in this Agreement shall be binding on the Lender's and the Borrower's successors, assigns, heirs and legal representatives and shall inure to the benefit of the respective successor and assigns of the Borrower and Lender.

4

12.   Governing Law. This Agreement shall be construed in all respects in accordance with and governed by the laws of the State of New York.

13.   Venue. The parties hereby submit to any federal or state courts, located in the State of New York, County of New York, and agree that all litigation under or relating to this Agreement shall be conducted in such courts.

14.   Delays or Omissions. No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power or remedy of such non-breaching or non- defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any party or any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any party, shall be cumulative and not alternative.

15.   Validity. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provisions and the document in its entirety.

16.   Definitions. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless otherwise specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles and in effect on the date of this Agreement.

"Agreement" or "Loan Agreement" means this agreement signed herewith, and as this Loan Agreement may be amended or modified from time to time.

"Borrower" means HCHK Property Management, Inc., a Delaware corporation.

"Default" means the Default set forth in this Agreement in the section titled "Default".

"Extended Maturity Date" means sixty (60) months from the Effective Date of the Loan; the date on which all the indebtedness of the loan becomes due and immediately must be repaid.

"Indebtedness" means the Loan Amount including all principal and interest together with all other indebtedness and cost and expenses for which Borrower is responsible under this Agreement.

5

"Lender" means the entity or person set forth in this Agreement in the section titled "Lender"

"Loan" means any and all loans from Lender to Borrower whether now or hereafter existing, and however evidenced.

"Maturity Date" means thirty-six (36) months from the Effective Date of the Loan.

6

**BORROWER:**

HCHK Property Management, Inc.,
a Delaware corporation

Name: _____

Title: _ Authorized signatory_

Address:

2121 VISTA PARKWAY

WEST PALM BEACH, FL 33411

Date: _____16/7/2022_____

**LENDER:**

Name: __Shuai Guo__

Title:

_____

Address: _____

_____

Date: _____

7

095051.000003 7849618v1

8

095051.000003 7849618v1