**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------------x
:
In re:                                          :   Chapter 11
:
HO WAN KWOK, *et al.*,[1]                       :   Case No. 22-50073 (JAM)
:
           Debtors.                             :   (Jointly Administered)
:
---------------------------------------------------------------x
:
LUC A. DESPINS, CHAPTER 11                      :
TRUSTEE,                                        :
:   Adv. Proceeding No. 23-05013 (JAM)
           Plaintiff,                           :
:
v.                                              :
:
:
HCHK TECHNOLOGIES, INC.,                        :
HCHK PROPERTY MANAGEMENT, INC.,                 :
LEXINGTON PROPERTY AND STAFFING, INC.,:
HOLY CITY HONG KONG VENTURES, LTD.,             :
ANTHONY DIBATTISTA, YVETTE WANG,                :
and BRIAN HOFMEISTER (in his capacity           :
as assignee),                                   :
:
           Defendants.                          :
---------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 11 TRUSTEE'S ARGUMENT THAT G-CLUB OPERATIONS LLC HAS WAIVED ANY PRIVILEGE AND HAS NO RIGHT TO OBJECT TO RESPONSIVENESS AS TO G-CLUB DOCUMENTS TURNED OVER FROM THE ASSIGNEE OF HCHK TECHNOLOGIES, INC. TO THE TRUSTEE <u>PURSUANT TO BANKRUPTCY RULE 9019 SETTLEMENT AGREEMENT</u>**

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor" or "Kwok"), files this Memorandum of Law (the "Memorandum") in support of the Trustee's argument that G-Club Operations LLC ("G-Club") should not be permitted to prevent the turnover of HCHK Technologies, Inc.'s ("HCHK Technologies") corporate records from the Assignee of the HCHK Entities[2] to the Trustee as part of the Trustee's Rule 9019 Settlement Agreement, based on G-Club's assertion that documents it asserts are G-Club property are either privileged or non-responsive to the Rule 2004 Subpoena served upon G-Club. In support of this Memorandum, the Trustee states as follows:

## PRELIMINARY STATEMENT

1. G-Club seeks to prevent the turnover of portions of HCHK Technologies' corporate documents under the Rule 9019 Settlement Agreement on grounds that such documents are non-responsive to the Rule 2004 Subpoena served upon G-Club, and that G-Club maintains a privilege over a subset of the documents. Neither argument has merit.

2. First, regardless of whether the documents at issue are responsive to the Rule 2004 Subpoena the Trustee served on G-Club, there is no question they are responsive to the Rule 2004 Subpoena the Trustee served *upon HCHK Technologies*. The Rule 2004 requests to HCHK Technologies specifically sought documents related to Kwok-affiliated entities, the Debtor, his family, his agents (including Yvette Wang, the 99.999% owner of HCHK Technologies), and any assets, funds or business transactions related to such entities and individuals. These requests plainly encompass documents related to G-Club, which the Trustee has alleged to be a Debtor-controlled entity. Despite this—and the fact that it is now known that HCHK Technologies had

---

[2] Capitalized terms not yet defined take the meaning assigned to them below.

tens of thousands of responsive documents—its former counsel produced less than 150 documents total and only a single document related to G-Club. All additional documents of HCHK Technologies related to G-Club must be produced.

3. Requiring HCHK Technologies to produce these documents also promotes judicial efficiency. A key aspect of the Rule 9019 Settlement Agreement was to preserve the Chapter 11 estate's resources, including those that would be expended on contested discovery. If the Trustee is not able obtain HCHK Technologies' documents under the settlement agreement, he would need to pursue burdensome and costly formal discovery against HCHK Technologies in connection with the litigation of his alter-ego and equitable ownership claims, including to obtain documents related to the Debtor's movement of funds through entities he owns and controls. Such documents squarely would have included documents related to G-Club: an entity this Court has found to be controlled by the Debtor and which the Government alleges in the criminal indictment of the Debtor (and his co-conspirators Yvette Wang and William Je) was a pillar of his fraudulent movement of funds. Given the need for the production of these documents without the attendant costs of discovery, the parties agreed that it was most efficient to simply allow the Trustee access to HCHK Technologies' corporate records.

4. For these reasons, G-Club cannot prevent the disclosure of HCHK Technologies' documents to the Trustee on the basis that the documents may not be responsive to the Rule 2004 Subpoena served upon G-Club.

