## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | Adv. P. No. 23-05013 (JAM) |
| Plaintiff, | Re: ECF Nos. 60, 65 |
| v. | |
| HCHK TECHNOLOGIES, INC., HCHK PROPERTY MANAGEMENT, INC., LEXINGTON PROPERTY AND STAFFING, INC., HOLY CITY HONG KONG VENTURES, LTD., ANTHONY DIBATTISTA, YVETTE WANG, and BRIAN W. HOFMEISTER, ASSIGNEE FOR THE BENEFIT OF CREDITORS, | |
| Defendants. | |

## **APPEARANCES**

Joseph M. Pastore III (argued)
Melissa Rose McClammy (argued)
Paul Fenaroli
Tyler W. Rutherford
Pastore LLC
4 High Ridge Park, Third Floor
Stamford, CT 06905

*Counsel for Movants 1332156 B.C. LTD., GWGOPNZ Limited, and Mr. Shih Hsin Yu, Proposed Intervenors*

Avram E. Luft (argued)
Douglass Barron
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

Douglas Skalka
Patrick R. Linsey
Neubert, Pepe & Montieth
195 Church Street, 13th Floor
New Haven, CT 06510

and

Nicholas A. Bassett (argued)
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

*Counsel for Respondent Mr. Luc A. Despins, Chapter 11 Trustee for the Estate of Mr. Ho Wan Kwok, Plaintiff*

**MEMORANDUM OF DECISION AND ORDER DENYING MOTION TO INTERVENE AND MOTION TO CLARIFY TEMPORARY RESTRAINING ORDER**

Julie A. Manning, United States Bankruptcy Judge

## I. INTRODUCTION

Before the Court are two motions filed by 1332156 B.C. LTD. ("BC LTD"), GWGOPNZ Limited ("GWGOPNZ"), and Mr. Shih Hsin Yu ("Mr. Shih")[1] (the "Proposed Intervenors") in the above-captioned adversary proceeding, namely, (i) the Motion to Intervene in Adversary Proceeding (the "Motion to Intervene") (ECF No. 60);[2] and (ii) the Motion to Clarify Temporary Restraining Order (the "Motion to Clarify TRO") (ECF No. 65) (the "Motions").[3] For the reasons stated below, the Motions are **DENIED**.

---

[1] Various pleadings and orders in this adversary proceeding refer to Mr. Shih as Mr. Shin Hsin Yu and/or Mr. Yu, in addition to referring to him as Mr. Shih Hsin Yu. During the evidentiary hearing, the Court inquired of his counsel as to Mr. Shih's correct name. Counsel was not entirely sure, but it became clear when during testimony that his name is Mr. Shih.

[2] Japan Himalaya League, Inc. ("JHL") jointly filed the Motion to Intervene with the Proposed Intervenors. However, JHL withdrew its request for relief and did not participate in further proceedings on the Motion to Intervene. (ECF No. 108.)

[3] The Proposed Intervenors have requested that the Court clarify that, notwithstanding the Order Scheduling Evidentiary Hearing (ECF No. 146), JHL did not jointly file the Motion to Clarify TRO with the Proposed Intervenors. (ECF No. 151.) JHL did not jointly file the Motion to Clarify TRO with the Proposed Intervenors.

## II. BACKGROUND

On February 15, 2022, Mr. Ho Wan Kwok (the "Individual Debtor") filed a voluntary Chapter 11 petition in this Court. (Main Case ECF No. 1.)[4] The Individual Debtor's case is jointly administered with two affiliated corporate Chapter 11 cases. (Main Case ECF Nos. 970, 1141.) For the reasons set forth therein, on June 15, 2022, the Court entered a memorandum of decision and order appointing a Chapter 11 trustee. (Main Case ECF No. 465.) *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022). On July 8, 2022, Mr. Luc A. Despins was appointed as the Chapter 11 trustee (the "Trustee") for the bankruptcy estate of the Individual Debtor. (Main Case ECF No. 523.)

### *The adversary proceeding and the parties*

On June 8, 2023, the Trustee initiated this adversary proceeding by filing a complaint (the "Complaint") alleging that (a) defendants HCHK Technologies, Inc. ("HCHK Tech"), HCHK Property Management, Inc. ("HCHK Property"), and Lexington Property and Staffing, Inc. ("Lexington Property," and, together with HCHK Tech and HCHK Property, each an "HCHK Entity" and, collectively, the "HCHK Entities") are *alter egos* of the Individual Debtor and (b) the HCHK Entities and/or their assets are beneficially owned by the Individual Debtor. (ECF No. 1.) The Complaint also seeks related injunctive and declaratory relief.

The HCHK Entities are 99.9999% owned by Holy City Hong Kong Ventures ("Holy City"), which is wholly owned by Ms. Yvette Wang ("Ms. Wang")[5], and 0.0001% owned by Mr. Anthony DiBattista ("Mr. DiBattista"). When the Complaint was filed, the HCHK Entities had

---

[4] References to the docket in this adversary proceeding will be styled "ECF No. __." References to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled "Main Case ECF No. __."

[5] Presently, Ms. Wang (and the Individual Debtor) are detained without the possibility of pre-trial release pending trial in the criminal action styled *United States v. Kwok*, 23 cr 118 (AT) (S.D.N.Y. Dec. 21, 2023).

each assigned (purportedly) substantially all their assets to Mr. Brain W. Hofmeister, as assignee (the "Assignee") for the benefit of creditors, to initiate assignment for the benefit of creditors proceedings in the New York state courts (the "Assignment Proceedings"). Holy City, Ms. Wang, Mr. DiBattista, and the Assignee are the remaining defendants in this adversary proceeding.

### *The Temporary Restraining Order*

On June 8, 2023, seeking to prevent the Assignment Proceedings from commencing and certain transactions from being approved by the court, the Trustee filed the *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction (the "TRO/PI Motion"). (ECF No. 4.) On June 12, 2023, the Court granted the TRO/PI Motion in part, entering a temporary restraining order (the "TRO"), enjoining, for the reasons stated therein, all defendants from prosecuting the Assignment Proceedings and certain other actions pending a hearing on the request for a preliminary injunction. (ECF No. 18.) Pursuant to Fed. R. Civ. P. 65(b)(2), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7065 the TRO scheduled an evidentiary hearing on the TRO/PI Motion to be held on June 26, 2023.

On June 21, 2023, prior to the scheduled hearing, the Trustee moved to adjourn the hearing on the basis that certain defendants, *i.e.*, the HCHK Entities, Mr. DiBattista, and the Assignee (the "Consenting Defendants"), consented to the extension of the TRO, while certain other defendants, *i.e.*, Ms. Wang and Holy City (the "Holy City Parties"), had not responded to the TRO. (ECF No. 21.) On June 23, 2023, the Court granted the Trustee's motion in part, extending the TRO as against the Consenting Defendants and adjourning the hearing on the request for a preliminary injunction as to the Consenting Defendants without a new hearing date, but did not adjourn the hearing as it related to the Holy City Parties. (ECF No. 27.)

4

Subsequently, the Trustee informed the Court that he intended to allow the TRO to expire as to the Holy City Parties, but reserved his rights to seek a preliminary injunction against them in the future.  (ECF No. 31.)  Accordingly, the TRO remains in effect against the Consenting Defendants but is no longer in effect against the Holy City Parties.

### The Settlement between Trustee and Assignee and the Proposed Intervenors' objections

On June 23, 2023, the Trustee filed a motion to approve settlement with the Assignee (the "Settlement Motion").  (ECF No. 25; Main Case ECF No. 1936.)  If approved, the Assignee agreed in the Settlement Motion that he would, *inter alia*: (i) not contest the Complaint; (ii) not prosecute the Assignment Proceedings except taking certain procedural steps to close the cases; and (iii) turn over to the Trustee all assets of the HCHK Entities, to be held in a segregated account pending a final adjudication of the Complaint.

