## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HO WAN KWOK, *et al.*, | ) Case No. 22-50073 (JAM) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | ) Adv. P. No. 23-05013 (JAM) |
| | ) Re: ECF No. 268 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HCHK TECHNOLOGIES, INC., HCHK PROPERTY MANAGEMENT, INC., LEXINGTON PROPERTY AND STAFFING, INC., HOLY CITY HONG KONG VENTURES, LTD., ANTHONY DIBATTISTA, YVETTE WANG, and BRIAN W. HOFMEISTER, ASSIGNEE FOR THE BENEFIT OF CREDITORS, | ) |
| | ) |
| Defendants. | ) |

## **APPEARANCES**

Douglass Barron                          Patrick R. Linsey
Paul Hastings LLP                        Neubert, Pepe & Montieth
200 Park Avenue                          195 Church Street, 13th Floor
New York, NY 10166                       New Haven, CT 06510

    and

Nicholas A. Bassett (argued)
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

*Counsel for Movant Mr. Luc A. Despins, Chapter 11 Trustee for the Estate of Mr. Ho Wan Kwok, Plaintiff*

John T. Shaban (argued)
Levine & Levine, PLLC
29 Ledgewood Road
Redding, CT 06896

*Counsel for Respondents HCHK Technologies, Inc., HCHK Property Management, Inc.,*
*Lexington Property and Staffing, Inc., and Holy City Hong Kong Ventures, Ltd., Defendants*

**MEMORANDUM OF DECISION AND ORDER**
**GRANTING MOTION FOR DEFAULT JUDGMENT**

Julie A. Manning, United States Bankruptcy Judge

## I.    INTRODUCTION

Before the Court is the Motion for Default Judgment (the "Motion" or "Motion for

Default Judgment") filed by the plaintiff, Mr. Luc A. Despins, in his capacity as the Chapter 11

trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Mr. Ho Wan Kwok (the

"Individual Debtor").  (ECF No. 268.)[1]  The Motion seeks entry of default judgment and a

permanent injunction against all defendants in this adversary proceeding.  For the reasons set

forth below, the Motion is **GRANTED**.

## II.    BACKGROUND[2]

On February 15, 2022, the Individual Debtor filed a voluntary Chapter 11 petition in this

Court.  (Main Case ECF No. 1.)  The Individual Debtor's Chapter 11 case is jointly administered

with the voluntary Chapter 11 cases of two affiliated corporate debtors.  (Main Case ECF Nos.

970, 1141.)  For the reasons set forth therein, on June 15, 2022, the Court entered a

memorandum of decision and order appointing a Chapter 11 trustee.  (Main Case ECF No. 465.)

---

[1]  References to the docket in this adversary proceeding will be styled "ECF No. __." References
to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled "Main Case
ECF No. __."
[2]  The procedural history of this adversary proceeding relevant to the adjudication of the Motion
for Default Judgment is set forth herein.

*In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022).  On July 8, 2022, Mr. Despins was appointed as the Trustee.  (Main Case ECF No. 523.)

On June 8, 2023, the Trustee initiated this adversary proceeding by filing a complaint (the "Complaint").  (ECF No. 1.)  The defendants (each a "Defendant", and, collectively, the "Defendants") in this adversary proceeding are HCHK Technologies, Inc. ("HCHK Tech"), HCHK Property Management, Inc. ("HCHK Property"), Lexington Property and Staffing, Inc. ("Lexington Property", and, together with HCHK Tech and HCHK Property, each an "HCHK Entity" and, collectively, the "HCHK Entities"), Holy City Hong Kong Ventures, Ltd. ("Holy City", and, together with the HCHK Entities, the "HCHKV Entities"), Mr. Anthony DiBattista ("Mr. DiBattista"), Ms. Yanping "Yvette" Wang ("Ms. Wang"), and Mr. Brian Hofmeister, in his capacity as assignee for the benefit of creditors (the "Assignee") of the HCHK Entities.

The HCHK Entities purport to comprise an enterprise offering "a la carte consulting services across Technology, Product Development, Engineering, Human Resources, Recruitment, Legal, Finance, and R&D."  (Complaint Ex. 13, Aff. and Petition of Brian Hofmeister ¶ 4.)  Holy City, which is wholly owned by Ms. Wang, is the record owner of 99.9999% of each HCHK Entity.  Mr. DiBattista is the record owner of the remaining 0.0001% of each HCHK Entity.  As of the date the Complaint was filed, each HCHK Entity had assigned, pursuant to a deed of assignment (collectively, the "Deeds of Assignment"), substantially all its assets to the Assignee to initiate an assignment for the benefit of creditors proceeding for each HCHK Entity (collectively, the "Assignment Proceedings") in the New York state courts.  (*See* Complaint Exs. 13 (Aff. of Assignee of HCHK Tech), Ex. B (Deed of Assignment); 17 (Aff. of Assignee of Lexington Property), Ex. B (Deed of Assignment); 18 (Aff. of Assignee of HCHK Property), Ex. B (Deed of Assignment).)