5. <u>Second</u>, no privilege prevents disclosure of the documents. Any privilege that G-Club may have had over the documents in HCHK Technologies' possession was waived, first, when they were freely shared with HCHK Technologies for the myriad of services G-Club outsourced to HCHK Technologies, and, again, when those documents were provided to the

3

Assignee and then G-News. Having freely shared its allegedly privileged documents with three third-parties, G-Club cannot now claim the documents are privileged to keep them from the Trustee.

## FACTUAL BACKGROUND

6. The Court is quite familiar with the underlying facts relating to the HCHK Entities'[3] assignment proceedings initiated in New York state court by Brian Hofmeister (the "Assignee"), the Assignee's submission of a verified petition (the "Application") seeking entry of an order authorizing and approving his entry into an Interim Management Agreement ("IMA") with G-News Operations, LLC ("G-News"), the Trustee's adversary proceeding brought against the HCHK Entities and the Assignee (the "Adversary Proceeding") [Adv. Proc. 23-05013, Docket No. 1], and the Assignee's subsequent settlement agreement with the Trustee (the "Rule 9019 Settlement Agreement"), G-Club's objections, and the resulting hearings. Accordingly, in the interest of judicial economy, the Trustee will only highlight here those facts directly pertinent to the issue in this Memorandum.

7. On December 7, 2022, the Trustee served a Rule 2004 Subpoena on HCHK Technologies.[4] Pursuant to that Subpoena, the Trustee received a document production from HCHK Technologies on or around March 10, 2023, containing a total of 148 total documents. Only one of those documents, an Excel spreadsheet, mentions G-Club in passing.

8. In the wake of the Trustee's action in response to the assignment proceedings, and following the Court's Order granting a temporary restraining order, the Trustee and the Assignee

---

[3] "HCHK Entities" is defined as HCHK Technologies, HCHK Property Management, Inc. ("HCHK Property"), and Lexington Property and Staffing, Inc. ("Lexington Property").

[4] The Affidavit of Service is attached hereto as **Exhibit C**. The Subpoena and document requests served on HCHK Technologies is attached hereto as **Exhibit D**.

4

engaged in good faith discussions resulting in the Rule 9019 Settlement Agreement, which was designed to (1) transfer, on an interim basis and pending the outcome of the Adversary Proceeding, over $38 million of the HCHK Entities' cash, currently held in accounts controlled by the Assignee, into accounts controlled by the Trustee and (2) provide for the resolution of other open issues related to the Adversary Proceeding, including providing for the turnover by the Assignee of all non-privileged corporate records and other documents pertaining to the HCHK Entities to the Trustee. This provision was of upmost importance to the Rule 9019 Settlement Agreement because it allowed both sides to avoid the costs associated with the Trustee's need for discovery from the HCHK Entities, while also ensuring the Trustee had access to all of the documents in the possession of the HCHK Entities that are relevant to the Trustee's claims that the HCHK Entities are alter egos of, and equitably owned by, the Debtor.

9. On July 5, 2023, G-Club filed *G-Club Operations LLC's Notice RE: Motion, Pursuant to Bankruptcy Rule 9019, Regarding Settlement with Assignee of HCHK Entities Under New York Court Assignment Proceedings* [Main Case Docket No. 1977] (the "G-Club Notice"). The G-Club Notice informed the Court that HCHK Technologies is in possession of G-Club confidential information and documents as a result of HCHK Technologies "administer[ing] and manag[ing] G Club's emails and other applications" pursuant to a Master Services Agreement[5] between G-Club and HCHK Technologies.[6] The G-Club Notice also requested that HCHK Technologies return to G-Club all of G-Club's confidential information and documents prior to

---

[5] A copy of the Master Services Agreement between G-Club and HCHK Technologies is attached hereto as **Exhibit A**. ████████████████████████████████████████████████████████████████████████████████████████████████

[6] *See* G-Club Notice at ¶ 4.

turnover to the Trustee Pursuant to the Rule 9019 Settlement Agreement to enable G-Club to review and provide responsive information to the Trustee pursuant to the Trustee's Rule 2004 Subpoena served on G-Club.[7]

10. On July 7, 2023, the Trustee filed an *Omnibus Reply of Chapter 11 Trustee (I) in Support of Motion, Pursuant to Bankruptcy Rule 9019, Regarding Settlement With Assignee of HCHK Entities Under New York Court Assignment Proceedings, And (II) In Response to Objections* [Adv. Proc. 23-05013, Docket No. 45].