On July 11, 2023 and July 18, 2023, hearings were held on the Settlement Motion and a revised proposed order regarding the Settlement Motion (ECF No. 55; Main Case ECF No. 2004).  The Proposed Intervenors, among others, filed an objection to the Settlement Motion (ECF No. 40) and the revised proposed order (ECF No. 58).  The Proposed Intervenors argued that (a) they are creditors of the HCHK Entities; (b) the Assignee, in settling with the Trustee, was acting *ultra vires*, and (c) any recovery on their claims against the HCHK Entities would be diluted if the HCHK Entities and/or their assets were determined to be property of the Individual Debtor's bankruptcy estate.  On July 28, 2023, the Court entered an order granting the Settlement Motion (the "Order Approving Settlement"), overruling, among others, the Proposed Intervenors objections.  (ECF No. 70; Main Case ECF No. 2038.)  The Proposed Intervenors have appealed

the Order Approving Settlement.  (ECF No. 80.)  *See, generally*, *Shin Hsin Yu v. Despins ex rel. Kwok (In re Kwok)*, 23-cv-1067 (KAD) (D. Conn. Nov. 6, 2023).[6]

### The Motion to Intervene and the Motion to Clarify TRO

On July 17, 2023, the Proposed Intervenors filed the Motion to Intervene, asserting that they are *bona fide* creditors of the HCHK Entities and their interests are  not being adequately represented by the Assignee.  (ECF No. 60.)  On July 25, 2023, they also filed the Motion to Clarify TRO, seeking a determination that they are not in active concert or participation with the Consenting Defendants and could seek to remove the Assignee and/or oppose his actions in the Assignment Proceedings or elsewhere without violating the TRO.  (ECF No. 65.)

On July 27, 2023, the Trustee filed a motion to compel discovery from the Proposed Intervenors relating to the Motion to Intervene.  (ECF No. 67.)  On July 28, 2023, the Court extended the Trustee's time to respond to the Motion to Intervene and required the parties to submit a proposed scheduling order with discovery deadlines.  (ECF No. 71.)  On August 8, 2023, a status conference was held on the Motions, which the parties agreed are interrelated. The parties also agreed on a basic framework for discovery.  In addition, the Trustee and Assignee represented that no further action would be taken in the Assignment Proceedings pending a resolution of the Motion to Clarify TRO.  Subsequently, a scheduling order entered (ECF No. 82) and a stipulation regarding the Assignee's actions in the Assignment Proceedings pending resolution of the Motions was approved (ECF No. 99).

During a pretrial conference held on August 15, 2023, the discovery related to the Motions was again discussed.  The Proposed Intervenors argued that much of the discovery the Trustee sought was unnecessary, but they would not appeal any adverse order on the basis that

---

[6] *See* note 1, *supra* (Mr. Shih's name has at times been represented to be Mr. Shin Hsin Yu or Mr. Yu).

discovery had been allowed, while reserving their rights regarding other potential grounds for a future appeal. (Aug. 15, 2023 Hr'g Tr., ECF No. 101, at 80:20–82:9.)

On September 15, 2023, the Trustee filed objections to the Motions. (ECF Nos. 118–23.) On September 27, 2023, the Proposed Intervenors filed replies in support of the Motions. (ECF Nos. 131–33.)

### *The evidentiary hearing requested by the Proposed Intervenors*

On October 3, 2023, a status conference was held regarding the Motions. During the status conference, the Proposed Intervenors requested an evidentiary hearing to be held to allow them to put their clients on the stand to demonstrate that they are *bona fide* creditors of the HCHK entities. After the status conference, the Court issued a scheduling order granting the Proposed Intervenors request for an evidentiary hearing and setting various pre-trial deadlines. (ECF No. 146.) On November 2, 2023, the scheduling order was amended by consent. (ECF No. 167.)

On November 14, 2023, the Proposed Intervenors and the Trustee filed lists of witnesses and exhibits. (ECF Nos. 182, 183, 185, 191.) On November 20, 2023, the parties filed a joint stipulation of facts (the "First Stipulation of Facts") (ECF No. 197) and each filed omnibus motions *in limine* (ECF Nos. 196, 198) concerning many evidentiary issues, which the Court determined would be addressed, if necessary, during the evidentiary hearing. (ECF No. 205.)

On November 21, 2023, the Trustee filed certified translations of his exhibits originally filed in languages other than English. (ECF No. 203.) On November 28, 2023, the parties each filed supplements to certain exhibits. (ECF Nos. 206, 210.) Also on November 28, 2023, the Trustee and the Proposed Intervenors filed a stipulation regarding the authenticity of the

Trustee's exhibits taken from the internet.  (ECF No. 213.)  The Court subsequently so ordered this stipulation.  (ECF No. 232.)

On November 29, 2023, an evidentiary hearing was held on the Motions.  During the evidentiary hearing, the Proposed Intervenors called three witnesses: (i) Mr. Scott Semaya ("Mr. Semaya"), who was retained by the Assignee prior to the commencement of the adversary proceeding; (ii) Ms. Yan Chun Liu ("Ms. Liu") in support of the Proposed Intervenor BC LTD; and (iii) Mr. Shih, in support of himself as a Proposed Intervenor.  The Proposed Intervenors also moved for the admission of designations from the deposition testimony of Ms. Jie Zhang ("Ms. Zhang") (filed as Trustee Exhibit 22) to be deemed to be her testimony during the evidentiary hearing in support of the Proposed Intervenor GWGOPNZ.  The Trustee opposed the admission of the deposition testimony of Ms. Zhang except for certain purposes.  The Court took the issue under advisement.  The Court now rules that the parties' designations from Ms. Zhang's deposition testimony will be admitted into evidence and given appropriate weight.

Proposed Intervenor Exhibits 67, 88, and 93 and Trustee Exhibits 4, 27, 28, 32, 33, 36, 40, 42, 43, 44, 45, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 66, 67, 68, 69, 70 were admitted into evidence.  Trustee Exhibit 23 was not admitted into evidence, but used for impeachment purposes.

During the Trustee's cross-examination of Ms. Liu, she persistently refused to respond to questions even after the Court ordered her to respond on multiple occasions.  Thereafter, in an effort to resolve this issue, the Trustee and the Proposed Intervenors entered into a series of stipulations that were announced on the record, including the admission of certain exhibits and the stipulation of certain facts.  After the conclusion of the evidentiary hearing, the parties filed a stipulation (the "Second Stipulation of Facts," and together with the First Stipulation of Fact,

collectively, the "Stipulations of Fact") memorializing the stipulations on the record. (ECF No. 223.) Trustee Exhibits 74, 75, 76, 77, 78, 79, 80, and 81 and exhibit 4 to Trustee Exhibit 23 were admitted into evidence pursuant to stipulation.

Also during the cross-examination of Ms. Liu, the Trustee and the Court learned that the translator retained by the Proposed Intervenors was not certified to translate court proceedings and did not know how to translate certain questions and answers. The parties agreed that one of the Trustee's lawyers would instead translate testimony and documents when necessary. The Proposed Intervenors affirmed that they would not appeal any decision on the Motions on this basis. (Hr'g Tr. at 123:18–125:1.)

During closing arguments, GWGOPNZ admitted that it may be bound by the TRO, citing translations of certain evidence admitted into the record. (Hr'g Tr. at 258:22–259:12.)

At the conclusion of the evidentiary hearing, the Court took the Motions under advisement. These matters are ripe for decision.