The Complaint states three claims for relief (respectively, the "First Claim", "Second Claim", and "Third Claim"):

1.   The First Claim seeks declaratory judgment that the HCHK Entities are *alter egos* of the Individual Debtor and, on that basis, (i) pursuant to sections 541, 542, and 544 of title 11 of the United States Code (the "Bankruptcy Code"), turnover of the HCHK Entities' assets to the Estate via delivery of the same to the Trustee; and (ii) pursuant to section 362 of the Bankruptcy Code, declaratory judgment that the Deeds of Assignment and any assignment of assets pursuant thereto are null and void.  (Complaint ¶¶ 62–68.)

2.   The Second Claim seeks declaratory judgment that the HCHK Entities are beneficially owned by the Individual Debtor and, on that basis, (i) pursuant to sections 541, 542, and 544 of the Bankruptcy Code, turnover of any ownership interests in the HCHK Entities and/or the HCHK Entities' assets to the Estate via delivery of the same to the Trustee; and (ii) pursuant to section 362 of the Bankruptcy Code, declaratory judgment that the Deeds of Assignment and any assignment of assets pursuant thereto are null and void.  (Complaint ¶¶ 69–73.)

3.   The Third Claim seeks, pursuant to sections 105, 262, 363, and 549 of the Bankruptcy Code, a permanent injunction, enjoining the Defendants from commencing or continuing the Assignment Proceedings and from transferring any ownership interests in or assets of the HCHK Entities.  (Complaint ¶¶ 74–80.)

On June 14, 2023, the Clerk of Court issued the Summons and Notice of Pretrial Conference (the "Summons").  (ECF No. 20.)  Pursuant to Fed. R. Bankr. P. 7004(a) and (e), if, within seven days of issuance of the Summons, a Defendant was properly served with the Summons and Complaint within a judicial district of the United States, then such Defendant had thirty (30) days from the issuance of the Summons to answer or otherwise respond to the Complaint.  Fed. R. Bankr. P. 7012(a).  Every Defendant other than Holy City was served within a judicial district of the United States.  (ECF No. 23.)  Thirty days from June 14, 2023 is July 14, 2023.  Fed. R. Bankr. P. 9006(a).  Hence, July 14, 2023 was the deadline for every Defendant

other than Holy City, to answer or otherwise respond to the Complaint.  No Defendant answered or responded to the Complaint by this deadline.[3]

Holy City was served outside a judicial district of the United States.  (ECF No. 23.)  On July 24, 2023, upon motion of the Trustee (ECF No. 56), pursuant to Fed. R. Bankr. P. 7012(a), the Court entered an order establishing the deadline for Holy City to answer or otherwise respond to the Complaint because Holy City was served with the Summons and the Complaint in a foreign country.  (ECF No. 63.)  The deadline for Holy City to file an answer or responsive motion was August 25, 2023 – seventy-one (71) days after Holy City was served with the Summons and the Complaint.  Fed. R. Bankr. P. 9006(a).  (*See* ECF No. 23.)  Holy City did not file an answer or other responsive pleading by its deadline.

On August 28, 2023, the HCHKV Entities – the HCHK Entities and Holy City – filed the Motion to Extend Time to Plead (the "Motion to Extend Time").  (ECF No. 107.)  On September 1, 2023, the Trustee objected to the Motion to Extend Time and cross-moved the Court to direct the Clerk of Court to enter default against all Defendants.  (ECF No. 110.)  On September 6, 2023, the HCHKV Entities filed a reply in support of the Motion to Extend Time and an objection to the Cross-Motion.  (ECF No. 111.)

On September 6, 2023, a hearing on the Motion to Extend Time and the Trustee's request for an entry of default was held.  The HCHKV Entities requested an opportunity to submit additional briefing, which request the Court granted.  On September 22, 2023, the HCHKV Entities filed their supplemental pleadings.  (ECF Nos. 128, 129.)  On September 27, 2023, the Trustee responded to the supplemental pleadings.  (ECF No. 135.)

---

[3]  Pursuant to the terms of a settlement with the Trustee, the Assignee agreed to take no action to defend against the Complaint.  (*See* ECF No. 70.)

On September 29, 2023, the Order Denying Motion to Extend Time to Plead and Granting Cross-Motion for Order Directing Clerk to Enter Default (the "Order Denying Motion to Extend Time") entered, finding for the reasons stated therein that the HCHKV Entities' delay in answering or responding to the Complaint was not due to excusable neglect. (ECF No. 138.) Substantially contemporaneously therewith, the Clerk of Court entered default against the HCHKV Entities. (ECF No. 139.) On December 1, 2023, after the Trustee repeated his request for an entry of default against all Defendants during a hearing, the Clerk of Court entered default against Mr. DiBattista, Ms. Wang, and the Assignee. (ECF No. 222.) As of December 1, 2023, all Defendants in this adversary proceeding have been defaulted.

On November 8, 2023, the HCHKV Entities filed the Motion to Set Aside Default (the "Motion to Set Aside Default"). (ECF No. 172.) On December 1, 2023, the Trustee filed a response in opposition to the Motion to Set Aside Default. (ECF No. 224.) On December 5, 2023, the HCHKV Entities filed a reply in further support of the Motion to Set Aside Default. (ECF No. 226.)