11. Hearings were held regarding the G-Club Notice and the Rule 9019 Settlement Agreement on July 11, 2023 and July 18, 2023. During the July 18, 2023 hearing,[8] counsel for G-Club argued that G-Club was primarily concerned with privileged information, as opposed to confidential information, which would presumably be subject to the Protective Order entered in the main case [Main Case Docket No. 923].[9]

12. On July 28, 2023, the Court entered an *Order Approving, Pursuant to Bankruptcy Rule 9019, Chapter 11 Trustee's Settlement With Assignee of HCHK Entities Under New York Court Assignment Proceedings* [Adv. Proc. 23-05013, Docket No. 70] (the "<u>Rule 9019 Settlement Order</u>"). Among other things, the Rule 9019 Settlement Order provided the following:

> Within ten (10) days from the date of the entry of this Order, the Assignee shall make available to the Trustee all non-privileged corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the

---

[7] *See id.* at ¶ 5. The Trustee served a Rule 2004 subpoena on G-Club (the "<u>G-Club Subpoena</u>") on December 9, 2022. On May 18, 2023, the Trustee filed an omnibus motion seeking to compel G-Club, among others, to comply with the G-Club Subpoena (the "<u>Motion to Compel</u>") [Main Case Docket No. 1805]. On June 26, 2023, the Court entered an order granting the Motion to Compel as to G-Club [Main Case Docket No. 1960].

[8] A copy of the transcript from the July 18, 2023 hearing is attached hereto as **Exhibit B**.

[9] *See* **Ex. B** at 130:10-18 (Attorney Sklarz on behalf of G-Club said, "The confidentiality stuff I'm sure we can, you know, I'm sure Attorney Fortis who's been working with Attorney [Luft] to resolve the discovery disputes, I think they're all essentially resolved. We can certainly, you know, we can confer on the issue, but it's really the access and the privilege[d] information that we're most concerned about.").

possession of the Assignee, except those that were at any point the property of [G-Club]. . . . Also within ten (10) days from the date of the entry of this Order, the Assignee shall make available to G-Club all corporate records (including in electronic form) and other documents pertaining to the HCHK Entities in the possession of the Assignee, which were at any point the property of G-Club. Upon receipt, G-Club shall immediately review such corporate records and other documents for privilege and responsiveness to the Trustee's Rule 2004 subpoena of G-Club and produce a privilege log and responsiveness log. G-Club may designate materials it will produce to the Trustee as 'confidential' or 'highly confidential' in accordance with the Protective Order.[10]

13. The Rule 9019 Settlement Order also ordered the Trustee to file a Memorandum of Law on or before August 11, 2023 in support of his argument that G-Club waived any privilege and has no right to object to responsiveness to the Assignee's turnover of HCHK Technologies' documents related to G-Club pursuant to the 9019 Settlement Order.[11]

## BASIS FOR RELIEF

### I. G-Club has no right to object to responsiveness as to documents in possession of HCHK Technologies

14. G-Club argues it can prevent the production of documents in HCHK Technologies' files to the Trustee on grounds that such documents may be non-responsive to the Rule 2004 Subpoena served upon G-Club.[12] This argument fails because the issue of the Trustee's right to review HCHK Technologies' documents is not dependent on what is responsive to G-Club's Subpoena. Rather, the question is whether the documents possessed and controlled by HCHK Technologies, including those deriving from G Club, are responsive to the Trustee's Rule 2004 Subpoena to HCHK Technologies or are related to the Trustee's Adversary Proceeding against

---

[10] Rule 9019 Settlement Order at ¶ 6.

[11] *See id*.

[12] The Rule 9019 Settlement Order required the Assignee to return to G-Club all documents that are, or were at any point the property of G-Club. To be sure, independent work product from HCHK Technologies that happens to mention G-Club, without more, is not the property of G-Club.

HCHK Technologies. G-Club cannot use its own Rule 2004 Subpoena to prevent the Trustee from obtaining valid Rule 2004 discovery from other parties or from seeking additional discovery in this Adversary Proceeding.[13]

> **a.** *HCHK Technologies' documents, including any in its possession from G-Club, are relevant and responsive to HCHK Technologies' own Rule 2004 subpoena*

15. As mentioned above, the Trustee, as part of his Rule 2004 investigation, served HCHK Technologies with its own Rule 2004 Subpoena. The document requests attached to that Subpoena list G-Club within the Trustee's definition of "Associated Entities,"[14] and numerous individual requests ask for documents concerning "Associated Entities."[15]

16. Despite this, HCHK Technologies' productions to the Trustee have been woefully deficient. The Trustee has only received 148 documents, which do not include the documents related to G-Club despite those documents plainly being responsive to HCHK Technologies' Subpoena.