## III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. The instant adversary proceeding in which the instant matters arise is a statutorily core proceeding. 28 U.S.C. § 157(b)(2)(A), (E), (O). The Court concludes its exercise of jurisdiction is not precluded by Constitutional concerns. *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9

## IV. FINDINGS OF FACT

Pursuant to Fed. R. Bankr. P. 7052, based on the testimony adduced and exhibits admitted into evidence during the evidentiary hearing, the exhibits admitted pursuant to stipulation, the Stipulations of Fact, the record of this adversary proceeding, and matters of which this Court may take judicial notice, the Court finds the following facts:

### *HCHK Entities and Ownership Structure*

1. HCHK Tech is a Delaware corporation. (First Stipulation of Fact ¶ 1.)

2. HCHK Property is a Delaware corporation. (First Stipulation of Fact ¶ 2.)

3. Lexington Property is a Delaware corporation. (First Stipulation of Fact ¶ 3.)

4. Holy City is a British Virgin Islands corporation that nominally owns a 99.9999% equity interest in each of the HCHK Entities. Mr. DiBattista is an individual who nominally owns a 0.0001% equity interest in each of the HCHK Entities. (First Stipulation of Fact ¶ 4.)

5. Holy City is nominally owned 100% by Ms. Wang. (First Stipulation of Fact ¶ 5.)

6. On March 10, 2023, a sealed complaint issued charging Ms. Wang with (1) conspiracy to commit wire fraud and securities fraud; (2) wire fraud; (3) securities fraud; and (4) unlawful monetary transaction. On March 15, 2023, Ms. Wang was arrested by federal law enforcement agents. (First Stipulation of Fact ¶ 6.)

### *Assignment Proceedings*

7. On April 20, 2023, the HCHK Entities each executed deeds of assignment (the "Deeds of Assignment") with the Assignee. (First Stipulation of Fact ¶ 7.)

8. On April 25, 2023, the Deeds of Assignment were filed with the clerk of the Supreme Court of the State of New York for New York County (the "New York Court"). (First Stipulation of Fact ¶ 8.)

9.  In May 2023, the Assignee filed affidavits with respect to each of the HCHK Entities (the "Assignee Affidavits") in the New York Court.  True and correct copies of the Assignee Affidavits, including the Deeds of Assignment are attached to the TRO/PI Motion at exhibits A (HCHK Tech), B (HCHK Property), and C (Lexington Property).  (First Stipulation of Fact ¶ 9.)

10.  According to the Assignee Affidavits, as of the dates of their respective Deeds of Assignment, (a) HCHK Tech possessed assets of approximately $17,500,000.00 in value, of which $4,500,000.00 was cash; (b) HCHK Property possessed assets of approximately $29,785,936 in value, the entirety of which was cash, and (c) Lexington Property possessed assets of approximately $2,000,000.00, the entirety of which was cash.  (First Stipulation of Fact ¶ 10.)

11.  According to the Assignee Affidavits, HCHK Tech has offices at 3 Columbus Circle, New York, NY 10019, which are leased by HCHK Property.  (ECF No. 4 Ex. A, ¶¶ 1–6.)

12.  The Assignee was represented in connection with the Assignment Proceedings by Cole Schotz P.C. as lead counsel, McManimon, Scotland & Baumann, LLC as special counsel, and DLA, LLC ("DLA") as financial advisor.  (First Stipulation of Fact ¶ 11.)

13.  Mr. Semaya is a forensic accountant employed at DLA, an internal audit and accounting advisory firm that also does work in accounting consulting and forensic valuation services for litigation.  Mr. Semaya provides forensic valuation services for litigation.  (Hr'g Tr., ECF No. 230, at 27:5–6, 15–22.)

14.  DLA was engaged by the Assignee in the Assignment Proceedings.  DLA was tasked with (i) inventorying fixed assets, furniture, fixtures, and equipment owned and/or possessed and/or controlled by the HCHK Entities in their offices at 3 Columbus Circle on the 20th and 22nd

floors and (ii) assisting in the response to subpoenas from the United States Attorney's Office. (Hr'g Tr. at 28:10–19.)

15. Neither DLA nor Mr. Semaya performed any type of forensic accounting analysis of the HCHK Entities' files. DLA was not hired to perform any type of forensic accounting analysis of the HCHK Entities' files. (Hr'g Tr. at 77:14–21.)

16. When asked about the location of HCHK Entities' loan documents, Mr. DiBattista told DLA he did not have any and that they should be in the HR and legal departments' offices within the HCHK Entities' offices. DLA did not find any loan documents for the HCHK Entities anywhere within those offices. DLA did not find any loan documents for the HCHK Entities in the electronic databases of the HCHK Entities. (Hr'g Tr. at 78:7–22, 79:5–11.)

17. When asked where else the HCHK Entities' loan documents may be located, Mr. DiBattista told DLA that the HCHK Entities' outside accountant might have them. Mr. Semaya contacted the outside accountant. The outside accountant told Mr. Semaya that they did not have any loan documents for the HCHK Entities. (Hr'g Tr. at 78:23–79:4, 79:12–25.)

18. When Mr. Semaya emailed Mr. DiBattista regarding the outside accountant possessing no loan documents for the HCHK Entities, Mr. DiBattista's criminal counsel responded to Mr. Semaya's inquiry and directed him to ask Attorney Sari Placona ("Attorney Placona") for loan documents relating to the HCHK Entities. Mr. Semaya understood Attorney Placona to be outside counsel for the HCHK Entities. On June 9, 2023, Attorney Placona provided DLA with certain purported loan documents of the HCHK Entities. Among those loan documents was Proposed Intervenors Exhibit 93, a document dated July 7, 2022, which sets forth terms for a purported loan to HCHK Tech and HCHK Property in the amount of $20,218,097.78 (USD) from BC LTD. (Hr'g Tr. at 61:2–62:11, 80:3–10.)

19.  Prior to June 9, 2023, DLA located no loan documents of the HCHK Entities.  (Hr'g Tr. at 80:11–16.)

### Procedural Background

20.  On June 8, 2023, the Trustee filed the Complaint.  (First Stipulation of Fact ¶ 12.)

21.  On June 12, 2023, the Court entered the TRO.  (First Stipulation of Fact ¶ 13.)

22.  On June 23, 2023, the Court extended the TRO against the Consenting Defendants. On June 26, 2023, the TRO expired as against the Holy City Parties.  (First Stipulation of Fact ¶¶ 16, 17.)

23.  Following the entry of the TRO, the Trustee and the assignee entered into a settlement agreement (the "Settlement Agreement").  On June 23, 2023, the Trustee filed the Settlement Motion, seeking approval of the Settlement Agreement.  (First Stipulation of Fact ¶¶ 14, 15.)

24.  On July 28, 2023, the Order Approving Settlement was entered over the objection of the Proposed Intervenors.  (First Stipulation of Fact ¶ 14.)

25.  On July 17, 2023, the Proposed Intervenors filed the Motion to Intervene.  On July 25, 2023, the Proposed Intervenors filed the Motion to Clarify TRO.  (First Stipulation of Fact ¶ 18.)

26.  The Assignee has not opposed the Motion to Intervene.  (First Stipulation of Fact ¶ 19.)

### HCHK Creditors' Committee

27.  HCHK creditor representatives include: Mr. Huo Lai (real name: Mr. Hao Li), Mr. Meiguo Xiaoli (real name: Mr. Chris Lee), Ms. Xiao Fei Xiang (real name: Ms. Yinying Wang), Ms. Ru Shui (real name: Ms. Yumei Hao), and Mr. Shan Mu (real name: Mr. Yongping Yan)

(the "Purported HCHK Creditor Representatives").  The Purported HCHK Creditor Representatives comprise a purported creditors' committee (the "Purported HCHK Creditors' Committee").  (First Stipulation of Fact ¶ 30; Second Stipulation of Fact ¶ 1.)

28.  The Proposed Intervenors each attended at least one meeting with one or more Purported Creditor Representatives.  (First Stipulation of Fact ¶ 33.)

29.  During his deposition, Mr. Shih testified that in connection with the Motion to Intervene, he and other representatives of the Proposed Intervenors participated in meetings with one or more Purported HCHK Creditor Representatives.  (First Stipulation of Fact ¶ 28.)