On January 9, 2024, a hearing was held on the Motion to Set Aside Default. After the hearing, on January 10, 2024, the HCHKV Entities filed a letter requesting the opportunity to file a post-hearing brief (ECF No. 243), which request the Court granted (ECF No. 245). On January 12, 2024, the HCHKV Entities filed a post-hearing brief. (ECF No. 246.) On January 17, 2024, the Trustee filed a response to the post-hearing brief. (ECF No. 249.) Subsequently, the HCHKV Entities filed two additional letters regarding the Motion to Set Aside Default. (ECF Nos. 254, 258.)

On February 28, 2024, the Memorandum of Decision and Order Denying Motion to Set Aside Default (the "Order Denying Motion to Set Aside Default") entered. The Order Denying

Motion to Set Aside Default found that the HCHKV Entities willfully defaulted, their defenses were not meritorious, and granting the Motion to Set Aside the Default would prejudice the Trustee. (ECF No. 263.)

On March 8, 2024, the Trustee filed the Motion for Default Judgment and the Declaration of Patrick Linsey (the "Linsey Declaration"), which supports the Motion. (ECF Nos. 268–69.) On March 29, 2024, the HCHKV Entities filed a brief in opposition to the Motion. (ECF No. 276.) Mr. DiBattista, Ms. Wang, and the Assignee did not file any response or objection to the Motion for Default Judgment and did not move to set aside the default entered against them. On April 12, 2024, the Trustee filed a reply in support of the Motion for Default Judgment. (ECF No. 283.)

On April 23, 2024, a hearing on the Motion for Default Judgment was held. Counsel for the Trustee and the HCHKV Entities appeared and were heard. Mr. DiBattista, Ms. Wang, and the Assignee did not appear personally or through counsel. At the conclusion of the hearing, the Court took the Motion under advisement.

This matter is ripe for adjudication.

**III.    JURISDICTION**

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. The instant adversary proceeding in which the instant matters arise is a statutorily core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O). The Court concludes its exercise of jurisdiction is not precluded by Constitutional concerns. *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

7

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV. DEFAULT JUDGMENT STANDARD

"It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations in the complaint." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (citing *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (distinguishing effect of default to effect of failure to respond to motion for summary judgment)). This is the effect of default. *Belford v. Martin-Trigona (In re Martin-Trigona)*, 763 F.2d 503, 505 n. 2 (2d Cir. 1985) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) and *Trans World Airlines, Inc. v. Hughes*, 499 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). Hence, a party moving for default judgment need not show that they are entitled to relief by a preponderance of the evidence, *Micaklis Pawn*, 645 F.3d at 136, but rather whether the allegations in the complaint, deemed admitted, establish the respondent's liability as a matter of law, *id.* at 137 (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). Essentially, a court must consider whether a claim for relief would survive a motion to dismiss. *See Mickalis Pawn*, 643 F.3d at 137 n. 2 (collecting cases from other circuit courts of appeal holding that courts must consider at default judgment whether the well-pleaded allegations of the complaint state a valid facial claim for relief); *see also Miller v. Kasden (In re Kasden)*, 209 B.R. 236, 238 (8th Cir. BAP 1997), *appeal dismissed by* 141 F.3d 1288 (8th Cir. 1998); *Adams v. Bostick (In re Bostick)*, 400 B.R. 348, 354–55 (Bankr. D. Conn. 2009).

To sufficiently plead jurisdiction, the Complaint must "clearly" allege the relevant jurisdictional facts, including those that relate to standing to sue. *Warth v. Seldin*, 422 U.S. 490, 490 (1972); *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018); *Toretto*

*v. Donnelley Fin. Solutions, Inc.*, 523 F. Supp. 3d 464 (S.D.N.Y. 2021); *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 156 (S.D.N.Y. 2018).

To sufficiently plead the merits, claims must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a), *made applicable by* Fed. R. Bankr. P. 7008. The "plausibility standard," while not a "probability requirement," requires more than "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The Court must also consider documents incorporated into the complaint by reference and matters of which it may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## V.    DISCUSSION

### A.  First and Second Claim – *Alter Ego* and Beneficial Ownership

The Trustee argues the HCHKV Entities were properly served with the Summons and Complaint and the Complaint sets forth plausible, *prima facie* claims for relief. Therefore, the Trustee contends, he is entitled to default judgment. In opposition to the Motion for Default Judgment, the HCHKV Entities do not contest service. Rather, they object that the Trustee lacks standing to bring his First Claim and object to the sufficiency of the Trustee's pleading of his First and Second Claims.

The First and Second Claim implicate issues of federal and state law.  Section 542(a) of the Bankruptcy Code provides for turnover of property of the estate via delivery to the trustee. Section 541(a)(1) provides that a bankruptcy estate is comprised, in pertinent part, of "all legal or equitable interests of the debtor in property as of the commencement of the case".  However, a debtor's legal and equitable interests in property are determined by applicable non-bankruptcy law.  *Butner v. United States*, 440 U.S. 48, 55 (1979) (holding state law governs property rights) (case determined under the former Bankruptcy Act); *see Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007) (citing *Butner* and holding state law governed substance of claims relating to state law property rights); *Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998) (holding law under the former Bankruptcy Act remains vital under the Bankruptcy Code absent indication of contrary congressional intent).