17. Just as G-Club cannot demand that its documents be deleted from HCHK Technologies in the midst of HCHK Technologies fully complying with a valid subpoena, G-Club should not now be able to prevent HCHK Technologies from turning over responsive documents in its possession in response to its own Rule 2004 Subpoena, even if they originated from G-Club.

> **b.** *Turnover of HCHK Technologies' documents in lieu of discovery, including any in its possession from G-Club, was key aspect of Rule 9019 Settlement Agreement*

---

[13] To the extent the Trustee has misunderstood G-Club's motivations, and it merely seeks to review for responsiveness to its Rule 2004 Subpoena documents in the possession of HCHK Technologies that it claims are its property *without* preventing the Trustee from reviewing all of HCHK Technologies' corporate records as they are responsive to this Adversary Proceeding and HCHK Technologies' Rule 2004 Subpoena, while finding it redundant, he would not object.

[14] See **Ex. D** at pg. 9

[15] See **Ex. D** at RFPs 1, 3, 5, 6, 10, 11, and 18.

18. The agreement to turn over HCHK Technologies' corporate records to the Trustee was intended to avoid undue and unnecessary discovery costs to both parties. It in no way meant that documents otherwise relevant to the Adversary Proceeding and discoverable from HCHK Technologies no longer needed to be produced. Given the Trustee's Adversary Proceeding against HCHK Technologies, if no settlement agreement had been reached, the Trustee would have sought discovery relevant to its claims in the Adversary Proceeding, including the documents concerning G-Club, which are clearly pertinent to linking HCHK Technologies to the Debtor.

19. This Court, in its *Corrected Memorandum of Decision Granting in Part Motion for Preliminary Injunction* (the "Preliminary Injunction Decision") [Adv. P. No 22-05032, ECF No. 133], found that the Debtor is the leader of G-Series, which was defined to include G-Club.[16] Similarly, the United States Attorney's Office in its criminal indictment of the Debtor, alleges that G-Club was one of the entities used in the four pillars of the Debtor's massive fraud scheme to enrich himself (at the expense of his creditors and victims).[17] Accordingly, documents at HCHK Technologies relating to G-Club, are responsive and powerful discovery in this action.

20. HCHK Technologies' whole business purports to be the provision of business services to companies the Trustee believes are all strongly linked to the Debtor. The Trustee believes that HCHK Technologies' documents will show that in fact, not only was it an operating hub for the Debtor's businesses, but it was a pass through for monies he was attaining through his "business" activities that he used in part to fund his opulent lifestyle, including throughout the period of this bankruptcy proceeding. Getting documents related to the services provided, and to

---

[16] *See* Preliminary Injunction Decision at pgs. 10-11.

[17] *See USA v. Ho Wan Kwok and Kin Ming Je, Sealed Indictment*, United States District Court Southern District of New York, 1:23-cr-00118-AT (March 6, 2023) at ¶¶ 2; 14-15.

which entities those services were provided, including for G-Club, is at the center of the Trustee's Adversary Proceeding against HCHK Technologies. G-Club cannot prevent the turnover of these documents based on whether they are also responsive to G-Club's Subpoena.

21. Finally, it is likely not coincidental that the Trustee just received a letter from counsel for Gettr, which, like G-Club, the Trustee contends is another Debtor-controlled entity, demanding that HCHK Technologies return all of its documents before the Trustee can review them. It appears the new strategy for entities like G-Club and Gettr is to demand the return of their documents, with the goal being that if all "clients" of HCHK Technologies demand the return of their documents prior to the Trustee's ability to review them, there will be no documents left. The Court should see through this gamesmanship and order that all the documents be produced.