30.  Pastore LLC ("Pastore") never attended any formal meeting with the Purported Creditor Representatives.  (First Stipulation of Fact ¶ 31.)

31.  Pastore does not represent any of the Purported Creditor Representatives or the Purported Representatives as a group and has not knowingly participated in any creditors' committee meeting.  (First Stipulation of Fact ¶ 32.)

32.  The Purported HCHK Creditors' Committee instructed the Proposed Intervenors to file the Motion to Intervene to get their alleged loan money back.  (Second Stipulation of Fact ¶ 8.)

33.  During her deposition, Ms. Liu, testifying as the Rule 30(b)(6) representative of BC LTD, testified that one or more of the Purported HCHK Creditor Representatives instructed the Purposed Intervenors to file the Motion to Intervene.  (First Stipulation of Fact ¶ 29.)

34.  Mr. Yongbing Zhang ("Attorney Zhang") was referred to by Ms. Liu in her deposition testimony, as the "creditors' representative" and is the leader of the Purported HCHK Creditors' Committee.  (Second Stipulation of Fact ¶ 6.)

14

35.  Attorney Zhang attended meetings with the Proposed Intervenors and the Purported HCHK Creditors' Committee regarding the Motion to Intervene.  (Second Stipulation of Fact ¶ 7.)

36.  Attorney Zhang first approached Pastore regarding representation of the Proposed Intervenors.  (Oct. 3, 2023 Status Conference Tr., ECF No. 148, at 21:20–22:1 (Attorney John M. Pastore speaking).)

37.  Attorney Zhang has represented the Individual Debtor in an action styled *Kwok v. U.S. Citizenship & Immigration Services*, Civil Action No. 2:23-cv-00234-SRC-JBC (D.N.J. June 28, 2023).  (Trustee Ex. 27.)

38.  On August 2, 2023, the United States District Court for the Southern District of New York (Caproni, J.) entered an opinion and order in the civil action styled *An v. Despins*.  No. 22-CV-10062 (VEC), 2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023).  (Trustee Ex. 32.)  The Southern District dismissed the complaint for lack of standing (Trustee Ex. 32, at *4–7) and, pursuant to Rule 11 sanctioned the plaintiffs and their counsel (*Id.* at *14) because it concluded, among other things, that "Plaintiffs' papers reveal that their true preoccupation is with Mr. Kwok and trying to 'defend' him by harassing those perceived to be his adversaries" (*Id.* at *12) and "this lawsuit is just another part of a campaign of misbehavior designed to vex Defendants, most likely by frustrating Mr. Despins's ability to perform his duties as trustee" (*Id.* at *13).  The Southern District of New York noted:

> Although only Richard Freeth filed a notice of appearance on behalf of plaintiffs, Yongbing Zhang, who represents plaintiffs in several of the parallel cases filed against Mr. Kwok's perceived adversaries, appears to have been actively involved in this litigation.  *See, e.g.*, *Wyatt v. Univ. of Md.*, No. 23-CV-742 (D. Md. 2023).  For example, Mr. Freeth copied Mr. Zhang on his most recent letter to this Court.  Letter, Dkt. 28.

(*Id.* at *4 n. 3.)

15

39.   On August 22, 2023, the United States District Court for the Southern District of New York (Liman, J.) entered an opinion and order in the civil action styled *Gong v. Sarnoff*. No. 23-cv-343 (LJL), 2023 WL 5372473 (S.D.N.Y. Aug. 22, 2023).  (Trustee Ex. 28.)  The Southern District of New York concluded that it had "no difficulty concluding that Plaintiff's FARA claim is frivolous."  (Trustee Ex. 28, at *22.)  Further, the Southern District of New York concluded it had "no difficulty finding that Plaintiff here initiated this action for an improper purpose," (*Id.* at *29) stating:

> There is every reason to believe, and the Court finds, that the Complaint was filed not to redress any injury Plaintiff suffered on December 20, 2022, or to obtain judicial relief, but to harass Moving Defendants because of their representation of a client in litigation against Kwok and to deter others from doing the same.  Plaintiff and his counsel Zhang are affiliated with Kwok and sympathetic to him and his interests.

(*Id.* at *30–31) and:

> And if there is any doubt of the harassing purpose of this lawsuit, the history of lawsuits Zhang and Freeth have filed in this Court and elsewhere against PAX, persons associated with PAX, PAX's counsel, and those assisting the Bankruptcy Court settles that doubt.

(*Id.* at *32).  "Zhang" is Attorney Zhang.  (*Id.* at *1.)  The Southern District of New York entered Rule 11 sanctions against Attorney Zhang and his co-counsel.  (*Id.* at *34–39.)

40.   Mr. Huo Lai (real name: Mr. Hao Li), another member of the Purported HCHK Creditors' Committee, is the person on the left and the second person from the right in the pictures on pages 5 and 6, respectively, of the pictures marked as exhibit 4 to Trustee Exhibit 23. (Second Stipulation of Fact ¶ 2.)

41.   Mr. Meiguo Xiaoli (real name: Mr. Chris Lee), the third member of the Purported HCHK Creditors' Committee, is the man in the picture on page 8 of the pictures marked as exhibit 4 to Trustee Exhibit 23.  (Second Stipulation of Fact ¶ 3.)

42. Ms. Xiao Fei Xiang (real name: Ms. Yinying Wang), one of the members of the Purported HCHK Creditors' Committee, is the woman shown in the pictures on pages 1, 2, 3, and 4 of the pictures marked as exhibit 4 to Trustee Exhibit 23. (Second Stipulation of Fact ¶ 1.)

43. Ms. Ru Shui (real name: Ms. Yumei Hao), the fourth member of the Purported HCHK Creditors' Committee, is the woman shown in the picture on page 9 of the pictures marked as exhibit 4 to Trustee Exhibit 23. (Second Stipulation of Fact ¶ 4.)

44. Mr. Shan Mu (real name: Mr. Yongping Yan), the fifth member of the Purported HCHK Creditors' Committee, is the man on the right in the picture on page 5, the second person from the right in the picture on page 6, and the man on the right in the picture on page 7, of the pictures marked as exhibit 4 to Trustee Exhibit 23. (Second Stipulation of Fact ¶ 5.)

45. The members of the Purported HCHK Creditors' Committee are close associates of the Individual Debtor. (Trustee Ex. 23, Ex. 4.)

### Proposed Intervenor GWGOPNZ

46. Mr. Xuebing Wang ("Mr. Wang") is the indirect owner and sole director of GWGOPNZ. Mr. Wang also served as a representative of HCHK Property and HCHK Tech. (First Stipulation of Fact ¶ 27.)

47. The GWG in GWGOPNZ stands for "Guo Wengui" – which is the Mandarin Chinese[7] pronunciation of the Individual Debtor's name. NZ stands for New Zealand. (Trustee Ex. 22, at 64:22–65:5.)

48. Mr. Wang requested that Ms. Zhang testify for GWGOPNZ as its Rule 30(b)(6) representative. (Trustee Ex. 22, at 58:18–59:4.)

---

[7] Kwok Ho Wan is the Cantonese Chinese pronunciation of his name.

49.   Ms. Zhang has never been employed by, or held any position with, GWGOPNZ. (First Stipulation of Fact ¶ 26.)

50.   Although Ms. Zhang has no personal knowledge about the operations and management of GWGOPNZ, she knows that Mr. Wang owns GWGOPNZ.  (Trustee Ex. 22, at 65:6–66:21, 68:5–17.)

51.   Ms. Zhang had never seen the Motion to Intervene before her deposition.  (Trustee Ex. 22, at 75:25–76:9.)

52.   As of the date of her deposition, September 6, 2023, Ms. Zhang, who testified as the Rule 30(b)(6) representative of GWGOPNZ, had "never seen . . . before" any purported loan agreement by and between GWGOPNZ, on the one hand, and HCHK Property and HCHK Tech, on the other hand.  (First Stipulation of Fact ¶ 25; Trustee Ex. 22, at *80:22–81:21, 82:12–18.)