The applicable non-bankruptcy law is determined by the choice of law rules of this Court's forum state, namely, Connecticut.  *Geron ex rel. Thelen LLP v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013).  The Court concludes, because the HCHK Entities are Delaware entities, Connecticut courts would apply Delaware law to both the First and Second Claims, which relate to the internal affairs and corporate governance of the HCHK Entities.  *See Weber v. U.S. Sterling Securities, Inc.*, 924 A.2d 816, 822–23 (Conn. 2007) (applying local law of state of formation to *alter ego* action and other internal affairs regarding an LLC); RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 303, 304.  Moreover, the parties agree with this conclusion, applying Delaware law in their arguments.

### 1.  First Claim – *Alter Ego*
#### a.  Legal Standard

Turning to the First Claim, "Delaware courts use the terms 'piercing the corporate veil' and 'alter ego' theory interchangeably."  *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 609

n. 4 (D. Del. 2018).   Under Delaware law, *alter ego* or piercing the corporate veil has two

elements: (i) the corporate entity whose form is to be disregarded is so dominated and controlled

by its alleged *alter ego* that the corporate entity and its *alter ego* are, in fact, a single economic

unit; and (ii) the corporate form to be disregarded causes fraud or some similar injustice.  *See*

*Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968); *Wallace ex rel. Cencom*

*Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999); *Geyer v.*

*Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992); *see also Fletcher*, 68 F.3d at 1457

(applying Delaware law); *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 549

B.R. 21, 43–44 (Bankr. S.D.N.Y. 2016) (applying Delaware law).

As to the first element, whether the alleged *alter ego* asserts dominion and control over

the corporate entity, several factors are considered, including "(1) whether the company was

adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether

corporate formalities were observed; (4) whether the dominant shareholder siphoned company

funds; and (5) whether, in general, the company simply functioned as a facade for the dominant

shareholder."  *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021)

(internal citations omitted); *see Blair v. Infineon Tech., AG*, 720 F. Supp. 2d 462, 470–71 (D.

Del. 2010).  None of these factors is dispositive in determining dominion and control.

*Manichaean Cap.*, 251 A.3d at 706–07; *Infineon Tech.*, 720 F. Supp. 2d at 471.

As to the second element, whether the corporate form causes fraud or similar injustice, it

is not necessary to establish fraud – it is only necessary to establish injustice, *Fletcher*, 68 F.3d at

1457, or fraudulent intent in the creation of the corporate form – it is only necessary to establish

that the corporate form *causes* fraud or a similar injustice, *NetJets Aviation, Inc. v. LHC*

*Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (applying Delaware law); *see Martin v. D.B. Martin Co.*, 88 A. 612, 615–16 (Del. Ch. 1913).

Delaware law allows outsider reverse veil-piercing, namely, making the assets of an entity available to the creditors of its parent or owner. *Manichaean Cap.,* 251 A.3d at 714–15. In considering whether to reverse pierce the corporate veil, courts consider "the traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim", discussed above, as well as additional factors reflecting the concern that creditors and other stakeholders of the entity might have their legitimate expectations thwarted. *Id.*

### b. Conclusions of Law

The Trustee argues the Complaint sufficiently alleges (i) the Individual Debtor's prolific use of shell companies and *alter egos*; (ii) the Individual Debtor's control of the HCHK Entities through his subordinates; (iii) the Individual Debtor's use and control of the HCHK Entities for the benefit of him and his family, his subordinates and associates, and entities associated with him; and (iv) the Individual Debtor funded the HCHK Entities. The Trustee asserts the allegations of the Complaint are buttressed by prior holdings of this Court as well as other courts, the United States's allegations in the criminal action styled *United States v. Guo*, 23 cr 118 (AT) (S.D.N.Y. May 29, 2024) (the "Criminal Action"), and the Individual Debtor's invocation of his Fifth Amendment rights against self-incrimination in deposition testimony regarding the subject matter of this adversary proceeding.

The HCHKV Entities argue, under the doctrine propounded in *Shearson Lehman Hutton Inc. v. Wagoner* and the related doctrine of *in pari delicto*, the Trustee does not have standing to bring the First Claim. 944 F.2d 114 (2d Cir. 1991). As to the merits, the HCHKV Entities argue the Complaint fails to allege (i) Holy City is the *alter ego* of the Individual Debtor; (ii) the

HCHK Entities operated as a single unit with the Individual Debtor, were undercapitalized, disregarded corporate formalities, and/or were simply a façade for the Individual Debtor; and (iii) the source of the HCHK Entities' capital was the Individual Debtor. The HCHKV Entities assert the Complaint alleges, in lieu of the foregoing, that the HCHK Entities were each independent businesses funded by Chinese dissidents – not the Individual Debtor. Hence, the HCHKV Entities argue, the Complaint rests solely on allegations that associates and employees of other entities operated by the Individual Debtor owned and operated the HCHK Entities. The HCHKV Entities argue that such allegations are insufficient to plead *alter ego* under Delaware law and characterize the Complaint as alleging wrongfulness by association alone.