## II. G-Club has waived any privilege as to its documents in possession of HCHK Technologies[18]

22. "A party asserting the attorney-client privilege bears the burden of showing: '(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice.'" *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519 (S.D.N.Y. 2001) (citations omitted). "The privilege 'exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable the lawyer to give sound and informed advice.'" *Id.* (citation omitted). The attorney-client privilege applies to both individuals and corporate entities. *See id.*

23. The common interest doctrine protects some communications that would otherwise waive the attorney-client privilege, and "typically applies where multiple persons are represented

---

[18] The Trustee reserves all rights to challenge G-Club's assertion of privilege as to specific documents if the Court finds that no waiver occurred.

by the same party[.]" *Id.* at 520. The common interest doctrine can also apply where parties are represented by separate counsel that engage in a common legal enterprise. *See id.*

> The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial. The fact that there may be an overlap of a commercial and legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest.

*North River Ins. Co. v. Columbia Cas. Co.,* 1995 WL 5792, at *3 (S.D.N.Y. Jan. 5, 1995) (internal quotation omitted). "What is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal." *Id.* at *4.

24. "A party seeking the protections of the attorney-client privilege must affirmatively act to protect her communications." *Niceforo v. UBS Glob. Asset Mgmt. Americas, Inc.*, 20 F. Supp. 3d 428, 437 (S.D.N.Y. 2014) (citation omitted) (even if the contents of employee's notebook, which was kept in employee's desk, were privileged, employee waived any claim of privilege by delaying her attempts to seek the return of the notebook for more than 15 months after her termination, despite having several opportunities to do so).

25. "[V]oluntarily disclosing the information contained in the documents to nonparties waives the attorney-client privilege, unless such disclosure was 'necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit.'" *Strougo*, 199 F.R.D. at 522 (citation omitted). *See also United States v. Kovel*, 296 F.2d 918 (2d Cir.1961) (disclosure to outside accountant whose advice was necessary to litigation preparation did not waive privilege). However, the *Kovel* doctrine "has always been a cabined one, and 'to that end, the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client.'" *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citation omitted). *See also United States*

11

*v. Ackert*, 169 F.3d 136, 139 (2d Cir.1999) (third party involvement must be necessary "to improve the comprehension of the communication between attorney and client."); *Ampa Ltd. v. Kentfield Capital LLC, No. 00 Civ. 0508 NRB AJP*, 2000 WL 1156860, *1 (S.D.N.Y. Aug. 16, 2000) (board minutes not privileged where outside accountant was present and not involved in legal issue discussed).

26.  Here, G-Club has waived any privilege as to its documents in possession of HCHK Technologies because G-Club voluntarily disclosed the contents of those documents to three third-parties. G-Club should not now be able to assert privilege to prevent the Trustee from receiving its documents when it has both waived the privilege and shown absolutely no regard for preserving it previously.

   **a.  *G-Club waived any privilege to its documents provided to HCHK Technologies***

27.  G-Club waived privilege to the documents in question when it voluntarily gave HCHK Technologies, a third-party, access to its allegedly privileged documents. Having chosen to share its purportedly privileged information with HCHK Technologies, thus waiving any attorney-client privilege, it cannot now seek to have those documents treated as privileged again with the hope of now preventing their disclosure to the Trustee.

28.  G-Club told the Court that HCHK Technologies provided mere "IT services including cloud computing services, data hosting and email hosting"[19] and "administered and managed G Club's emails and other applications."[20] ███████████████████████████████████████████████████████████████

---

[19] **Ex. B** at 128:10-11.

[20] G-Club Notice at ¶ 4.

[21][22][23]

29. G-Club cannot give HCHK Technologies access to its documents and still retain privilege over them. *See Ackert*, 169 F.3d at 139 (2d Cir.1999) (third party involvement must be necessary "to improve the comprehension of the communication between attorney and client."); *Ampa ltd.*, 2000 WL at *1 (board minutes not privileged where outside accountant was present and not involved in legal issue discussed). *See also In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973) (privilege waived where documents were indiscriminately mingled with other routine documents and no special protections were made as to the potentially privileged records, and accountant, an independent contractor, was given free rein to examine all records).

**b. *Appointment of Assignee resulted in waiver of any remaining privilege***

30. To the extent G-Club asserts (wrongly) that the privilege had not already been waived, the privilege was waived when HCHK Technologies assigned all of its assets (including

---



[21] [redacted]

[22] [redacted]

[23] [redacted]

G-Club's documents) to the Assignee, another third-party who had free rein over all G-Club documents.