53.   To the best of Ms. Zhang's knowledge, GWGOPNZ never transferred any money to the HCHK Entities.  (Trustee Ex. 22, at *87:16–20.)

54.   Ms. Zhang does not know how much money, if any, the HCHK Entities owe to GWGOPNZ.  (Trustee Ex. 22, at *86:21–87:5.)

55.   Ms. Zhang understood Mr. Wang to be responsible for the purported loan agreement between GWGOPNZ and the HCHK Entities.  (Trustee Ex. 22, at *81:10–21, 82:15–18.)

56.   Ms. Zhang deleted WhatsApp messages regarding sending money to the HCHK Entities at the direction of Mr. Wang.  Ms. Zhang does not know if Mr. Wang kept records. (Trustee Ex. 22, at *59:5–61:23, 62:9–11, 64:3–21.)

57.   Ms. Zhang kept records of a personal transfer she made to the HCHK Entities. (Trustee Ex. 22, at *62:6–8.)

58. Ms. Zhang has followed the Individual Debtor's broadcasts and programming since around 2018. (Trustee Ex. 22, at *37:14–15.)

59. Ms. Zhang considers herself a member of the Whistleblower Movement and the New Federal State of China – both of which were founded by the Individual Debtor. (Trustee Ex. 22, at *36:4–7, 18–22, 39:21–41:20.)

60. Ms. Zhang is a member of a Himalaya Farm, namely, the New Zealand Eden Farm, which is also called the New Zealand Farm or the Eden Farm. The leader of the New Zealand Eden Farm is Mr. Wang. The New Zealand Eden Farm communicates through Discord, a social media platform. (Trustee Ex. 22, at *42:23–43:17, 47:10–18.)

61. In a video posted on January 1, 2023 by the @20minfocus GETTR account, Mr. Wang is recorded speaking to protestors picketing outside the Trustee's home in Greenwich, Connecticut. According to his remarks, he was speaking on January 1, 2023. He discusses meetings in "New York" at "the 3C office" with other members of "the alliance" and the "iron-blooded group" and his desire to "visit these comrades on the front line." He tells the picketers that the Trustee will be imprisoned and will "feel our strength." (Trustee Exs. 4, 22, at *69:4–70:2.)

### *Proposed Intervenor BC LTD*

62. Ms. Liu is the owner of BC LTD. (Hr'g Tr. at 88:8–10.)

63. On June 18, 2022, Ms. Liu was the transferee of 100 shares in BC LTD, which, at that time were all extant shares in BC LTD. (Proposed Intervenors Ex. 88.)

64. When Ms. Liu signed the document marked Proposed Intervenors Exhibit 93, dated July 7, 2022, which sets forth terms for a purported loan from BC LTD to HCHK Tech and HCHK Property in the amount of $20,218,097.78 (USD), it was already purportedly signed by

HCHK Tech and HCHK Property.  She has no personal knowledge of the purported borrower's signature.  Ms. Liu was given the document to sign by Mr. Wang, the owner of GWGOPNZ, who acted as a "coordinator."  (Hr'g Tr. at 112:2–8.)  (Proposed Intervenors Ex. 93.)

65.  The $20,218,097.78 referenced in the claim of BC LTD was never transferred to any of the HCHK Entities in connection with any loan.  (Second Stipulation of Fact ¶ 9.)

66.  BC LTD transferred $600,200.00 (USD) on December 10, 2021 via wire transfer with an unknown transferee.  (Proposed Intervenors Ex. 67.)

67.  Ms. Liu communicates with the Individual Debtor, including in connection with the Individual Debtor's cryptocurrency.  (Second Stipulation of Fact ¶¶ 11, 12.)

68.  Ms. Liu has posted repeatedly and numerously on social media defamatory pictures of the Trustee, support of the protests, and pictures of the protests against the Trustee, his counsel, and Paul Hastings LLP.  (Second Stipulation of Fact ¶ 13; Trustee Exs. 74, 75, 76, 77, 78, 79, 80, 81.)

### Proposed Intervenor Mr. Shih

69.  Mr. Shih has never transferred any money from any account he controls to any HCHK Entity or Entities.  (Hr'g Tr. at 167:24–168:3.)

70.  Mr. Shih has never transferred any money from any business he owns or controls to any HCHK Entity or Entities.  (Hr'g Tr. at 168:11–14.)

71.  During his deposition, Mr. Shih testified that "a friend in Taiwan" he calls "Big Brother Liu" gave him the documents found at exhibit E of the Motion to Intervene (the "Kalixun Document").  (First Stipulation of Fact ¶ 23.)

72.  Mr. Shih does not know the legal name of the individual he identified as "Big Brother Liu."  (First Stipulation of Fact ¶ 24; Hr'g Tr. at 171:1–3.)

73.   Mr. Shih has no personal knowledge regarding any transfer from the person he calls "Big Brother Liu" to any HCHK Entity or Entities.  (Hr'g Tr. at 171:11–14.)

74.   No writing exists to document the purported transfer from Mr. Shih to "Big Brother Liu."  (Hr'g Tr. at 171:15–172:7.)

75.   Mr. Shih does not have, and never has had, an ownership or financial interest in Kalixun Trading Limited ("Kalixun") and does not otherwise control Kalixun.  (First Stipulation of Fact ¶ 21; Hr'g Tr. at 168:25–169:9.)

76.   Mr. Shih does not know who controls Kalixun.  (First Stipulation of Fact ¶ 22.)

77.   Mr. Shih has no personal knowledge regarding any communication between Kalixun and any HCHK Entity or Entities.  (Hr'g Tr. at 170:14–19.)

78.   Mr. Shih, through counsel, represented to the Trustee that the operative loan agreement by and between himself and HCHK Property is dated March 2, 2023, bearing bates stamps SHY000009 through SHY000016 (the "Shih Document").  (First Stipulation of Fact ¶ 20.)

79.   Mr. Shih told his counsel that the Shih Document was the operative loan agreement. (Hr'g Tr. at 174:7–25, 176:9–24.)

80.   Metadata reveals that Mr. Shih's signature and the purported March 2, 2023 date (styled 03/02/2023) of that signature were added to the final page of the Shih Document on August 21, 2023 – over a month after the Motion to Intervene was filed on July 17, 2023 – by a user named "Paris."  Mr. Shih's name and the amount of the purported loan were added to the first page of Shih Document on August 17, 2023 and the purported March 2, 2023 date (styled 02/03/2023) was added to the first page of the Shih Document on August 21, 2023, again by a user named "Paris."  (Trustee Ex. 33.)

21

81. "Paris" is a nickname of Mr. Shih's wife, which he also used as the name of his iPhone. (Hr'g Tr. at 180:25–181:8.)

82. Mr. Shih placed his name as lender, his signature, and the date of March 2, 2023 on the final page of the Shih Document on August 21, 2023. (Hr'g Tr. at 181:2–8.)

83. Mr. Shih placed his name as lender and the amount of the purported loan on the first page of the Shih Document on August 17, 2023. Mr. Shih placed the date of March 2, 2023 on the first page of the Shih Document on August 21, 2023. (Hr'g Tr. at 181:9–13, 21–23, 183:18–23.)

84. Mr. Shih did not tell his counsel that the Shih Document was post-dated and signed on August 21, 2023. (Hr'g Tr. at 186:23–187:5.)

85. Mr. Shih has no personal knowledge of any person from any HCHK Entity or Entities signing the Shih Document. (Hr'g Tr. at 186:3–18.)

86. Mr. Shih pays his own legal fees. (Hr'g Tr. at 188:24–189:6.)

87. Mr. Shih has talked with the Individual Debtor one-on-one several times. He has spoken with the Individual Debtor in group settings many times, including on live streams. (Hr'g Tr. at 189:11–190:5.)