### i. Standing

Regarding standing, the Court agrees with the Trustee. In *Wagoner*, the United States Court of Appeals for the Second Circuit was concerned only with actions brought by the bankruptcy trustee in his or her capacity as successor in interest to the debtor – not with actions brought by a bankruptcy trustee on behalf of creditors. 944 F.2d at 118 ("The trustee insists he is not asserting the claims of the noteholders, so it is unnecessary for us to delve deeply into when, if ever, a trustee may sue a third party on behalf of the bankrupt's creditors."). The Bankruptcy Code provides a bankruptcy trustee standing to bring certain claims on behalf of creditors. *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989) ("Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded, *inter alia*, on the rights of the debtor and on certain rights of the debtor's creditors."). Absent such statutory authority, the Second Circuit held in *Wagoner* that "a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." 944 F.2d at 118; *see Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093

(2d Cir. 1995); *Sobchack v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600, 607 (2d Cir.1994).

Where a claim belongs to the debtor, courts consider whether the trustee is *in pari delicto* by imputation of the debtor's conduct. *Wagoner*, 944 F.2d at 119–20. However, "neither the *Wagoner* rule nor the *in pari delicto* doctrine apply to a trustee's statutory standing under Section 544 of the Bankruptcy Code." *Wells Fargo Bank, N.A. v. First Republic Bank (In re Salander)*, 503 B.R. 559, 569 n. 12 (S.D.N.Y. 2013); *see Arnold v. First Citizens Nat'l Bank (In re Cornerstone Homes, Inc.)*, 567 B.R. 37, 52–53 (Bankr. W.D.N.Y. 2017). Although an assertion of *in pari delicto* is typically considered an affirmative equitable defense, the *Wagoner* doctrine, including its consideration of *in pari delicto*, "functions as a prudential standing limitation." *Carney ex rel. Highview Point Partners, LLC v. Horion Invs. Ltd.*, 107 F. Supp. 3d 216, 228 (D. Conn. 2015); *cf. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 346–47 (3d Cir. 2001); *but see Kirschner v. KPMG LLP*, 938 N.E.2d 941, 959–60 (N.Y. 2010) (Ciparick, J. dissenting); *Adelphia Commc'n Corp. v. Bank of Am., N.A. (In re Adelphia Commc'n Corp.)*, 365 B.R. 24, 45 (Bankr. S.D.N.Y. 2007).

In sum, *Wagoner* instructs the Court to determine (i) whether the Complaint has clearly alleged statutory standing to bring the claims against the Defendants on behalf of creditors; (ii) if not, whether the Complaint has clearly alleged the claims belong to the Individual Debtor; (iii) if the Complaint has clearly alleged claims belong to the Individual Debtor, whether the doctrine of *in pari delicto* is a bar to bringing the claims; and (iv) if the doctrine of *in pari delicto* would bar the claims, whether the Complaint clearly alleges sufficient facts supporting the applicability of an exception to the doctrine. The answer to any of these questions may end the analysis without

14

need to answer the subsequent questions. *See Wagoner*, 944 F.2d at 118; *Salander*, 503 B.R. at 569 n. 12; *Cornerstone Homes*, 567 B.R. at 52–53.

The Trustee clearly alleges the HCHK Entities are Delaware entities. (Complaint ¶¶ 9–11.) As noted above, Delaware law allows outsider reverse veil piercing. *Manichaean Cap.*, 251 A.3d at 714–15. Section 544 of the Bankruptcy Code provides bankruptcy trustees statutory standing to bring an outsider reverse veil-piercing action on behalf of creditors at large. 11 U.S.C. § 544(a); *see St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989); *Titan Real Estate Ventures, LLC v. MJCC Realty Ltd. P'ship (In re Flanagan)*, 415 B.R. 29, 47 (D. Conn. 2009). Therefore, the Trustee has standing to bring the First Claim on behalf of creditors at large. The *Wagoner* and *in pari delicto* doctrine are not implicated and the Court need not reach whether an exception to those doctrines applies.

### ii.  Merits

Turning to the merits, the Court concludes, as set forth below, the Complaint, together with its attached exhibits and references to matters of which this Court may take judicial notice, meets the requisite pleading standard to plausibly allege *alter ego* under Delaware law.

First, the Complaint plausibly alleges the Individual Debtor controls the HCHK Entities. (Complaint ¶¶ 22–26, 40.) It alleges that Holy City, which owns 99.9999% of the HCHK Entities, is wholly owned by Ms. Wang, whom it alleges is the Individual Debtor's employee and assistant, and that the remaining 0.0001% of each HCHK Entity is owned by Mr. DiBattista, whom it alleges is also the Individual Debtor's employee and assistant. (Complaint ¶ 22.) Regarding Ms. Wang, the Complaint refers to, among other things, (i) this Court's prior determination that Ms. Wang is the Individual Debtor's employee; (ii) her work at a variety of entities associated with the Individual Debtor, including at Golden Spring (New York) Limited

("Golden Spring"), which this Court has ruled is the Individual Debtor's *alter ego*; (iii) the Individual Debtor's invocation of his Fifth Amendment rights against self-incrimination regarding his control over Ms. Wang; and (iv) Ms. Wang's indictment on charges relating to an alleged fraud perpetrated by, among others, principally the Individual Debtor and involving the HCHK Entities. (Complaint ¶¶ 23–24.) Regarding Mr. DiBattista, the Complaint refers to (i) his work at G-Series entities this Court has already determined to be related to the Individual Debtor's media business; and (ii) the Individual Debtor's invocation of his Fifth Amendment rights against self-incrimination regarding his control over Mr. DiBattista. (Complaint ¶ 25.) The Complaint also alleges that other employees of the Individual Debtor's adjudged *alter ego*, Golden Spring, worked at the HCHK Entities. (Complaint ¶ 26.)