31. G-Club did not object to its documents being assigned to the Assignee, and the Assignee's possession and free rein over G-Club's documents supports an independent finding of waiver. To the extent G-Club asserts that HCHK Technologies is not a true third-party to effectuate waiver because G-Club shares a common interest with HCHK Technologies, due to both entities' relationship to the Debtor, any common interest would cease to exist when the independent Assignee assumed control of the HCHK Entities.[24]

### c. *G-Club failed to object to asset sale of HCHK Technologies to G-News*

32. Under the Application and IM Agreement, G-News, yet another third-party, intended to acquire substantially all of HCHK Technologies' assets (including G-Club's corporate records) and gain operational control of HCHK Technologies. As part of that agreement, G-News was granted operational control of HCHK Technologies for an interim period, exposing all G-Club documents to G-News. G-Club did not secure and claw back its documents prior to this, which it would have done had it truly been concerned about protecting its allegedly privileged documents from third-parties. G-Club should not be permitted to selectively assert its alleged privileged. *See Niceforo*, 20 F. Supp. at 437 ("A party seeking the protections of the attorney-client privilege must affirmatively act to protect her communications.").

[*Remainder of Page Intentionally Left Blank*]

---

[24] The Trustee notes that such an argument also fails because this is not a common interest over a legal issue, as is required to assert the common interest privilege.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of an order holding that G-Club Operations LLC has waived any privilege and has no right to object to responsiveness as to G-Club documents turned over from the Assignee of HCHK Technologies, Inc. to the Trustee pursuant to a Bankruptcy Rule 9019 Settlement Agreement and such other relief as is just and proper.

Dated: August 11, 2023
New Haven, Connecticut

LUC A. DESPINS,
CHAPTER 11 TRUSTEE

By: */s/ Avram E. Luft*
Avram E. Luft (admitted *pro hac vice*)
Douglass Barron (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
aviluft@paulhastings.com
douglassbarron@paulhastings.com

   *and*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

   *and*

Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
plinsey@npmlaw.com

*Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| HO WAN KWOK, *et al.*,[1] | : | Case No. 22-50073 (JAM) |
| Debtors. | : | (Jointly Administered) |

---

| | | |
|---|---|---|
| LUC A. DESPINS, CHAPTER 11 TRUSTEE, | : | |
| Plaintiff, | : | Adv. Proceeding No. 23-05013 (JAM) |
| v. | : | |
| HCHK TECHNOLOGIES, INC., HCHK PROPERTY MANAGEMENT, INC., LEXINGTON PROPERTY AND STAFFING, INC., HOLY CITY HONG KONG VENTURES, LTD., ANTHONY DIBATTISTA, YVETTE WANG, and BRIAN HOFMEISTER (in his capacity as assignee), | : | |
| Defendants. | : | |

---

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 11, 2023, the foregoing *Memorandum of Law in Support of Chapter 11 Trustee's Argument that G-Club Operations LLC has Waived Any Privilege and has No Right to Object to Responsiveness as to G-Club Documents Turned Over*

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

16

*From the Assignee of HCHK Technologies, Inc. to the Trustee Pursuant to Bankruptcy Rule 9019 Settlement Agreement* was electronically filed. Notice of this filing was sent by e-mail to all parties to the above-captioned chapter 11 case by operation of the Court's electronic filing ("CM/ECF") system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.[2] Parties may access this filing through the Court's CM/ECF system.

| | |
|---|---|
| Dated:   August 11, 2023<br>         New Haven, Connecticut | LUC A. DESPINS,<br>CHAPTER 11 TRUSTEE |

By: */s/ Avram E. Luft*
  Avram E. Luft (admitted *pro hac vice*)
  Douglass Barron (admitted *pro hac vice*)
  PAUL HASTINGS LLP
  200 Park Avenue
  New York, New York 10166
  (212) 318-6079
  aviluft@paulhastings.com
  douglassbarron@paulhastings.com

    and

  Nicholas A. Bassett (admitted *pro hac vice*)
  PAUL HASTINGS LLP
  2050 M Street NW
  Washington, D.C., 20036
  (202) 551-1902
  nicholasbassett@paulhastings.com

    and

  Patrick R. Linsey (ct29437)
  NEUBERT, PEPE & MONTEITH, P.C.
  195 Church Street, 13th Floor
  New Haven, Connecticut 06510
  (203) 781-2847
  plinsey@npmlaw.com

---

[2] To the extent that the foregoing was filed outside regular business hours, service by mail on recipients unable or not qualified to accept electronic notice was made on the next business day.

17

*Counsel for the Chapter 11 Trustee*