88. Mr. Shih has appeared with the Individual Debtor many times regarding G-Fashion. (Hr'g Tr. at 190:14–191:3.)

89. Mr. Shih has appeared with the Individual Debtor at events for G Club. (Trustee Ex. 36.) (Hr'g Tr. at 191:4–10, 193:3–194:22.)

90. Mr. Shih has appeared with the Individual Debtor many times regarding H-Coin, a cryptocurrency – or in Mr. Shih's terminology a "digital currency." (Hr'g Tr. at 194:23–196:19.)

91.   Mr. Shih's X account (formerly known as Twitter) is @jackson66368924.  (Hr'g Tr. at 200:13–20.)

92.   Mr. Shih either copies and pastes text into his X posts or creates his own text.  (Hr'g Tr. at 200:23–201:22, 207:21–208:6, 16–19.)

93.   Between at least November 22, 2022 and December 29, 2022, the X account @jackson66368924 made numerous posts about protests against the Trustee and the Trustee's counsel occurring at Grand Central Station in New York City and outside the Trustee's home in Greenwich, Connecticut.  The posts include various edited images of the Trustee and others, *e.g.*, with a hammer and sickle emblazoned on their foreheads or wearing Nazi uniforms.  The posts discuss, among other things, proceedings in this Court, preferred outcomes on appeal, and desires regarding the Trustee.  (Trustee Exs. 40, 42, 43, 44, 45, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 66, 67, 68, 69, 70.)

## V.  CONCLUSIONS OF LAW

Pursuant to Fed. R. Bankr. P.  7052, the following are the Court's conclusions of law regarding the Motion to Intervene and he Motion to Clarify TRO.

### A.  The Motion to Intervene

The Proposed Intervenors move to intervene as of right pursuant to Fed. R. Civ. P. 24(a) and, in the alternative, for permissive intervention pursuant to Fed. R. Civ. P. 24(b).  The Court considers these alternate bases for relief in turn.

#### 1.  Rule 24(a)(1) and (a)(2) – Intervention as of Right

Rule 24(a), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7024, provides that the Court

> must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the

> subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

With respect to Rule 24(a)(1), the United States Court of Appeals for the Second Circuit has held that section 1109(b) of title 11 of the United States Code (the "Bankruptcy Code") gives a party in interest an unconditional right to intervene in an adversary proceeding. *Term Loan Holder v. Ozer Grp., L.L.C. (In re Caldor Corp.)*, 303 F.3d 161, 169 (2d Cir. 2002). Therefore, the Court must determine whether the Proposed Intervenors are parties in interest under section 1109(b), which the Trustee disputes.

Section 1109(b) provides a non-exhaustive list of parties of interest:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b). The Proposed Intervenors contend they are *not* creditors of the Individual Debtor. Therefore, the Proposed Intervenors are not enumerated parties in interest under section 1109(b). Although the Proposed Intervenors are not enumerated parties under a federal statute, the Second Circuit has also held that unenumerated parties may qualify as parties in interest if they have a financial stake in the outcome of the litigation but, under limited circumstances, parties with only a legal interest may also qualify as parties in interest. *Savage & Assocs., P.C. v. K & L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 60–61 (2d Cir. 2011).

Because the Proposed Intervenors are not enumerated parties in interest in the Individual Debtor's case, the standards of Rule 24(a)(1) and 24(a)(2) effectively collapse. Turning then to Rule 24(a)(2), "In order to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate

24

that the interest may be impaired by the disposition of the action, and (4) show that the interest is

not protected adequately by the parties to the action." *Kaliski v. Bacot (In re Bank of N.Y.*

*Derivative Litig.)*, 320 F.3d 291, 300 (2d Cir. 2003) (quoting *N.Y. News, Inc. v. Kheel*, 972 F.2d

482, 485 (2d Cir. 1992); *see Berger v. N.C. State Conf. of NAACP*, 597 U.S. ___, 142 S. Ct.

2191, 2200–01 (2022) (stating same but with elements (2) and (3) of the Second Circuit's

formulation as a single element).[8]  The putative intervenor's "interest [must] be direct,

substantial, and legally protectable." *Washington Elec. Co-op., Inc. v. Mass. Mun. Wholesale*

*Elec. Co.*, 922 F.2d 92, 96–97 (2d Cir. 1990); *see United States v. Peoples Benefit Life Ins. Co.*,

271 F.3d 411, 415 (2d Cir. 2001) (collecting cases).  It must presently be "colorable," rather than

"remote" or "contingent." *Washington Elec.*, 922 F.2d at 97.  Regarding adequacy of

representation, the putative intervenor need only show that "representation of his interest 'may

be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich*

*v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972).  Nevertheless, "[w]here there is an

identity of interest between a putative intervenor and a party, adequate representation is assured."

*N. River Ins. Co. v. O&G Indus., Inc.*, 315 F.R.D. 1, 5 (D. Conn. 2016) (quoting *Washington*

*Elec.*, 922 F.2d at 98).

The Proposed Intervenors argue that they must be permitted to intervene under both

prongs of Rule 24(a) because they:(1) are parties in interest for purposes of section 1109; and (2)

have a financial stake in the assets of the HCHK Entities, which interest the outcome of this

adversary proceeding will affect, and neither the Assignee nor any other party adequately

represents their interests.  In particular, the Proposed Intervenors argue that they are *bona fide*

creditors of the HCHK Entities.  Regarding GWGOPNZ and BC LTD, they assert that they have

---

[8]  The parties do not dispute the timeliness of the Motion to Intervene.  The Court agrees that the
Motion to Intervene was timely filed.

plausibly alleged through testimony that consortiums of lenders made undocumented loans to the HCHK Entities, which loans were aggregated in undocumented loan agreements between a Proposed Intervenor, as lender, and HCHK Tech and HCHK Property, as borrowers.  Regarding Mr. Shih, they assert that he has plausibly alleged that he made an undocumented loan through "Big Brother Liu" and Kalixun, in sequence, to HCHK Property.  The Proposed Intervenors assert that if the Trustee is successful, their expected dividend from the assets of the HCHK Entities will be diluted by other creditors and that the Assignee is failing to protect their interests in this regard.

The Trustee argues that the Proposed Intervenors are not parties in interest and are not *bona fide* creditors of the HCHK Entities, but are instead seeking to intervene to support the Individual Debtor and delay this adversary proceeding.  The Trustee further argues that there is no evidence to support that (a) loan agreements were ever entered into between the Proposed Intervenors and the HCHK Entities or (b) transfers were made pursuant to any such loan agreements.  Instead, the Trustee argues, the Motion to Intervene is a meritless motion orchestrated by close associates of the Individual Debtor to hinder the Trustee's pursuit of the Individual Debtor's assets.

The Court agrees with the Trustee.  The Proposed Intervenors have not presented substantial, legally protectable, colorable claims, despite being provided the opportunity to do so upon their request. *See Washington Elec.*, 922 F.2d at 96–97.  Furthermore, the Proposed Intervenors have not established that they have a direct financial stake in the outcome of this adversary proceeding. *See Savage*, 640 F.3d at 60–61.  While counsel for the Proposed Intervenors repeatedly referred the Court to Justice Breyer's opinion in *Superior Paint Manufacturing Co. v. Lopez-Soto (In re Lopez-Soto)*, 764 F.2d 23 (1st Cir. 1985) for the

26

proposition that the burden on the Proposed Intervenors is light, they have not presented any credible evidence or documentation supporting any of their purported loans.  Instead of supporting the claim that they are *bona fide* creditors of the HCHK Entities which could result in a finding that they have a financial stake in this adversary proceeding, the Rule 30(b)(6) representative *chosen by GWGOPNZ* could not authenticate the purported loan agreement between GWGOPNZ and HCHK Tech and HCHK Property.  (Fact 53.)  In addition to GWGOPNZ's inability to authenticate a loan agreement, BC LTD *stipulated* that no loan was made to the HCHK Entities in accordance with the purported loan agreement.  (Fact 65.)  Finally, Mr. Shih, the last Proposed Intervenor, testified that he had no documents supporting any agreement with "Big Brother Liu," had no personal knowledge of any agreement between "Big Brother Liu" and Kalixun, and had no personal knowledge of any agreement between Kalixun and the HCHK Entities.  (Facts 69, 70, 73, 74, 75, 76.)