Second, the Complaint plausibly alleges the Individual Debtor used the HCHK Entities for his own purposes. (Complaint ¶¶ 27–32, 40.) Contrary to the HCHKV Entities' arguments, the Complaint alleges the HCHK Entities are *not*, as the Assignee's filings in the New York state courts suggest, independent businesses that have transacted with the Individual Debtor's businesses. (Complaint ¶ 27.) Rather, the Complaint alleges they are affiliates of the G-Series entities, which this Court has ruled are part of the Individual Debtor's media operations, and are indirectly owned by the Individual Debtor, as stated by the HCHK Entities' outside accountant. (Complaint ¶¶ 27–29.) In particular, the Complaint alleges the HCHK Entities were used by entities related to the Individual Debtor to transfer liquid assets. (Complaint ¶ 30.) Moreover, the Complaint also alleges HCHK Tech made payments to (i) maintain the Lady May, a yacht this Court has determined was beneficially owned by the Individual Debtor; (ii) maintain a Bombardier aircraft, a plane this Court has determined was beneficially owned by the Individual Debtor; and (iii) purchase another aircraft, which the Trustee alleges is the Individual Debtor's

16

plane.  (Complaint ¶ 31.)  Finally, the Complaint alleges Lexington Property made numerous payments to entities and individuals associated with and who performed work for the Individual Debtor.  (Complaint ¶ 32.)

Third, the Complaint plausibly alleges the HCHK Entities were financed by the Individual Debtor.  (Complaint ¶¶ 33–38, 40.)  The Complaint alleges that Lexington Property was funded by entities associated with the Individual Debtor, including his adjudged *alter ego* Golden Spring and other entities courts have found were controlled by the Individual Debtor. (Complaint ¶ 38.)  Moreover, the Complaint alleges the HCHK Tech and HCHK Property were funded by followers and associates of the Individual Debtor.  (Complaint ¶¶ 34–37.)

Finally, the Complaint plausibly alleges the Individual Debtor has a pattern of using shell companies to shelter his assets from his creditors.  (Complaint ¶¶ 16–21, 40.)  The Complaint makes specific allegations regarding the Individual Debtor's alleged "shell game."  (Complaint ¶¶ 16–17, 21.)  Moreover, the Complaint refers to prior judicial findings regarding other entities, which effected this purpose, as well as prior citations for contempt regarding turnover of assets in judgment collection proceedings.  (Complaint ¶¶ 17–18, 20–21.)  Finally, the Complaint refers to a declaration filed in the Individual Debtor's Chapter 11 case by an alleged witness. (Complaint ¶ 19.)

Additionally, in further support of each of these allegations, the Trustee references the Individual Debtor's invocation of his Fifth Amendment rights against self-incrimination regarding the subject matter of this adversary proceeding.  (Complaint ¶ 40.)  In a civil case, such as this adversary proceeding, an adverse inference may be drawn from an invocation of Fifth Amendment rights against self-incrimination where the invoker is presented with probative evidence or independent probative evidence exists regarding the fact at issue.  *Mirlis v. Greer*,

952 F.3d 36, 47 (2d Cir. 2020) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000). Here, the Complaint alleges the Individual Debtor's invocation of his Fifth Amendment rights against self-incrimination as cumulative evidence. Hence, this invocation buttresses the plausibility of the Complaint's allegations.

In sum, the Trustee has plausibly alleged (i) the HCHK Entities did not observe corporate formalities but rather had a porous border with other entities associated with the Individual Debtor and their assets were used by the Individual Debtor, his family and associates, and other entities related to the Individual Debtor; (ii) the Individual Debtor siphoned the HCHK Entities' assets for his personal benefit; (iii) the HCHK Entities served as a façade for the Individual Debtor; and (iv) the corporate forms of the HCHK Entities cause fraud or similar injustice. (Complaint ¶¶ 16–40.) Accordingly, the Court concludes the Complaint sufficiently pleads *alter ego* under Delaware law. *See NetJets*, 537 F.3d at 177; *Fletcher*, 68 F.3d at 1457; *Manichaean Cap.*, 251 A.3d at 706–07; *Infineon Tech.*, 720 F. Supp. 2d at 470–71.

The HCHKV Entities' arguments to the contrary are unpersuasive. First, the Complaint does not seek to have Holy City declared the Individual Debtor's *alter ego*. Second, contrary to the HCHKV Entities' argument, the Complaint, as discussed above, plausibly alleges the HCHK Entities operated as a single unit with the Individual Debtor, were undercapitalized, disregarded corporate formalities, and/or were simply a façade for the Individual Debtor and does not allege the HCHK Entities were each independent businesses funded by Chinese dissidents. Third and finally, the Complaint does not, as the HCHKV Entities suggest, solely rely on the association of the HCHK Entities' officers and the Individual Debtor.