The facts and circumstances surrounding the purported loan agreements in support of the Motion to Intervene are concerning.  First, the purported loan agreements between GWGOPNZ or BC LTD, as the purported lender, and HCHK Tech and HCHK Property, as the purported borrowers, were not among the files in the HCHK Entities' offices or with their outside accountant.  (Facts 16, 17.)  Rather, they were belatedly produced by Attorney Placona, purported outside counsel to the HCHK Entities.  (Facts 18, 19.)  The Proposed Intervenors called no one from the HCHK Entities to explain these circumstances.  Second, the purported loan agreement between Mr. Shih and HCHK Property is an admitted forgery.  (Facts 78, 79, 80, 81, 82, 83, 84.)  Third, testimony from both Ms. Liu and Mr. Shih establishes that neither had personal knowledge of anyone signing the purported loan agreements on HCHK Tech's or HCHK Property's behalf.  (Facts 64, 85.)  Fourth, Mr. Wang, the owner of GWGOPNZ, avoided

a subpoena to appear and testify, ordered the destruction of *potentially* pertinent information, and solicited entry into the purported loan agreement by BC LTD.  (Facts 52, 56.)

The Proposed Intervenors argue that, notwithstanding the dearth of authentic loan agreements and supporting transfer records, the Court must allow them to intervene based on the testimony of their witnesses.  The Court disagrees.  First, the testimony of Ms. Liu and Mr. Shih is not credible.  Ms. Liu recanted a large portion of her testimony during her deposition to avoid testifying about Attorney Zhang, whom BC LTD now stipulates was the leader of the Purported HCHK Creditors' Committee which directed the Proposed Intervenors to file the Motions. (Facts 32–35.)  While testifying during the evidentiary hearing, Ms. Liu brazenly and repeatedly refused to answer questions on cross examination despite the Court ordering her to do so.  In addition, Mr. Shih admits he forged a document to advance this litigation.  (Facts 78, 79, 80, 81, 82, 83, 84.)  He was also evasive about his relationship to the Individual Debtor, his social media presence regarding these jointly administered Chapter 11 cases, and his knowledge and recognition of the Trustee.  Further still, Mr. Shih repeatedly avoided questions and accused the Trustee's counsel of smearing him before being faced with evidence and then answering the questions.  For example, Mr. Shih resisted questions about crypto currency apparently on the basis that he instead considered H-Coin a "digital currency."

Second, GWGOPNZ, for its part, avoided putting forward a competent corporate representative.  Ms. Zhang was clearly not competent to testify as GWGOPNZ's Rule 30(b)(6) representative.  Furthermore, she did not appear in court despite GWGOPNZ's failure to establish her unavailability and despite the Trustee's motion to exclude much of her deposition testimony.  (Facts 49–54.)  Mr. Wang, who seemingly *could* have answered questions directed to GWGOPNZ, avoided the Trustee's subpoena and instead asked Ms. Zhang to be GWGOPNZ's

corporate representative.  (Fact 48.)  The evidence in the record makes clear that Mr. Wang has the ability to be in the United States, and indeed in Connecticut, when he chooses to be.  (Trustee Ex. 4.)

Finally, the alleged complexity of the purported loan transactions discussed during testimony, juxtaposed against the lack of any loan documentation, underscores the paucity of the Proposed Intervenors' evidence.  GWGOPNZ and BC LTD argue that individuals made transfers to HCHK Tech and HCHK Property on behalf of GWGOPNZ or BC LTD as a loan to HCHK Tech and HCHK Property.  Yet, GWGOPNZ and BC LTD produced no loan documents, contracts, or other writings detailing the obligations of these myriad parties.  Mr. Shih, for his part, alleges he made a loan through wo parties he does not control, including through a man whose name he does not even know.  As was true or GWGOPNZ and BC LTD, Mr. Shih produced no documents to support the various obligations of the various parties.

Therefore, for all these reasons, the Proposed Intervenors have failed to establish that they are parties in interest under section 1109 entitled to intervention as of right under Rule 24(a)(1) and have failed to establish the second element for intervention as of right under Rule 24(a)(2) and  Having concluded that the Proposed Intervenors have no interest in this adversary proceeding, it follows that they have also failed to establish the third and fourth elements, both of which are predicated upon the putative intervenor having an interest.  Accordingly, the Proposed Intervenors are not entitled to intervention as of right.

## 2. Rule 24(b)(1)(B) – Permissive Intervention

Turning to permissive intervention, Rule 24(b)(1)(B),[9] made applicable in this adversary

proceeding by Fed. R. Bankr. P. 7024, provides:

> On timely motion, the court may permit anyone to intervene who: . . . has a claim or
> defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1)(B). "Permissive intervention is wholly discretionary with the trial

court." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978). The Court's

discretion is "very broad." *Brennan*, 579 F.2d at 192; *see Kaliski,* 320 F.3d at 300 n. 5. This

Court is to consider, *inter alia*, (1) "whether the intervention will unduly delay or prejudice the

adjudication of the rights of the original parties," (2) "the nature and extent of the intervenors'

interests," (3) "whether their interests are 'adequately represented by the other parties,'" and (4)

"whether parties seeking intervention will significantly contribute to full development of the

underlying factual issues in the suit and to the just and equitable adjudication of the legal

questions presented." *Brennan*, 579 F.2d at 191–92; *see R Best Produce, Inc. v. Shulman-Rabin*

*Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006); *United States v. Yale Univ.*, 337 F.R.D. 35, 45

(D. Conn. 2021).

Turing to the factors set forth in *Brennan,* the first factor could tip either way. Presently,

all defendants in this adversary proceeding have been defaulted. There is, however, a pending

motion to set aside the default entered against Holy City and the HCHK Entities. If the motion

to set aside default is granted, granting the Motion to Intervene may not prolong the time before

judgment is entered. If the motion to set aside default is denied, granting the Motion to Intervene

would prolong the time before judgment is entered.

---

[9]  Rule 24(b)(1)(A) is not applicable because, as discussed above, under Second Circuit law
section 1109(b) gives an *unconditional* right – not a *conditional* right – to intervene. *Caldor*
*Corp.*, 303 F.3d at 169.

Both the second and third factors support denying the request to permissively intervene. As discussed above, the Proposed Intervenors have no colorable interest in the property that is the subject of this adversary proceeding.  Therefore, they have no interest that can be inadequately represented.

As to the fourth factor, the Proposed Intervenors would not "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Brennan*, 579 F.2d at 192.  First, as discussed above, the record demonstrates the Proposed Intervenors have no cognizable interest in this adversary proceeding.  Second, the record demonstrates that the Proposed Intervenors' interest is instead in obstructing these Chapter 11 cases and related adversary proceedings for the perceived benefit of the Individual Debtor.  The Purported HCHK Creditors' committee is comprised of individuals close to the Individual Debtor and led by an attorney, Attorney Zhang, who has been sanctioned at least twice by the United States District Court for the Southern District of New York for filing frivolous suits against the Trustee and others for the purpose of obstructing these proceedings to suit the interests of the Individual Debtor.  (Facts 27–45.)  Mr. Wang, the owner of GWGOPNZ, participated in and supported the harassment of the Trustee earlier in this case and avoided a subpoena for him to appear regarding the Motions.  (Fact 61.)  Ms. Liu, the owner of BC LTD, and Mr. Shih, posted repeatedly in support of the harassment of the Trustee.  (Facts 68, 93.)  Finally, the evidentiary hearing strongly demonstrates that despite requesting and being granted an opportunity to present evidence, the Proposed Intervenors have no ability to present evidence and instead seem intent on wasting judicial resources. Therefore, upon consideration of relevant factors, the Court, within its broad discretion, denies the Proposed Intervenors' request for permissive intervention.