18

Therefore, with respect to the First Claim, the Trustee is entitled to default judgment that the HCHK Entities are the *alter egos* of the Individual Debtor. *Micaklis Pawn*, 645 F.3d at 137; *Bostick*, 400 B.R. at 354–55. On this basis, the Trustee is entitled to default judgment that the property of the HCHK Entities is property of the Estate and that the property of the HCHK Entities be turned over to the Estate via delivery to the Trustee. 11 U.S.C. §§ 541, 542; *Micaklis Pawn*, 645 F.3d at 137; *Bostick*, 400 B.R. at 354–55.

### 2. Second Claim – Beneficial Ownership
#### a. Legal Standard

Turning to the Second Claim, Delaware recognizes beneficial ownership claims. *See Salt Dome Oil Corp. v. Schenk*, 41 A.2d 583, 586 (Del. 1945) (citing *Chadwick v. Parkhill Corp.*, 41 A. 823 (Del. Ch. 1928)); *Hudak v. Procek*, 806 A.2d 140 (Del. 2002); *Preston v. Allison*, 650 A.2d 646 (Del. 1994); *Hannigan v. Italo Petroleum Corp. of Am.*, 77 A.2d 209, 213 (Del. 1949). Furthermore, creditors may bring beneficial ownership actions. *See Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1051 (2d Cir. 1997) (applying New York law regarding beneficial ownership for purposes of corporate veil piercing); *LiButti v. United States*, 968 F. Supp. 71, 75 (N.D.N.Y. 1997), *aff'd in part, rev'd in part on other grounds*, 178 F.3d 114 (2d Cir. 1999) (applying federal common law); *Paloian ex rel. Dordevic v. Dordevic (In re Dordevic)*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021), *aff'd by* 67 F.4th 372 (7th Cir. 2023) (applying federal common law). Section 544 of the Bankruptcy Code provides bankruptcy trustees statutory standing to bring a beneficial ownership claim on behalf of creditors at large. 11 U.S.C. § 544(a); *see PepsiCo*, 884 F.2d at 700; *Titan Real Estate*, 415 B.R. at 47.

#### b. Conclusions of Law

The Trustee argues that the same allegations discussed above regarding *alter ego* also plausibly allege the Individual Debtor exercised authority over the HCHK Entities to the point of

completely disregarding their corporate form, as if their assets were his own.  The HCHKV Entities' arguments regarding the merits of First Claim are also made with respect to the Second Claim.  The HCHKV Entities do not raise a standing argument with respect to the Second Claim.

The Court agrees with the Trustee.  As discussed above, the Complaint plausibly alleges that the HCHK Entities' corporate forms were disregarded and that the Individual Debtor exercised dominion and control over them and their assets.  (Complaint ¶¶ 16–40.)  *See Complex Computing*, 119 F.3d at 1051.  Similarly, as discussed above, the Complaint plausibly alleges several of the *LiButti/Dordevic* factors: (i) there is a close relationship between the Individual Debtor and, particularly, Ms. Wang but also Mr. DiBattista (Complaint ¶¶ 22–26, 39–40), who are the ultimate record owners of the HCHK Entities; (ii) the Individual Debtor sheltered his assets as part of an effort to protect them from collection (Complaint ¶¶ 16–21, 33–40); and (iii) the Individual Debtor maintained dominion and control over the HCHK Entities' assets (Complaint ¶¶ 27–32, 39–40).  *See LiButti*, 968 F. Supp. at 75; *Dordevic*, 633 B.R. at 558.

Therefore, with respect to the Second Claim, the Trustee is entitled to default judgment that the Individual Debtor beneficially owns the HCHK Entities.  *Micaklis Pawn*, 645 F.3d at 137; *Bostick*, 400 B.R. at 354–55.  On this basis, the Trustee is entitled to default judgment that the ownership interests in the HCHK Entities are property of the Estate and ordering their turnover.  11 U.S.C. §§ 541, 542; *Micaklis Pawn*, 645 F.3d at 137; *Bostick*, 400 B.R. at 354–55.

## B.  Third Claim – Permanent Injunctive Relief

The Motion for Default Judgment also requests the Court enter a permanent injunction against the Defendants commencing or continuing the Assignment Proceedings and/or otherwise dissipating the assets of the HCHK Entities.

Notwithstanding the effect of default, a permanent injunction entered at default judgment must comply with Rule 65. *Mickalis*, 645 F.3d at 143 (citing *Finkel*, 577 F.3d at 83 n. 6 and *Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986)). "To obtain a permanent injunction, a plaintiff must succeed on the merits and 'show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) (citing *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989)).