31

For these reasons, the Motion to Intervene is denied.

## B. The Motion to Clarify TRO

Rule 65, made applicable in this adversary proceeding by Fed. R. Bankr. P. 7065,

provides, in pertinent part, that:

> (2) Persons Bound.  The order binds only the following who receive actual notice of it by personal service or otherwise:
>
> (A) the parties;
>
> (B) the parties' officers, agents, servants, employees, and attorneys; and
>
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d)(2).  Pursuant to Rule 65(d)(2), the TRO, which remains in effect regarding

all defendants other than the Holy City Parties, states, in pertinent part:

> **ORDERED:**  Upon receipt of actual notice of this TRO by personal service or otherwise, the Defendants; the Defendants' officers, agents, servants, employees, and attorneys; and any person in active concert or participations [sic] with the Defendants and/or the Defendants' officers, agents, servants, employees, and attorneys including, without limitation, G-News Operations, LLC ("G-News") and Ms. Irene Feng, are temporarily restrained and enjoined from commencing or continuing the Assignment Proceedings (or any other judicial, administrative, or other actions or proceedings with respect to the HCHK Entities and/or their assets), including Interim Management Agreement ("IMA") with G-News; and it is further
>
> **ORDERED:**  Upon receipt of actual notice of this TRO by personal service or otherwise, the Defendants; the Defendants' officers, agents, servants, employees, and attorneys; and any person in active concert or participations [sic] with the Defendants and/or the Defendants' officers, agents, servants, employees, and attorneys, including, without limitation, GNews and Irene Feng, are temporarily restrained and enjoined from any transfer or use of the assets, including cash, of the HCHK Entities (including but not limited to such assets purportedly transferred to the Assignee Defendant and/or held by the Assignee Defendant, and including but not limited to any transfer or use of such assets effectuated pursuant to the IMA), or ownership interests in the HCHK Entities, except as authorized or directed by the Trustee or this Court . . .

(TRO at 14–15.)  These decretal paragraphs remain in effect as to the Consenting Defendants –

the Assignee, Mr. DiBattista, and the HCHK Entities.

"Rule 65(d) is designed to codify the common-law doctrine that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 303 (2d Cir. 1999); *see Next Invs., LLC v. Bank of China*, 12 F.4th 119, 134 (2d Cir. 2021); *NML Cap. Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013). Unnamed parties are in active concert or participation with an enjoined party if, after receiving actual notice of the injunction, they take an action for the benefit of, or to assist, an enjoined party. *Havens v. James*, 76 F.4th 103, 111–14 (2d Cir. 2023); *see also Artista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 35–36 (S.D.N.Y. 2015).

The Proposed Intervenors seek an order clarifying the TRO to allow them to participate in the Assignment Proceedings or initiate a separate action against the Assignee without the risk of being found in contempt of the TRO. Substantively, the Proposed Intervenors argue that they are not in active concert or participation with any of the Consenting Defendants and, hence, are not bound by the TRO.. Notably, during the evidentiary hearing, counsel for GWGOPNZ did not prosecute the Motion to Clarify TRO when faced with evidence of Mr. Wang's involvement with and statements made during protests outside the Trustee's home in relation to the Individual Debtor's Chapter 11 case.

The Trustee opposes the Motion to Clarify TRO with two arguments. First, he argues that the Proposed Intervenors lack standing to seek clarification of the TRO because they have no cognizable interest in either this adversary proceeding or in the Assignment Proceedings. Second, he argues that the Proposed Intervenors are nevertheless in active concert or participation with the HCHK Entities.

The Court first considers the threshold issue of whether the Proposed Intervenors have standing to move for clarification of the TRO.  "To have standing, '[a] plaintiff must [1] allege personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief.'"  *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir. 1995) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)) (modifications in the original).  "The party invoking federal jurisdiction bears the burden of establishing [standing]."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

As discussed above, the record before the Court establishes that the Proposed Intervenors have no interest in either this adversary proceeding or in the Assignment Proceedings because they are not *bona fide* creditors or otherwise stakeholders of the HCHK Entities.  Therefore, the Court agrees with the Trustee that the Proposed Intervenors have no standing to bring the Motion to Clarify TRO.  Accordingly, the Motion to Clarify TRO is denied.

Nevertheless, should a reviewing court determine that the Proposed Intervenors have standing to bring the Motion to Clarify TRO, the Court finds that the Proposed Intervenors are bound by the TRO.  First, the Proposed Intervenors have stipulated that Mr. Wang, the owner of GWGOPNZ, has acted as a representative HCHK Entities.  (Fact 46.)  This representation is supported by further evidence in the record, which also connects Mr. Wang to BC LTD.  While speaking to protestors outside the Trustee's home, Mr. Wang discusses meetings in New York at the "3C" offices with others involved in the protest movement.  (Fact 61.)  HCHK Tech has offices at 3 Columbus Circle, New York, NY 10019, which are leased by HCHK Property.  (Fact 11.)  Moreover, Mr. Wang seemingly arranged transfers of money to the HCHK Entities from individuals in New Zealand without any entry into loan agreements and ordered the destruction

34

of transfer information from members of the New Zealand Eden Farm to the HCHK Entities. (Facts 52–60.)  Finally, Mr. Wang also "coordinated" transfers from individuals in Canada to the HCHK Entities, again subject to no loan agreement, through BC LTD.  (Facts 64, 65.)

Second, the HCHK Entities and the Proposed Intervenors share the goal of disrupting these jointly administered Chapter 11 proceedings.  As discussed above, Mr. Wang discusses being busy working on the movement protesting the Trustee's involvement in this case for the benefit of the Individual Debtor at what seems to be the offices of HCHK Tech.  (Facts 11, 61.) Therefore, the Court concludes HCHK Tech and GWGOPNZ were involved in the protest movement.  Ms. Liu, the owner of BC LTD, and Mr. Shih, also participated in the protests via social media.  (Facts 68, 93.)  Attorney Zhang, who leads the Purported HCHK Creditors' committee is involved in filing frivolous lawsuits to harass the Trustee's involvement in this case for the perceived benefit of the Individual Debtor.  (Facts 34–39.)  The Motion to Intervene and the Motion to Clarify TRO are a continuation of that effort.

Finally, the Trustee has represented to the Court that counsel for Holy City and the HCHK Entities is taking instructions from Attorney Zhang, on information and belief based on communications with counsel for the Proposed Intervenors.  In filings in this Court, counsel for Holy City and the HCHK Entities has redacted the name of the person from whom he is taking directions.  This is concerning to the Court.

For all these reasons, if the Proposed Intervenors had standing to bring the Motion to Clarify TRO, the Court would clarify that the Proposed Intervenors are parties bound by the TRO and would be in contempt of the TRO if they were to proceed in the Assignment Proceedings or elsewhere.

## VI.  CONCLUSION AND ORDER

For the above stated reasons, the Court denies the Motion to Intervene, with respect to both the request to intervene as of right and to permissively intervene, and denies the Motion to Clarify TRO.  Accordingly, it is hereby

**ORDERED:**  The Motion to Intervene (ECF No. 60) is **DENIED**; and it is further

**ORDERED:**  The Motion to Clarify TRO (ECF No. 65) is **DENIED**.

Dated at Bridgeport, Connecticut this 5th day of January, 2024.

*Julie A. Manning*
*United States Bankruptcy Judge*
*District of Connecticut*