Irreparable harm must be "likely," not merely possible. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). While outside of bankruptcy proceedings, irreparable harm generally must be the sort that cannot be adequately compensated by legal remedies, *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (holding that a district court "had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages"), this rule does not apply in bankruptcy proceedings because "[t]he law of fraudulent conveyances and bankruptcy was developed to prevent [the disposition of assets pending adjudication]," *Grupo Mexicano*, 527 U.S. at 322. *See Rubin v. Pringle ex rel. Focus Media Inc. (In re Focus Media Inc.)*, 387 F.3d 1077 (9th Cir. 2004); *Soundview Elite*, 543 B.R. at 115; *see also In re Owens Corning*, 419 F.3d 195, 208 n. 14 (3d Cir. 2005).

While the Court has "a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct," the Second Circuit "[has] instructed that injunctive relief should be 'narrowly tailored to fit specific legal violations . . ..'" *Mickalis*, 645 F.3d at 144 (citing *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 406 (2d Cir. 1997) and *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 50 (2d Cir. 1996)). Moreover, the terms of

the injunction must provide "explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974); *see Mickalis*, 645 F.3d at 143–44 (collecting cases).

The Trustee argues the Assignment Proceedings must be enjoined pursuant to sections 105(a), 362(a)(3), and 363(b)(1) of the Bankruptcy Code because (i) there is a likelihood of a successful reorganization in these jointly administered Chapter 11 cases; (ii) allowing the Assignment Proceedings to go forward would cause irreparable harm to the Estate; (iii) the balance of harms clearly tips in favor of the Estate; and (iv) the public interest in uniform, federal bankruptcy laws and equitable distributions to all creditors supports injunctive relief.  The HCHKV Entities raise no distinct objection to the Third Claim and the entry of permanent injunctive relief.

For the reasons stated in the discussion of the First and Second Claims above, the Court concludes the Trustee has succeeded on the merits at default judgment.  Furthermore, for the reasons set forth below, the Court agrees with the Trustee that there is not an adequate remedy at law and a risk of irreparable harm.

The automatic stay provided by section 362(a) is "'one of the fundamental debtor protections provided by the bankruptcy laws,' designed to relieve 'the financial pressures that drove [debtors] into bankruptcy.'" *E. Refractories Co. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2d Cir.1998) (citing H.R. Rep. No. 95–595, at 340 (1977)).  Moreover, as House of Representative Report Number 95-595 additionally observes:

> The automatic stay also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property.  Those who acted first would obtain payment of the claim in preference to and to the detriment of other creditors.  Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.  A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 95–595, at 340; *see In re Alyucan Interstate Corp.*, 12 B.R. 803, 806 (Bankr. D. Utah 1981) (citing *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976) (case under the Bankruptcy Act)). A bankruptcy case is an all-encompassing action intended to equitably – and finally – liquidate, reorganize, or adjust the assets, affairs, and liabilities of the bankruptcy estate for the benefit of all creditors, providing an individual debtor or reorganizing corporate debtor with a fresh start. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991).

For this reason, the automatic stay, among other things, prevents (i)"the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, " 11 U.S.C. § 362(a)(1); and (ii) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3). Under Second Circuit precedent, the automatic stay protects property of a non-debtor where "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate," such as when a debtor owns a non-debtor. *See Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 287 (2d Cir. 2003). Willful violations of the automatic stay *shall* be sanctioned. 11 U.S.C. § 362(k). Bankruptcy proceedings are fundamentally undermined by violation of the automatic stay. Hence, the public interest in uniform, federal bankruptcy laws and an equitable distribution to all creditors, as enshrined in Article I, section 8 of the Constitution, is thwarted by violation of the automatic stay.

Here, upon the entry of default judgment on the First and Second Claims, the commencement and prosecution of the Assignment Proceedings and any disposition of the assets of the HCHK Entities or the ownership interests in the HCHK Entities, through the Assignment

23

Proceedings or otherwise, would be violations of the automatic stay. 11 U.S.C. §§ 362(a)(1), (3); *see Queenie*, 321 F.3d at 287; *see also McHale v. Alvarez (In re 1031 Tax Grp., LLC)*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008). Therefore, absent injunctive relief permanently enjoining the Defendants from dissipating the assets of the HCHK Entities and the ownership interests in the HCHK entities, there would be irreparable harm to the Estate.

Accordingly, a permanent injunction shall enter.

## VI.    CONCLUSION AND ORDER

For the reasons stated above, pursuant to Rule 55(b), made applicable by Bankruptcy Rule 7055, default judgment shall enter in favor of the Trustee on the First and Second Claims of the Complaint and, pursuant to Rule 65, made applicable by Bankruptcy Rule 7065, a permanent injunction shall enter in favor of the Trustee at default judgment on the Third Claim of the Complaint. It is hereby

**ORDERED:** The Motion for Default Judgment (ECF No. 268) is **GRANTED** as set forth herein; and it is further

**ORDERED:** On or before June 28, 2024, the Trustee shall submit a proposed permanent injunction consistent with the foregoing Opinion and containing the contents required by Rule 65, made applicable by Bankruptcy Rule 7065; and it is further

**ORDERED:** On or before June 28, 2024, the Trustee shall submit a proposed judgment on the First, Second and Third Claims, which proposed judgment shall be consistent with the foregoing Opinion.

Dated at Bridgeport, Connecticut this 14th day of June, 2024.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut

24